IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

MEGAN CAPEL, Administratrix of the Estate )
of Terral Brooks Ellis II, deceased, et al., )
               )
      Plaintiffs, )
               ) Case No. 17-CV-325-JED-FHM
v. )
               )
OTTAWA COUNTY BOARD OF COUNTY )
COMMISSIONERS, et al., )
               )
      Defendants. )

## OPINION AND ORDER

**I. The Complaint**

In their Complaint, the plaintiffs allege the following facts, which are taken as true at this stage of the litigation. On October 22, 2015, Terral Brooks Ellis II died at the Ottawa County Jail while in the custody of the Ottawa County Sheriff's Department (OCSD). He was in the jail from early October 2015 until his death.[1] For days before his death, Mr. Ellis exhibited a serious medical need and symptoms of an emergent and life-threatening condition, including seizures, convulsions, uncontrollable sweating, dehydration, an inability to walk, and pain in his back, ribs, and internal organs. (Doc. 2 at ¶¶ 20-23). Detention and medical staff at the jail disregarded obvious, known and substantial risks to Mr. Ellis's health, and they failed to obtain appropriate medical care and evaluation for him, and did not transport him to a hospital. (*Id.* at ¶ 23). A fellow inmate hand-fed, and provided water to, Mr. Ellis, provided cups to him to urinate in, and dumped the cups to dispose of the urine. While fellow inmates attempted to assist Mr. Ellis, detention and medical staff failed and refused to assist him. (*Id.* at ¶ 24).

---

[1] According to the Estate's allegations, Mr. Ellis arrived at the jail in early October and, upon arrival, was in good health and commenced a daily exercise routine.

When medical staff saw Mr. Ellis, he was sweating profusely, in severe pain, and had stopped eating or drinking, but he was not referred to a physician for assessment or to the hospital for necessary emergency care. (*See id.* at ¶ 25). On October 21, 2015, Mr. Ellis and a fellow inmate "continued to beg detention staff and medical staff for medical attention." (*Id.* at ¶ 26). At that time, Mr. Ellis continued to show symptoms of a serious and life-threatening illness, and he reported that he was in the worst pain he had ever experienced. Detention officers and medical staff ignored his pleas for help and responded by telling him to lie back down. (*Id.* at ¶¶ 26-27). Mr. Ellis subsequently had a seizure, and detention officers snapped ammonia sticks under his nose until the seizure ended. Detention officers then left and did not obtain medical care for him and were deliberately indifferent to his serious medical needs. Mr. Ellis, joined by other inmates, began "begging for his life . . . he was begging for help." (*Id.* at ¶¶ 28-29).

Mr. Ellis had additional seizures, which resulted in inquiries by other inmates in the jail pod as to why Mr. Ellis was not receiving medical attention. In response, detention staff moved those inmates to the "rec yard." (*Id.* at ¶ 29). After Mr. Ellis had multiple seizures on October 21, 2015, paramedics employed by Baptist Healthcare of Oklahoma, LLC, d/b/a Integris Miami EMS (Integris) finally arrived in the jail pod. Mr. Ellis reported to the paramedics that he had a seizure, was severely dehydrated, was unable to walk, and had pain in his ribs. (*Id.* at ¶ 30). Detention officers Shoemaker, Harding, and Bray informed the paramedics that Mr. Ellis was "faking" his symptoms and that the County would not "foot the bill" for any hospital care. (*Id.*). The paramedics did not take Mr. Ellis to a hospital. (*Id.*). Mr. Ellis requested to contact his grandfather about his condition, but the request was denied by detention staff. (*Id.* at ¶ 33). No physician ever came to the jail to assess Mr. Ellis's condition. As a matter of policy and practice, OCSD did not provide access to any physician for any inmate. (*Id.* at ¶ 32).

After paramedics left the jail, detention staff removed Mr. Ellis from the pod and placed him in a segregation cell, alone and away from the inmates who were trying to help him. (*Id.* at ¶ 34). The following day, October 22, 2015, Mr. Ellis was found in respiratory distress in his cell. At 1:50 p.m., an ambulance was called to the jail. When the ambulance arrived, jail staff informed the paramedics that Mr. Ellis was suffering from back pain. He was finally taken to a hospital at 2:15 p.m. and was declared dead less than an hour later. Paramedics and the medical examiner's office were informed that Mr. Ellis was found alone in his cell with acute respiratory distress, with a bed sheet tied loosely around his neck. (*Id.* at ¶ 37). The medical examiner found no injury to his neck, and the cause of death was sepsis and pneumonia. (*Id.*). Plaintiffs allege that it "seems that the bed sheet was placed around [his] neck, by [jail] staff, in an apparent attempt to portray his death as a suicide and to cover up the deliberate indifference to his serious and obvious medical needs." (*Id.* at ¶ 38). Mr. Ellis's body, viewed postmortem, had massive bruising on his torso. (*Id.* at ¶ 40). The Estate alleges on information and belief that the sheriff or his agents removed and replaced digital video recorders and hard drives after Mr. Ellis died "in an apparent attempt to cover up and conceal" deliberate indifference toward his serious medical needs. (*Id.* at ¶ 41).

Plaintiff sued Ottawa County, including the Board of County Commissioners (BOCC) and Ottawa County Sheriff Jeremy Floyd in his official capacity, Terry Durborow, who was the Sheriff at the time of Mr. Ellis's death, Theresa Horn, L.P.N., Integris and paramedics Jennifer Grimes and Kent Williams, and OCSD Officers Harding, Bray, and Shoemaker. Count I of the Complaint asserts claims under 42 U.S.C. § 1983 against Durborow, Floyd, Horn, and the OCSD Officers, for violations of the Eighth and Fourteenth Amendments. In Count II, plaintiffs assert negligence and wrongful death claims against Integris, Grimes, and Williams. In Count III, plaintiffs assert a respondeat superior claim against the BOCC for its agents' alleged violations of the Oklahoma

Constitution, Article II, §§ 7 and 9, which prohibits cruel and unusual punishment.

Defendants BOCC, Durborow, Floyd, Horn, Harding, Bray, and Shoemaker have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 23, 24, 31, 33, 45).

## II. Dismissal Standards

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether plaintiff has stated a claim upon which relief may be granted. A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard requires "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted). *Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). The Court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to plaintiffs. *See Twombly*, 550 U.S. at 555.

## III. Discussion

### A. Standing Arguments

In its motion, the BOCC argued that plaintiffs Terral B. Ellis, Sr. and Shelley Bliss lack standing to sue the BOCC, because they are not alleged to be duly appointed representatives of the Estate. The BOCC asserts that the only proper plaintiff is Megan Capel, as the duly appointed representative of Mr. Ellis's Estate. In response, Mr. Ellis, Sr. and Ms. Bliss represent that they have not asserted any claims against the BOCC. In reply, the BOCC "agrees that its [argument] that these plaintiffs lack standing to [bring] claims against it, and its request for dismissal on that ground, are moot." (Doc. 44 at 1). That part of BOCC's dismissal motion (Doc. 23) is thus **moot**.

Similarly, defendants Jeremy Floyd, Terry Durborow, Theresa Horn, Jeffrey Harding, Johnny Bray, and Charles Shoemaker, each sued in their individual capacities, move to dismiss any § 1983 claims brought against them by Mr. Ellis, Sr. and Ms. Bliss. The plaintiffs acknowledge that "standing to bring death claims under . . . § 1983 is limited to the estate of the deceased" and assert that Mr. Ellis, Sr. and Ms. Bliss are not asserting any claims under § 1983. Accordingly, the partial dismissal motion (Doc. 31) of Floyd, Durborow, and Horn is **moot**, and the same standing arguments asserted by the other individual defendants (*see* Doc. 24 at 9; Doc. 33 at 11; Doc. 45 at 12) are **moot**.

**B.     BOCC's Motion**

The BOCC asserts that the Estate failed to plead compliance with the Oklahoma Governmental Tort Claims Act (OGTCA). In response, the Estate argues that, while it did not plead compliance with the OGTCA notice and filing requirements, it actually did comply, and the Estate has attached the Notice Letter to its response. (Doc. 40-1). The BOCC did not dispute that in reply. The Court declines to grant the BOCC's dismissal motion to the extent it relies upon the failure to plead compliance.

In addition, the BOCC contends that there is no private right of action for denial of inmate medical care under Article II, §§ 7 or 9 of the Oklahoma Constitution. The Estate and the BOCC present arguments regarding whether the Oklahoma Supreme Court's decision in *Bosh v. Cherokee Bldg. Auth.*, 305 P.3d 994 (Okla. 2013) – which determined that Article II, § 30 of the Oklahoma Constitution provides a private right of action for excessive force – extends to authorize the Estate's claim under the Oklahoma Constitution. Since the decision in *Bosh*, the federal and state courts in Oklahoma have grappled with the scope of *Bosh* in different constitutional contexts, with differing results. The BOCC cites authorities from other Oklahoma federal district judges in

5

support of its argument that *Bosh* is limited to excessive force cases, while the Estate notes other federal district court cases in which *Bosh* was found to extend to other state constitutional contexts.

Since completing briefing on the dismissal motion, the BOCC has filed three notices with the Court. (Doc. 60, 61, 62). In the first notice (Doc. 60), filed April 10, 2018, the BOCC notified the Court of an Opinion and Order by Chief Judge Gregory K. Frizzell dismissing a claim under Article II, §§ 7 and 9 in a case involving claims for denial of medical care in jail. In the order, Judge Frizzell noted the lack of "any clear guidance from the Oklahoma Supreme Court" as to whether a *Bosh* claim under Article II, §§ 7 or 9 of the Oklahoma Constitution may be brought for alleged denial of inmate medical care. *See Foutch v. Turn Key Health, LLC*, 17-CV-431-GKF, 2018 WL 1718565 at *3 (N.D. Okla. April 9, 2018).

After the BOCC notified the undersigned of Judge Frizzell's decision, he entered another order (*see* Doc. 62-1), in which he certified the following questions of law to the Oklahoma Supreme Court:

> 1. Does Okla. Const. art. 2, § 7 provide a private cause of action for denial of medical care to an inmate, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act, 51 O.S. §§ 151 et seq.?
>
> 2. If such a right exists, is the cause of action recognized retrospectively?
>
> 3. Does Okla. Const. art. 2, § 9 provide a private cause of action for denial of medical care to an inmate, notwithstanding the limitations of the OGTCA?
>
> 4. If such a right exists, is the cause of action recognized retrospectively?

The BOCC also provided notice of similar questions certified to the Oklahoma Supreme Court by United States Magistrate Judge Steven P. Shreder, of the Eastern District of Oklahoma. (*See* Doc. 61-1). The Oklahoma Supreme Court recently ordered that the questions certified by Judge Frizzell in *Foutch* and those certified by Magistrate Judge Shreder in *Barrios* will be treated as companion cases. (*See* Doc. 62 *in Foutch*, 17-CV-431-GKF).

Given that it appears that the Oklahoma Supreme Court will be addressing the certified questions, which bear directly upon the issues presented in the BOCC's dismissal motion, the Court declines to dismiss the claim against the BOCC *at this time*. The BOCC shall promptly notify this Court of any decision from the Oklahoma Supreme Court on the certified questions. To the extent that the Supreme Court determines that the Oklahoma Constitution does not provide any private cause of action for denial of medical care to an inmate, the BOCC shall at the same time notify the Court of the BOCC's wish to re-urge its dismissal motion on that point. The BOCC's dismissal motion (Doc. 23) is **denied**, without prejudice to reconsideration following a decision by the Oklahoma Supreme Court on the certified questions.

### C. Dismissal Motions by OCSD Officers Harding, Bray, and Shoemaker

Defendants Harding, Bray, and Shoemaker, who were detention officers at the jail, move to dismiss under Rule 12(b)(6), alleging that the Estate has not stated plausible claims under § 1983 against them. Each of the defendants also assert qualified immunity. Those defendants assert that plaintiffs' allegations against them are mostly collective – referring to all three of them – and that the Complaint contains insufficient individualized allegations sufficient to state a plausible claim that each of them was subjectively aware that Mr. Ellis was suffering from an objectively serious medical condition or that these defendants denied him access to medical care. With respect to qualified immunity, these defendants contend that the Estate's allegations do not sufficiently allege specific acts of misconduct and a violation of clearly established law by each defendant. In response, the Estate asserts that the Complaint sufficiently alleges facts as to the objectively obvious and serious medical needs exhibited by Mr. Ellis's condition at the jail, that the defendants disregarded the known and obvious risks to his health, and they took deliberate actions to prevent him from receiving needed medical care.

The Complaint asserts that Harding, Bray, and Shoemaker were employed by the OCSD and worked at the jail. The Estate further alleges: "In deliberate indifference to Mr. Ellis' serious and obvious medical needs, Officers Shoemaker, Harding, [and] Bray . . . told the Paramedic Defendants that Mr. Ellis was 'faking' his illness and that the County was not going to 'foot the bill' for his care at the Hospital." (Doc. 2 at ¶ 30). Prior to that allegation, there are numerous assertions in the Complaint that Mr. Ellis informed detention staff of seizures, convulsions, uncontrollable sweating, dehydration, and the inability to walk, along with pain in his back, ribs and internal organs, and that he begged detention staff for medical attention, but they responded that he needed to stop faking it and lay down and serve his time. (*Id.* at ¶¶ 23, 26).

The Estate also alleges more generally that "Mr. Ellis had obvious, severe and emergent medical needs made known to the Defendants prior to his death," and the defendants "disregarded the known and obvious risk to Mr. Ellis's health and safety." (*See id.* at ¶¶ 50, 51). The Complaint also avers that the defendants failed to provide "timely or adequate medical treatment and proper monitoring and supervision for Mr. Ellis while he was placed under their care, in deliberate indifference to [his] serious medical needs, health and safety," and "[a]s a direct and proximate result . . . Mr. Ellis experienced physical pain, severe emotional distress, mental anguish, loss of consortium, [and] loss of life." (*Id.* at ¶¶ 52, 53).

Under the Eighth Amendment to the United States Constitution, prisoners possess a constitutional right to medical care, which is violated when medical or jail officials are deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). "[T]he Eight Amendment's prohibition against cruel and unusual punishment extends to the unnecessary and wanton infliction of pain caused by prison officials' deliberate indifference to serious medical needs of prisoners." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014)

(internal quotation omitted). This legal principle "applies to pretrial detainees through the due process clause of the Fourteenth Amendment." *Howard v. Dickerson*, 34 F.3d 978, 980 (10th Cir. 1994). Prison officials violate an inmate's constitutional rights where the officials "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). A delay in medical care "constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

Such a claim of deliberate indifference "includes both an objective and a subjective component." *Al-Turki*, 762 F.3d at 1192. The objective component of deliberate indifference may be shown where the inmate's condition is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). The subjective component "lies 'somewhere between the poles of negligence at the one end and purpose . . . at the other.' . . . The Supreme Court has analogized it to criminal recklessness, to the conscious disregard of a 'substantial risk of serious harm.'" *Blackmon v. Sutton*, 734 F.3d 1237, 1244-45 (10th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). The inmate's symptoms "are relevant to the subjective component of deliberate indifference. The question is: were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009).

Applying the foregoing at the pleading stage, the Complaint states a plausible claim against Officers Bray, Harding, and Shoemaker, for deliberate indifference to Mr. Ellis's serious medical needs. The Complaint contains numerous allegations about obvious, life-threatening symptoms and pain exhibited by Mr. Ellis, including multiple seizures, convulsions, uncontrollable sweating,

dehydration, an inability to walk, and severe pain in his back, ribs, and internal organs. (Doc. 2 at ¶¶ 20-23). The Estate's averments indicate that the officers allegedly reported that Mr. Ellis was faking his symptoms, which indicates they observed his symptoms. They also allegedly told the paramedics that the County would not pay for hospital treatment. At the pleading stage, those facts are sufficient to state a plausible claim against them. Whether such a claim will ultimately be supported by evidence is not before this Court at this phase.

Although courts will consider qualified immunity at the dismissal stage, "qualified immunity defenses are typically resolved at the summary judgment stage. . . ." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Asserting qualified immunity at the dismissal stage subjects the defendant raising it to a more challenging standard than would apply at the summary judgment stage, because one is a pleading standard whereas the other involves evidence. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the pleading] stage, it is the defendant's conduct as *alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'") (emphasis in original). And, because "discovery may inform the context [of the individual defendants'] actions . . .," the "'denial of qualified immunity at the dismissal stage does not preclude a renewal of that defense at summary judgment after further factual development has occurred.'" *Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012) (quoting *Weise v. Casper*, 507 F.3d 1260, 1265 (10th Cir. 2007)).[2]

---

[2] The reality that qualified immunity is typically determined on a summary judgment record, rather than at the pleading stage, is illustrated by the cases cited by the officers in their reply in support of qualified immunity. *See, e.g., Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305 (2015) (decided following summary judgment proceedings); *White v. Pauly*, __ U.S. __, 137 S. Ct. 548 (2017) (decided on summary judgment); *Aldaba v. Pickens*, 844 F.3d 870 (10th Cir. 2016) (determined on summary judgment record); *Garcia v. Escalante*, 678 F. App'x 649 (10th Cir. 2017) (summary judgment stage); *Park v. Gaitan*, 680 F. App'x 724 (10th Cir. 2017) (summary judgment stage); *Harris v. Kilpatrick*, No. 05-CV-113, 2007 WL 80939 (W.D. Mi. Jan. 8, 2007) (on motions for summary judgment).

Where qualified immunity is raised at the dismissal stage, the Court must accept all well-pleaded allegations as true and view them in a light most favorable to the plaintiffs. *See Schwartz*, 702 F.3d at 579. "To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show – when taken as true – the defendant plausibly violated [plaintiff's] constitutional rights, which were clearly established at the time of the violation." *Id.* Thus, the first prong of the analysis is whether the allegations plausibly show that (1) "the defendant's actions violated a federal constitutional or statutory right," and (2) the second prong asks whether "the right was clearly established at the time of the defendant's unlawful conduct." *See T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (citation omitted). If the plaintiff fails to satisfy either prong of the inquiry, then the defendant is entitled to qualified immunity. *See id.* (citing *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017)).

With respect to the second component of the qualified immunity analysis, to show clearly established law, a plaintiff must generally identify a Supreme Court or Tenth Circuit opinion which existed at the time of the alleged violation. *Id.* The existing precedent "must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (quoting *Mullenix*, 136 S. Ct. at 308). While the precedent need not be "directly on point," *White*, 137 S. Ct. at 551, the "right's contours" must have been "'sufficiently definite that any reasonable official in [the official's] shoes would have understood that he was violating it.'" *T.D.*, 868 F.3d at 1220 (quoting *City & Cty. Of San Francisco v. Sheehan*, __ U.S. __, 135 S. Ct. 1765, 1774 (2015)). The right must not be defined at a "high level of generality," but "must be 'particularized' to the facts of the case." *Id.* at *9 (quoting *Sheehan*, 135 S. Ct. at 1776 and *White*, 137 S. Ct. at 552).

As noted above, the Complaint states a plausible claim for a violation of Mr. Ellis's constitutional rights by virtue of the officers' alleged deliberate indifference to his obvious and

serious medical needs. The law was clearly established, by October 21 and 22, 2015, that detention officials violate the constitutional rights of inmates when they are deliberately indifferent to an inmate's serious medical needs, and that even a short delay in obtaining medical care where an officer knows of and disregards an excessive risk to the detainee's health or safety may be found unconstitutional. *Olsen*, 312 F.3d at 1304, 1315-17 (10th Cir. 2002); *Estate of Booker v. Gomez*, 745 F.3d 405, 433-34 (10th Cir. 2014); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). While the Court recognizes that the clearly established right is not to be defined "at a high level of generality," it is also true that "'general statements of the law are not inherently incapable of giving fair and clear warning' to officers, but 'in the light of pre-existing law the unlawfulness must be apparent." *White*, 137 S. Ct. at 552 (citations omitted).

The objective component of deliberate indifference requires that the deprivation be sufficiently serious, while the subjective component is satisfied if the officer knows of and disregards an excessive risk to the detainee's health or safety. The allegations of the Complaint satisfy those components. The Complaint indicates that the officers were present when Mr. Ellis was exhibiting objective symptoms of a serious medical need, but that they were deliberately indifferent by delaying and interfering with his receipt of medical care. The Complaint states a plausible claim against the officers under the Fourteenth Amendment for violation of a constitutional right, which was clearly established at the time. The allegations of the officers' conduct plausibly assert a claim that they "prevent[ed] [Mr. Ellis] from receiving treatment or den[ied] him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211. Accordingly, the dismissal motions of Officers Harding, Bray and Shoemaker (Doc. 24, 33, and 45) are **denied**. They may of course re-urge their qualified immunity defenses after discovery and development of the record.

**IV. Conclusion**

For the foregoing reasons, the defendants' standing arguments are **moot**, and the partial dismissal motion (Doc. 31) of Floyd, Durborow, and Horn is **moot.** The BOCC's dismissal motion (Doc. 23) is **denied**, subject to potential reconsideration following a decision by the Oklahoma Supreme Court on the certified questions referenced above. The motions of Officers Harding, Bray, and Shoemaker (Doc. 24, 33, and 45) are **denied**, without prejudice to the reassertion of their arguments at the summary judgment stage.

SO ORDERED this 20th day of July, 2018.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE