## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**AUSTIN P. BOND, as Personal Representative of the Estate of Terral Ellis II, deceased, et al.,**

     **Plaintiffs,**

**v.**

**The SHERIFF OF OTTAWA COUNTY in his Official Capacity, et al.,**

     **Defendants.**

**4:17-cv-00325-CRK-CDL**

### OPINION AND ORDER

This case involves a detainee Terrell Brooks Ellis II ("Ellis") housed at a county jail who died after requesting medical treatment.  Ellis' estate, Terral Ellis, Sr., and Shelly Bliss ("Plaintiffs") brought this action against the sheriff's office managing the jail, the nurse and detention officers who worked at the jail, and the emergency medical ambulance services provider and its paramedics who responded to the jail. Before the Court are five motions for summary judgment filed by defendants Jeremy Floyd,[1] Theresa Horn, Johnny Bray, Charles Shoemaker, and Baptist Healthcare of Oklahoma, LLC, d/b/a Integris Miami EMS, Kent Williams, and Jennifer Grimes

---

[1] At the time of filing of his motion for summary judgment, Jeremy Floyd was the elected Sheriff of Ottawa County, who Plaintiffs had sued in his official capacity.  Def. Floyd's Mot. & Br. Summ. J. at 1, Dec. 13, 2019, ECF No. 120 ("Floyd Br.").  Since Floyd filed his motion for summary judgment, he filed an unopposed motion to substitute The Sheriff of Ottawa County in his Official Capacity in his place as defendant, which the Court granted.  See Minute Order, Feb. 6, 2020, ECF No. 169; Def. Jeremy Floyd's Unopposed Mot. Substitute Party, Jan. 31, 2020, ECF No. 164.

4:17-cv-00325-CRK-CDL

("Integris").[2]   Def. Floyd's Mot. & Br. Summ. J., Dec. 13, 2019, ECF No. 120 ("Floyd

Br."); Def. Theresa Horn's Mot. Summ. J. and accompanying Br. in Supp., Dec. 18,

2019, ECF No. 131 ("Horn Br."); Mot. Summ. J. Def. Johnny Bray and Supp. Br., Dec.

20, 2019, ECF No. 134 ("Bray Br."); Mot. Summ. J. Def. Charles Shoemaker and Supp.

Br., Dec. 20, 2019, ECF No. 135 ("Shoemaker Br."); Mot. Summ. J. Defs. Baptist

Healthcare of Okla., LLC d/b/a Integris Miami EMS, Kent Williams and Jennifer

Grimes, Dec. 18, 2019, ECF No. 133 ("Integris Br.").   Briefing was completed on

September 1, 2022.[3]

---

[2] Baptist Healthcare of Oklahoma, LLC, d/b/a Integris Miami EMS, Kent Williams, and Jennifer Grimes ("Integris") filed a joint motion for summary judgment.  Mot. Summ. J. Defs. Baptist Healthcare of Okla., LLC d/b/a Integris Miami EMS, Kent Williams and Jennifer Grimes at 1, Dec. 18, 2019, ECF No. 133 ("Integris Br.").

[3] The Plaintiffs initially responded to each of the defendants' motions for summary judgment between January 17–22, 2020.  See ECF Nos. 152–53, 157–59.  The defendants each filed their replies to those initial Plaintiffs' responses between January 30, 2020, and February 10, 2020.  See ECF Nos. 162, 165, 174, 176–77. Following a status conference on July 21, 2022, the Court ordered the Plaintiffs to file amended responses to the pending motions and the defendants to file amended replies supporting their motions, to comply with the local rules. Order, July 21, 2022. ECF No. 204.  The Plaintiffs filed their amended responses on August 11, 2022.  Pls.' Amend. Resp. Opp. [Floyd Br.], Aug. 11, 2022, ECF No. 205 ("Resp. Floyd Br."); Pls.' Amend. Resp. Opp. [Bray Br.], Aug. 11, 2022, ECF No. 206 ("Resp. Bray Br."); Pls.' Amend. Resp. Opp. [Horn Br.], Aug. 11, 2022, ECF No. 207 ("Resp. Horn Br."); Pls.' Amend. Resp. Opp. [Integris Br.], Aug. 11, 2022, ECF No. 208 ("Resp. Integris Br."); Pls." Amend. Resp. Opp [Shoemaker Br.], Aug. 11, 2022, ECF No. 209 ("Resp. Shoemaker Br.").  The defendants filed their amended replies on September 1, 2022. Amend. Reply Br. by [Integris] Supp. Mot. Summ. J., Sept. 1, 2022, ECF No. 211 ("Integris Reply"); Reply Def. Johnny Bray to [Resp. Bray Br.], Sept. 1, 2022, ECF No. 212 ("Bray Reply"); Reply Def. Charles Shoemaker to [Resp. Shoemaker Br.], Sept. 1, 2022, ECF No. 213 ("Shoemaker Reply"); Def. Theresa Horn's Amend. Reply Supp. Her Mot. Summ. J., Sept. 1, 2022, ECF No. 214 ("Horn Reply"); Reply to [Resp. Floyd Br.], Sept. 1, 2022, ECF No. 215 ("Floyd Reply").  Plaintiffs also filed a notice of supplemental authority on January 22, 2021, see ECF No. 190, and a motion for a hearing on defendants' motions on January 20, 2022, see ECF No. 197, which the Court denied on September 30, 2022, see ECF No. 216.

4:17-cv-00325-CRK-CDL

## JURISDICTION AND STANDARD OF REVIEW

Plaintiffs seek relief for violations of the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331, 1343.  Compl. ¶¶ 2–3, June 9, 2017, ECF No. 2.  Plaintiffs also assert the Court's supplemental jurisdiction over the related state court claim for negligence pursuant to 28 U.S.C § 1367.  Compl. ¶¶ 4, 65–78.

The Court shall grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When considering summary judgment, the court must view all facts and inferences drawn from the record in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, only disputes over material facts—those affecting the outcome of the case—preclude summary judgment.  Id. at 248.

The moving party need not affirmatively negate non-moving party's claims but rather need only point out there is an absence of evidence to support the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 325 (1986).  The burden then shifts to the non-moving party to show there is a genuine dispute over material facts.  Id. at 324.

Parties may show facts using any evidentiary materials listed in Federal Rule of Civil Procedure 56(c), except the pleadings themselves.  Celotex, 477 U.S. at 324.  While the form of the evidence need not be admissible, the content or substance of the evidence must be admissible.  Thomas v. Int'l Bus. Machines, 48 F.3d 478, 485

4:17-cv-00325-CRK-CDL

(10th Cir. 1995).  If a party fails to properly support an asserted fact or dispute an opposing party's asserted fact, the court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).

## UNDISPUTED FACTS

The Court draws the following undisputed material facts from the record.[4]

On October 17, 2015, Ellis complained of back pain reporting he believed his back was broken.  Horn 56-1 Statement ¶¶ 2–3;[5] Pls.' 56-1 Statement (Horn) ¶¶ 2–3.[6]  Horn, the jail's nurse, did not examine him at that time.  Horn 56-1 Statement ¶¶ 2–3; Pls.' 56-1 Statement (Horn) ¶¶ 2–3.  Horn's working hours appeared to be at her discretion, and she was often not present during regular working hours.  Pls.' 56-1 Statement (Floyd) ¶ 22;[7] Floyd 56-1 Reply ¶¶ 22–25.[8]

---

[4] Several of the parties repeatedly failed to comply with LCvR 56-1 by filing a proper statement of facts, even after the Court ordered the parties to re-file amended responses and replies.  Where a party failed to deny a properly supported fact offered by an opposing party, the Court deems that fact as true.  See Fed. R. Civ. P. 56(e)(2).

[5] Horn included her statement of undisputed material facts pursuant to LCvR 56-1 in her motion brief, see Horn Br. at 1–8, and the Court refers to it as "Horn 56-1 Statement."

[6] Plaintiffs included their statement of undisputed material facts pursuant to LCvR 56-1 in their response brief, see Resp. Horn Br. at 1–14, and the Court refers to it as "Pls.' 56-1 Statement (Horn)."

[7] Plaintiffs included their statement of undisputed material facts pursuant to LCvR 56-1 in their response brief, see Resp. Floyd Br. at 4–20, and the Court refers to it as "Pls.' 56-1 Statement (Floyd)."

[8] Floyd included his statement of undisputed material facts pursuant to LCvR 56-1 in his reply brief, see Floyd Reply at 1–9, and the Court refers to it as "Floyd 56-1 Reply."

4:17-cv-00325-CRK-CDL

On October 19, 2015, Ellis complained of back pain to Horn directly, but this time he believed he had kidney stones. Horn 56-1 Statement ¶ 4; Pls.' 56-1 Statement (Horn) ¶¶ 4–6. When Horn examined Ellis and identified a protrusion on his back as a possible dislocated rib, she administered ibuprofen. Horn 56-1 Statement ¶ 5; Pls.' 56-1 Statement (Horn) ¶¶ 4–6.

On October 21, 2015, Ellis reported having a seizure to jail staff,[9] and Horn instructed jail staff to call emergency services. Horn 56-1 Statement ¶ 7; Pls.' 56-1 Statement (Horn) ¶ 7. Jail staff called emergency services, and paramedics Kent Williams and Jennifer Grimes arrived.[10] Horn 56-1 Statement ¶ 8; Pls.' 56-1 Statement (Horn) ¶¶ 8–11; Integris 56-1 Statement ¶¶ 2–3;[11] Pls.' 56-1 Statement (Integris) ¶¶ 2–3.[12] Ellis described experiencing a seizure and complained of back pain and difficulty walking. Horn 56-1 Statement ¶ 10; Pls.' 56-1 Statement (Horn) ¶¶ 8–11. Detention officer Bray and assistant jail administrator Shoemaker were present at least part of the time when the responding paramedics examined Ellis.

---

[9] For several undisputed facts, both Plaintiffs and defendants refer to statements made by or to, or actions taken by, jail staff without identifying the individuals involved.

[10] Jennifer Grimes is now known as Jennifer Dillinger. Horn 56-1 Statement ¶ 8.

[11] Integris included its statement of undisputed material facts pursuant to LCvR 56-1 in its motion brief, see Integris Br. at 4–7, and the Court refers to it as "Integris 56-1 Statement."

[12] Plaintiffs included their statement of undisputed material facts pursuant to LCvR 56-1 in their response brief, see Resp. Integris Br. at 2–5, and the Court refers to it as "Pls.' 56-1 Statement (Integris)."

4:17-cv-00325-CRK-CDL

Bray 56-1 Statement ¶¶ 4–7;[13] Pls.' 56-1 Statement (Bray) ¶¶ 4–7;[14] Shoemaker 56-1 Statement ¶¶ 8–9;[15] Pls.' 56-1 Statement (Shoemaker) ¶¶ 8–9.[16]   The paramedics did not transport Ellis to the hospital at that time.  See Horn 56-1 Statement ¶¶ 14–15; Pls.' 56-1 Statement (Horn) ¶¶ 14–15; Shoemaker 56-1 Statement ¶ 9; Pls.' 56-1 Statement (Shoemaker) ¶¶ 8–9.  The jail staff advised the paramedics that they would place Ellis in a holding cell in view of the guard desk and would check him every 15 minutes.  Integris 56-1 Statement ¶ 10; Pls.' 56-1 Statement (Integris) ¶¶ 9–11.  Further, the jail staff advised the paramedics that if Ellis' condition changed, they would call back emergency services immediately.  Integris 56-1 Statement ¶ 11; Pls.' 56-1 Statement (Integris) ¶¶ 9–11.

Around 9:30–10:00 p.m. on October 21, 2015, detention officer Cartis Lawson reported to Bray that Ellis said he could not feel his legs, and Bray called Horn.  Bray 56-1 Statement ¶ 13; Pls.' 56-1 Statement (Bray) ¶¶ 13–17; Horn 56-1 Statement ¶ 16; Pls.' 56-1 Statement (Horn) ¶ 16.  Horn told Bray the paramedics had already been to the jail earlier to check on Ellis.  Bray 56-1 Statement ¶ 13; Pls.' 56-1

---

[13] Bray included his statement of undisputed material facts pursuant to LCvR 56-1 in his motion brief, see Bray Br. at 2–11, and the Court refers to it as "Bray 56-1 Statement."

[14] Plaintiffs included their statement of undisputed material facts pursuant to LCvR 56-1 in their response brief, see Resp. Bray Br. at 1–8, and the Court refers to it as "Pls.' 56-1 Statement (Bray)."

[15] Shoemaker included his statement of undisputed material facts pursuant to LCvR 56-1 in his motion brief, see Shoemaker Br. at 2–12, and the Court refers to it as "Shoemaker 56-1 Statement."

[16] Plaintiffs included their statement of undisputed material facts pursuant to LCvR 56-1 in their response brief, see Resp. Shoemaker Br. at 1–13, and the Court refers to it as "Pls.' 56-1 Statement (Shoemaker)."

4:17-cv-00325-CRK-CDL

Statement (Bray) ¶¶ 13–17. Horn then advised Bray to insist Ellis get up and move around, and that he needed to use the bathroom himself. Bray 56-1 Statement ¶ 13; Pls.' 56-1 Statement (Bray) ¶¶ 13–17. She also advised Bray to give Ellis over-the-counter pain medication and that she would be in to see him in the morning. Bray 56-1 Statement ¶ 13; Pls.' 56-1 Statement (Bray) ¶¶ 13–17.

Around 10:23 p.m. on October 21, 2015, Ellis reported to Bray and Lawson that his legs were numb, and Bray responded to Ellis he had no injuries that would cause his legs to go numb and prevent him from moving his legs. Bray 56-1 Statement ¶ 17; Pls.' 56-1 Statement (Bray) ¶¶ 13–17. Bray admits that Ellis' condition was worsening. Pls.' 56-1 Statement (Bray) ¶¶ 13–17; Bray 56–1 Reply ¶¶ 13–17.[17] Bray did not call emergency medical services for Ellis the evening of October 21, 2015. Pls.' 56-1 Statement (Bray) ¶¶ 13–17; Bray 56–1 Reply ¶¶ 13–17.

On October 22, 2015, around 8:28 a.m., Ellis is heard moaning in distress, and the jail staff mocked him and told him that they were not going to call emergency services. Integris 56-1 Statement ¶ 17; Pls.' 56-1 Statement (Integris) ¶¶ 15–22; Pls.' 56-1 Statement (Shoemaker) ¶15; Shoemaker 56-1 Reply ¶¶ 15–17. Around 8:59 a.m. on October 22, 2015, Ellis asks for water, but a member of the jail staff refuses, saying, "don't let him fool you." Integris 56-1 Statement ¶ 18; Pls.' 56-1 Statement (Integris) ¶¶ 15–22.

---

[17] Bray included his statement of undisputed material facts pursuant to LCvR 56-1 in his reply brief, see Bray Reply at 2–11, and the Court refers to it as "Bray 56-1 Reply."

4:17-cv-00325-CRK-CDL

Around 10:45 a.m. on October 22, 2015, Ellis again complained of being unable to walk, that his legs were black and blue, and that he was in pain.  Horn 56-1 Statement ¶ 18; Pls.' 56-1 Statement (Horn) ¶ 18; Shoemaker 56-1 Statement ¶ 22; Pls.' 56-1 Statement (Shoemaker) ¶ 22.  Shoemaker was near the cell Ellis was in when Horn arrived to examine him.  Shoemaker 56-1 Statement ¶ 22; Pls.' 56-1 Statement (Shoemaker) ¶ 22.  Instead of referring Ellis for medical treatment, Horn mocked and threatened him for reporting his symptoms, implied he was faking his illness, and told him she was tired of dealing with him.  Horn 56-1 Statement ¶ 18; Pls.' 56-1 Statement (Horn) ¶ 18; Pls.' 56-1 Statement (Shoemaker) ¶ 22; Shoemaker 56-1 Reply ¶ 22;[18] Integris 56-1 Statement ¶ 19; Pls.' 56-1 Statement (Integris) ¶¶ 15–22.  Despite hearing Horn mock and threaten Ellis, Shoemaker did nothing to assist Ellis.  Pls.' 56-1 Statement (Shoemaker) ¶ 22; Shoemaker 56-1 Reply ¶ 22.

Around 1:45 p.m. on October 22, 2015, Horn contacted emergency services when she noticed Ellis' discolored eyes and skin, low body temperature and pressure, and difficulty speaking.  Horn 56-1 Statement ¶¶ 19–20; Pls.' 56-1 Statement (Horn) ¶¶ 19–20; Integris 56-1 Statement ¶ 20; Pls.' 56-1 Statement (Integris) ¶¶ 15–22.  Ellis died at the hospital at 2:51 p.m. from sepsis/septic shock resulting from acute bronchopneumonia.  Horn 56-1 Statement ¶ 22; Pls.' 56-1 Statement (Horn) ¶ 22; Integris 56-1 Statement ¶ 22; Pls.' 56-1 Statement (Integris) ¶¶ 15–22.

---

[18] Shoemaker included his statement of undisputed material facts pursuant to LCvR 56-1 in his reply brief, see Shoemaker Reply at 1–11, and the Court refers to it as "Shoemaker 56-1 Reply."

There was no physician providing care at the jail even though the jail's Medical Services Policy required medical care to be delivered under the direction of a licensed physician. Pls.' 56-1 Statement (Floyd) ¶¶ 22–23; Floyd 56-1 Reply ¶¶ 22–25. The Medical Services Policy also required a schedule for sick call, but the jail did not maintain scheduled sick call or a sick call list. Pls.' 56-1 Statement (Floyd) ¶¶ 22–23; Floyd 56-1 Reply ¶¶ 22–25. Although the sheriff's office contracted with a physician's assistant to visit the jail once a week for inmate medical exams, visits were not regularly scheduled, and the physician's assistant only visited the jail when and if Horn called her. Pls.' 56-1 Statement (Floyd) ¶ 24; Floyd 56-1 Reply ¶¶ 22–25. The jail's Emergency Medical Care policy permitted detention officers to call emergency services if the nurse was unavailable, but detention officers were trained not to call emergency services unless Horn approved them doing so. Pls.' 56-1 Statement (Floyd) ¶ 26; Floyd 56-1 Reply ¶¶ 26, 28. The jail's Medical Services Policy required the jail administrator to review annually statistics on inmate medical care and also required the jail administrator and nurse to review at least quarterly the medical care's effectiveness and efficiency. Pls.' 56-1 Statement (Floyd) ¶ 32; Floyd 56-1 Reply ¶¶ 31–32. These audits/reviews were never done. Pls.' 56-1 Statement (Floyd) ¶ 32; Floyd 56-1 Reply ¶¶ 31–32.

## DISCUSSION

Floyd, Horn, Bray, Shoemaker, and Integris filed motions for summary judgment. For the following reasons, the Court denies the motions.

4:17-cv-00325-CRK-CDL

## I.    Floyd's Motion for Summary Judgment

Floyd moves for summary judgment arguing that Plaintiffs cannot sustain their claim for municipal liability against him because Sheriff Durborow, the sheriff holding office at the time of the alleged violation against Ellis, did not personally participate in the alleged constitutional violation,[19] Floyd Br. at 12, the sheriff's office did not maintain unconstitutional customs, policies, or practices, id. at 13–17, and the sheriff's office did not fail to properly train its employees, id. at 17–19.  Plaintiffs argue Floyd is not entitled to summary judgment because he does not contest that Horn and the detention officers committed underlying violations of Ellis' constitutional rights, Resp. Floyd Br. at 34–35, and the sheriff's office maintained unconstitutional policies or customs, id. at 35–44.  For the following reasons, the Court denies Floyd's motion for summary judgment.

By bringing a claim against an individual defendant in his official capacity, Plaintiffs bring a claim for municipal liability.  See Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010) (bringing a § 1983 claim against individual defendants in their official capacities is another way of claiming against the municipality they represent).  For a claim for municipal liability, Plaintiffs must show (1) the existence of a municipal custom or policy, and (2) the custom or policy caused the violation alleged.

---

[19] The Plaintiffs argue they need not establish that Sheriff Durborow personally participated in the alleged constitutional violations because their claims are treated as against the sheriff's office.  See Resp. Floyd Br. at 34 n.12.  Because municipalities are only liable for their own unconstitutional or illegal policies and not for torts committed by its employees, Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998), Sheriff Durborow's personal participation in the alleged constitutional violation is not material.

Jenkins v. Wood, 81 F.3d 988, 993–94 (10th Cir. 1996) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)).   Municipalities are only liable for their own unconstitutional or illegal policies and not for torts their employees commit.  Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998).

However, for their claim of municipal liability, Plaintiffs must show the sheriff's office took a deliberate culpable action depriving Ellis of his federal rights. See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (holding that a plaintiff must show the municipality took the action with the "requisite degree of culpability" and caused the deprivation of rights).

A municipal policy or custom can take the following forms:

(1) a formal regulation or policy statement; (2) an informal custom "amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010) (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189–90 (10th Cir. 2010) (quoting City of St. Lois v. Praprotnik, 485 U.S. 112, 127 (1988) and City of Canton v. Harris, 489 U.S. 378, 388–91 (1989))) (internal quotation marks omitted). Where municipal policy itself violates federal law, a plaintiff need only prove the existence of the unlawful policy.  Barney, 143 F.3d at 1307.  A jail's policy of deficient

medical care supports municipal liability for the official managing the jail.  Burke v. Regalado, 935 F.3d 960, 1001 (10th Cir. 2019).

Plaintiffs establish a genuine dispute regarding facts which, if proven, could lead to a jury verdict in its favor.  First, Plaintiffs establish a genuine dispute of fact as to whether the sheriff's office had an informal practice of disregarding prisoners' health complaints.  Despite a written policy to the contrary, there was no physician providing care at the jail. Pls.' 56-1 Statement (Floyd) ¶¶ 22–23; Floyd 56-1 Reply ¶¶ 22–25.  There was also no regularly scheduled sick call at the jail despite a written policy requiring the jail to maintain scheduled sick call.  Pls.' 56-1 Statement (Floyd) ¶¶ 22–23; Floyd 56-1 Reply ¶¶ 22–25.  Horn, the jail's nurse, was often not at the jail during regular working hours.  Pls.' 56-1 Statement (Floyd) ¶ 22; Floyd 56-1 Reply ¶¶ 22–25. Although the jail contracted with a physician's assistant to conduct inmate medical exams once per week, she did not regularly visit and only came to the jail when, and if, Horn requested her assistance.  Pls.' 56-1 Statement (Floyd) ¶ 24; Floyd 56-1 Reply ¶¶ 22–25.  The sheriff's office trained detention officers that they could only send an inmate to emergency services if Horn approved it.  Pls.' 56-1 Statement (Floyd) ¶ 26; Floyd 56-1 Reply ¶¶ 26, 28.  Based on these facts, a factfinder could determine the jail's informal practice was to disregard inmate's health complaints.

Second, Plaintiffs establish a genuine dispute whether the sheriff's office failed to adequately train and supervise its staff involved in this incident.  Although written policy required the jail administrator and nurse to conduct quarterly and annual audits of the effectiveness and efficiency of the medical delivery system, the jail

administrator and nurse never performed these audits.  Pls.' 56-1 Statement (Floyd) ¶ 32; Floyd 56-1 Reply ¶¶ 31–32.  These failures to follow the jail's own policy support a possible finding that the sheriff's office did not properly supervise its staff.

Additionally, a factfinder could determine the informal practice of disregarding inmate health complaints and the sheriff office's failure to train and supervise its staff caused Ellis' lack of access to medical treatment.  Thus, Plaintiffs can sustain their claim that the sheriff office's practices subject it to municipal liability for denying medical treatment for Ellis' medical needs.

## II.    Horn's Motion for Summary Judgment

Defendant Horn moves for summary judgment arguing Plaintiffs cannot show she was deliberately indifferent to Ellis' serious medical needs or, alternatively, that she is entitled to qualified immunity.  Horn Br. at 1, 10–17.  Horn also argues Plaintiffs are not entitled to punitive damages in any case.  Id. at 18.  Plaintiffs respond Horn is not entitled to summary judgment because there is evidence showing she was deliberately indifferent to Ellis' medical needs, Pls.' Br. at 1, 18–23, and Horn is not entitled to qualified immunity, id. at 23–27.  Plaintiffs also argue they can sustain their claim for punitive damages.  Id. at 27–28.  For the following reasons, the Court denies Horn's motion for summary judgment.

### A.    Deliberate Indifference and Qualified Immunity

The Supreme Court characterizes deliberate indifference as recklessness, which lies between negligence at one end of the spectrum and purpose or knowledge on the other.  Farmer v. Brennan, 511 U.S. 825, 836 (1994).  Deliberate indifference

does not require an express intent to harm, only that the official acted or failed to act despite her knowledge of a substantial risk of serious harm. <u>Mata v. Saiz</u>, 427 F.3d 745, 752 (10th Cir. 2005). Whether a jail official knew of and disregarded a substantial risk is a question of fact often inferred from circumstantial evidence, such as if the risk was obvious. <u>Estate of Beauford v. Mesa Cnty.</u>, 35 F.4th 1248, 1263 (10th Cir. 2022).

Deliberate indifference to the medical needs of a prisoner violates the Eighth Amendment's prohibition of cruel and unusual punishment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). Deliberate indifference requires plaintiff to identify an objectively serious medical condition a prison official subjectively knew of and disregarded. <u>Estate of Beauford</u>, 35 F.4th at 1262; <u>Prince v. Sheriff of Carter Cnty.</u>, 28 F.4th 1033, 1044 (10th Cir. 2022). A medical condition is sufficiently serious if it has been diagnosed as mandating treatment or is so obvious even a lay person would easily recognize the need for medical treatment. <u>Al-Turki v. Robinson</u>, 762 F.3d 1188, 1192–93 (10th Cir. 2014). However, medical malpractice does not constitute deliberate indifference under the Eighth Amendment. <u>Green v. Branson</u>, 108 F.3d 1296, 1303 (10th Cir. 1997). A delay in providing medical treatment only violates the Eighth Amendment if the delay caused substantial harm to the inmate. <u>Oxendine v. Kaplan</u>, 241 F.3d 1272, 1276–77 (10th Cir. 2001). "[L]ifelong handicap, permanent loss, or considerable pain" could constitute substantial harm. <u>Garrett v. Stratman</u>, 254 F.3d 946, 950 (10th Cir. 2001).

4:17-cv-00325-CRK-CDL

Plaintiffs must show that the official knew of and disregarded a substantial risk to inmate health or safety.  Farmer, 511 U.S. at 837.  A medical professional who serves as a "gatekeeper for other medical personnel capable of treating the condition" can be liable for deliberate indifference by denying access to medical care if she delays or refuses to fulfill her role as gatekeeper for other medical personnel.  Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000).  Further, a prison official acting as a "gatekeeper" to medical care is not deliberately indifferent if the official did not completely refuse the gatekeeper role and instead referred the prisoner for treatment. Crowson v. Washington Cnty., 983 F.3d 1166, 1180 (10th Cir. 2020) (holding that nurse was not deliberately indifferent where he requested psychological evaluation of inmate, made notations in his file, and discussed his condition with the physician's assistant), cert. denied Washington Cnty. v. Crowson, 142 S. Ct. 224 (2021). However, even if an official was aware of the substantial risk and the inmate ultimately suffered harm, the official may not be liable if he or she responded reasonably to the risk.  Farmer, 511 U.S. at 844.

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show: (1) the defendant violated the plaintiff's constitutional right, and (2) that constitutional right was clearly established.  Prince, 28 F.4th at 1043; T.D. v. Patton, 868 F.3d 1209, 1220 (10th Cir. 2017).  Plaintiffs demonstrate a clearly established constitutional right if there is binding precedent that existed when the alleged violation occurred "placed the statutory or constitutional question beyond debate."  White v. Pauly, 137 S. Ct. 548, 551 (2017) (quoting Mullenix v. Luna, 577

U.S. 7, 12 (2015)).  To demonstrate a clearly established right, a plaintiff must identify a case holding that the defendant, acting under similar circumstances as defendant in the instant case, violated plaintiff's constitutional rights.  White, 137 S. Ct. at 552 ("the clearly established law must be 'particularized' to the facts of the case"); T.D., 868 F.3d at 1220 (the "contours" of the constitutional right must have been sufficiently definite to inform any reasonable official in the defendant's shoes that he or she was violating that right) (quoting City of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015)).

Here, Plaintiffs dispute two material facts—whether Horn was aware Ellis had a significant medical condition, and whether Horn denied medical treatment to him by failing to treat him or refer him for treatment.  Horn presents facts tending to show she was unaware of the seriousness of Ellis' medical condition until approximately 1:45 p.m. on October 22, 2015, when she discovered his condition had changed due to his difficulty speaking and symptoms of respiratory distress.  Horn 56-1 Statement ¶¶ 4–5, 7–14, 20.  In response, Plaintiffs point to facts showing Horn should have been aware of how serious Ellis' medical condition was prior to 1:45 p.m. on October 22, 2015.  Specifically, when Horn examined Ellis on October 19, 2015, she failed to take his vital signs, Pls.' 56-1 Statement (Horn) ¶¶ 4–6, which tends to show Horn recklessly failed to inform herself of Ellis' condition.  Further, around 4:29 p.m. on October 21, 2015, the jail dispatcher informed Horn that Ellis appeared to be having a seizure.  Pls.' 56-1 Statement (Horn) ¶ 7.  Although Horn notes the paramedics Williams and Grimes examined Ellis following his seizure and stated

they did not consider Ellis' condition to be serious, Horn 56-1 Statement ¶ 14, Plaintiffs counter that the paramedics failed to fully examine Ellis' vital signs. Pls.' 56-1 Statement (Horn) ¶¶ 8–11. A jury could conclude that, regardless of the paramedics' awareness of Ellis' condition, Horn was aware of the seriousness of Ellis' condition. Plaintiffs point to facts that put Horn's knowledge in dispute. For example, on the evening of October 21, 2015, several hours after Ellis' seizure, Bray informed Horn that Ellis' condition had changed, that he was complaining he could not feel his legs, and that the paramedics said to call them back if his condition changed. Pls.' 56-1 Statement (Horn) ¶ 16. Contrary to Horn's assertion that jail staff informed her around 9:45 a.m. on October 22, 2015, that Ellis was not complaining, Horn 56-1 Statement ¶ 17, there are several statements showing Ellis to be in distress. Pls.' 56-1 Statement (Horn) ¶ 17. Around 10:45 a.m. on October 22, 2015, Ellis complained to Horn that he was unable to move and that his legs were turning black. Pls.' 56-1 Statement (Horn) ¶ 18. Plaintiffs' expert witness stated that discoloration of the legs or mottling indicates the presence of sepsis. Pls.' 56-1 Statement (Horn) ¶ 18. Sepsis follows other infections like acute pneumonia, which if properly treated would have prevented Ellis' death according to Plaintiff's expert. Pls.' 56-1 Statement (Horn) ¶ 24. The expert opined it is basic to care for an otherwise healthy individual like Ellis who has a significant change in his health and that there were many opportunities for individuals at the jail to intervene. Pls.' 56-1 Statement (Horn) ¶ 24. Plaintiffs therefore point to several facts contradicting Horn's allegation she was unaware of the seriousness of Ellis' condition.

Even if Horn had been aware Ellis' condition was serious, Plaintiffs must still show there is a genuine dispute whether Horn denied Ellis medical treatment or failed to properly refer him for treatment. Horn provides several facts tending to support her assertion that she responded reasonably to Ellis' condition. See Horn 56-1 Statement ¶¶ 3, 5, 7, 19–20. In response, Plaintiffs allege several facts that Horn denied or delayed providing Ellis access to treatment for his medical condition. When Bray called Horn the evening of October 21, 2015, to report Ellis' condition had changed, Horn failed to call emergency services, despite the paramedics instructing jail staff to call them back if Ellis' condition changed. Pls.' 56-1 Statement (Horn) ¶ 16. On the morning of October 22, 2015, Horn instructed Shoemaker not to assist Ellis in getting water or using the bathroom, even if he requested help. Pls.' 56-1 Statement (Horn) ¶ 17. Around 10:45 a.m. on October 22, 2015, when Ellis complained of paralysis and discoloration of his legs, the undisputed facts are that Horn mocked Ellis, cursed at him, insisted there was nothing wrong with him, and threatened to shackle him to the "D ring," a ring attached to the floor. Horn 56-1 Statement ¶ 18; Pls.' 56-1 Statement (Horn) ¶ 18. Horn did not call the paramedics until approximately 1:45 p.m. on October 22, 2015. Horn 56-1 Statement ¶¶ 19–20. Thus, Plaintiffs raise facts that dispute Horn's assertion she provided Ellis appropriate medical treatment or referred him for treatment timely. See Farmer, 511 U.S. at 837 (jail staff are deliberately indifferent when aware of and disregard a substantial risk to inmate health or safety); Sealock, 218 F.3d at 1211 (a medical professional serving as gatekeeper for medical treatment is liable for deliberate

indifference by denying access to medical care if she delays fulfilling her role as gatekeeper).   A factfinder could reasonably find Horn was both aware of the seriousness of Ellis' medical condition and failed to either treat him or refer him to another medical professional.

Horn argues she is entitled to qualified immunity.   Horn Br. at 14–17. Plaintiffs have shown a clearly established constitutional right to adequate medical care for a serious medical need.   See Resp. Horn Br. at 25–26 (citing Estelle, 429 U.S. at 103–04 ("deliberate indifference to serious medical needs of prisoners constitutes" a violation of the Eighth Amendment); Mata, 427 F.3d at 749 ("there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right"); Sealock, 218 F.3d at 1211 ("deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment")).   As discussed above, there is a genuine dispute whether Horn was aware of the seriousness of Ellis' condition and whether she refused to properly treat him or delayed referring him to another medical professional for proper treatment.   Thus, Horn is not entitled to qualified immunity.

### B.   Punitive Damages

A jury may assess punitive damages in a § 1983 action when there are facts showing the defendant was motivated by evil motive or intent or was recklessly or callously indifferent to the federal rights of others.   Eisenhour v. Cnty., 897 F.3d 1272, 1280–81 (10th Cir. 2018) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).   Reckless

or callous indifference means acting "in the face of a perceived risk that [one's] actions will violate federal law." Id. at 1281 (quoting Kolstad v. American Dental Ass'n, 527 U.S. 526, 536 (1999)).   Further, availability of punitive damages turns on the defendant's mental state rather than the degree of harm.  Id. at 1281 (citing Kolstad, 527 U.S. at 538).

Horn argues Plaintiffs are not entitled to punitive damages because they cannot show evidence she acted with reckless or callous disregard for Ellis' rights. Horn Br. at 18.  However, there is a genuine dispute of fact whether Horn acted with reckless or callous indifference towards Ellis' rights by failing to provide him adequate medical treatment.  The record shows Ellis repeatedly reported his pain and other symptoms.  Horn 56-1 Statement ¶¶ 2–5, 9–10, 16, 18; Pls.' 56-1 Statement (Horn) ¶¶ 2–6, 8–11, 16, 18.  On the morning of October 22, 2015, Horn not only denied Ellis medical treatment, but she also mocked him and threatened him for reporting those symptoms.  Horn 56-1 Statement ¶ 18; Pls.' 56-1 Statement (Horn) ¶ 18.  A reasonable factfinder could determine that mocking Ellis instead of providing him medical treatment constitutes not only deliberate indifference but also reckless or callous disregard for his rights.

## III.   Bray and Shoemaker's Motions for Summary Judgment

Bray and Shoemaker filed similar motions for summary judgment, arguing they were unaware Ellis had a developing serious medical condition, relied on Horn and the paramedics who examined Ellis, and that Plaintiffs have failed to establish their conduct caused the harm to Ellis.  Bray Br. at 1, 14–20; Shoemaker Br. at 1, 12–

4:17-cv-00325-CRK-CDL

21.   Bray and Shoemaker further argue they are protected by qualified immunity. Bray Br. at 1–2, 21–23; Shoemaker Br. at 1, 22–25.   Bray and Shoemaker also argue Plaintiffs are not entitled to punitive damages.   Bray Br. at 1–2, 24; Shoemaker Br. at 1, 25.   Plaintiffs respond that a reasonable jury could determine that Bray and Shoemaker violated Ellis' constitutional rights and that qualified immunity protects neither Bray nor Shoemaker.   Resp. Bray Br. at 10–18; Resp. Shoemaker Br. at 17–24.   For the following reasons, the Court denies Bray and Shoemaker's motions for summary judgment.

## A.     Deliberate Indifference and Qualified Immunity

As discussed, deliberate indifference requires a plaintiff to identify an objectively serious medical condition a jail official subjectively knew of and disregarded.   Estate of Beauford, 35 F.4th at 1262; Prince, 28 F.4th at 1044. Detention officers are deliberately indifferent when they intentionally interfere with access to medical care, Estelle, 429 U.S. at 104–05, but not if they refer the inmate for treatment.   Crowson, 983 F.3d at 1180.   A delay may violate the Eighth Amendment if the delay causes substantial harm to the inmate.   Oxendine, 241 F.3d at 1276–77.

As discussed, when a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show: (1) the defendant violated the plaintiff's constitutional right, and (2) that constitutional right was clearly established.   Prince, 28 F.4th at 1043; T.D., 868 F.3d at 1220.

Here, Plaintiffs dispute two material facts regarding Bray and Shoemaker's liability—whether they were aware Ellis had a significant medical condition and whether they failed to seek medical treatment for him.  Bray and Shoemaker present facts tending to show they were unaware of the seriousness of Ellis' medical condition. Bray 56-1 Statement ¶¶ 4, 7, 10–12, 14–18; Shoemaker 56-1 Statement ¶¶ 8, 11–15, 18–19, 22.  In response, Plaintiffs point to facts showing both Bray and Shoemaker should have been aware of how serious Ellis' medical condition was.  Specifically, Bray was present when the paramedics arrived on October 21, 2015, and knew Ellis reported seizure symptoms.  Pls.' 56-1 Statement (Bray) ¶¶ 5–7.  Bray admits the paramedics instructed him to call them if Ellis' condition changed, Pls.' 56-1 Statement (Bray) ¶ 11, demonstrating he knew Ellis had a medical condition that could get worse.  Around 9:34 p.m. on October 21, 2015, Ellis told Bray his legs were numb.  Pls.' 56-1 Statement (Bray) ¶¶ 13–17.  Around 10:11 p.m., Ellis asked Bray to call an ambulance.  Pls.' 56-1 Statement (Bray) ¶¶ 13–17.  Bray admitted that Ellis' condition on the evening of October 21, 2015, was deteriorating.  Pls.' 56-1 Statement (Bray) ¶¶ 13–17.  Shoemaker was also present on October 21, 2015, when the paramedics examined Ellis for seizure symptoms.  Shoemaker 56-1 Statement ¶¶ 8–9.  Shoemaker was aware Ellis had been asking for help and that his condition had deteriorated from the evening of October 21, 2015, to the morning of October 22, 2015. Pls.' 56-1 Statement (Shoemaker) ¶¶ 8–9.  Shoemaker was present the morning of October 22, 2015, when Ellis exhibited symptoms of distress and repeatedly asked for help.  Pls.' 56-1 Statement (Shoemaker) ¶¶ 15, 20.  Shoemaker later stated he did not

believe Ellis was faking his symptoms.  Pls.' 56-1 Statement (Shoemaker) ¶ 18. Shoemaker was present at approximately 10:42 a.m. on October 22, 2015, when Ellis reported he could not feel his legs and that they were discolored.  Pls.' 56-1 Statement (Shoemaker) ¶ 22.  Thus, Plaintiffs raise facts tending to show Bray and Shoemaker were aware of the seriousness of Ellis' medical condition.

Even if Bray and Shoemaker had been aware Ellis' condition was serious, Plaintiffs must still show there is a genuine dispute whether they failed to seek medical treatment for Ellis.  Bray and Shoemaker provide several facts tending to support their assertion that they relied on Horn or the paramedics and were therefore relieved from their duty to seek proper treatment for Ellis.  Bray 56-1 Statement ¶¶ 4, 13–18; Shoemaker 56-1 Statement ¶¶ 15–17, 21–22, 24–25.  In response, Plaintiffs assert facts showing Bray and Shoemaker's reliance on Horn was unreasonable and that Bray and Shoemaker failed to obtain proper treatment for Ellis.  Specifically, a detention officer that Plaintiffs allege to be Bray told the paramedics on October 21, 2015, that Ellis was faking his illness and advised them not to take Ellis to the hospital unless his condition was life threatening.  Pls.' 56-1 Statement (Bray) ¶¶ 5–7.  When Ellis reported his legs were numb the evening of October 21, 2015, Bray told him he did not have any injuries that would cause him to be unable to move his legs. Pls.' 56-1 Statement (Bray) ¶¶ 13–17.  When Horn told Bray on the evening of October 21, 2015, that she would not be in to examine Ellis until the following day, Bray still did not call emergency services, despite the paramedics instructing him to do so if Ellis' condition changed.  Pls.' 56-1 Statement (Bray) ¶¶ 13–17.  On the morning of

4:17-cv-00325-CRK-CDL

October 22, 2015, when Ellis repeatedly asked for help, Shoemaker refused to help him and instead informed him that he did not believe him and that he would not call emergency services.  Pls.' 56-1 Statement (Shoemaker) ¶¶ 15–16, 18.  Shoemaker repeatedly ignored Ellis' cries for help.  Pls.' 56-1 Statement (Shoemaker) ¶¶ 18–20. When Horn mocked and threatened Ellis in response to his complaint that he couldn't feel his legs and they were discolored, Shoemaker did nothing to help Ellis.  Pls.' 56-1 Statement (Shoemaker) ¶ 22.  Thus, Plaintiffs raise facts disputing Bray and Shoemaker's assertions that they sought medical care for Ellis.  A factfinder could reasonably find Bray and Shoemaker knew Ellis' condition was serious yet denied him access to treatment.

Bray and Shoemaker are not entitled to qualified immunity.  Plaintiffs have shown there is a clearly established constitutional right to adequate medical care and to be free from denial of care for a serious medical need.  Further, there is a genuine dispute whether Bray and Shoemaker were deliberately indifferent to Ellis' serious medical needs by delaying or denying him access to proper medical treatment, in light of Horn's refusals to properly treat Ellis or refer him to another medical provider.

## B.    Punitive Damages

Bray and Shoemaker also argue they are entitled to summary judgment of Plaintiffs' claim for punitive damages because there is no evidence Bray and Shoemaker deliberately intended to cause Ellis any harm.  Bray Br. at 24; Shoemaker Br. at 25.  However, Bray and Shoemaker were aware Ellis had a seizure and was continuing to experience symptoms when they allegedly delayed seeking medical

4:17-cv-00325-CRK-CDL

treatment for him.  Bray 56-1 Statement ¶ 4, 13; Pls.' 56-1 Statement (Bray) ¶¶ 4, 13–17; Bray 56–1 Reply ¶¶ 4, 13–17; Shoemaker 56-1 Statement ¶¶ 8, 22; Pls.' 56-1 Statement (Shoemaker) ¶¶ 8–9, 22; Shoemaker 56-1 Reply ¶¶ 8, 22.  Because there is a genuine dispute whether Bray and Shoemaker were deliberately indifferent to Ellis' medical needs, which a factfinder could find constitutes reckless or callous indifference, summary judgment on the Plaintiffs' punitive damages claims against Bray and Shoemaker fails.

## IV.   Integris' Motion for Summary Judgment

Integris argues the Court should conclude as matter of law that the conduct of jail staff is an intervening and superseding cause regardless of any breach of care on its part.  Integris Br. at 4.  Plaintiffs oppose the motion for summary judgment arguing that, because the conduct of the jail staff was foreseeable to Integris, their conduct cannot be an intervening cause.  Resp. Integris Br. at 7–9.  For the following reasons, the Court denies Integris' motion for summary judgment.

Medical providers owe a duty of care to patients.  Franklin v. Toal, 19 P.3d 834, 837 (Okla. 2001).  Providers who fail to comply with the standard of care may be liable for negligence.  Id.  For a defendant to be liable for negligence, defendant's conduct must proximately cause the harm at issue.  Thompson v. Presbyterian Hosp., Inc., 652 P.2d 260, 263 (Okla. 1982).  The proximate cause of an injury must be the "efficient" cause that sets in motion the chain of circumstances leading to an injury. Thur v. Dunkley, 474 P.2d 403, 405 (Okla. 1970).  If the negligence complained of merely creates a condition permitting the injury to occur and a subsequent

4:17-cv-00325-CRK-CDL

independent act causes the injury, then the existence of such condition is not the proximate cause of the injury because the intervening act causes the injury. Id.

The intervention of a new, independent, and efficient cause, which was neither anticipated nor reasonably foreseeable, breaks the "causal connection" between an act of negligence and the resulting injury. Thompson, 652 P.2d at 263–64. Nonetheless, not every intervening act severs the causal link between the negligence and the injury. Johnson v. Hillcrest Health Ctr., Inc., 70 P.3d 811, 819 (Okla. 2003). When a cause combines with another act, or several events coincide to cause a single injury, the court can hold each negligent actor accountable. Id. Concurrent causes are those "acting contemporaneously," which together cause an injury that would not have resulted without both actions. City of Okmulgee v. Hemphill, 83 P.2d 189, 191 (Okla. 1938).

The question of proximate cause becomes an issue of law when there is no evidence from which a jury could "reasonably" find the required causal nexus between the negligent act and the injury. Henry v. Merck & Co., 877 F.2d 1489, 1495 (10th Cir. 1989). The court may find a cause is not the proximate cause where an intervening act broke the causal nexus. Id. A true intervening act must meet a three-element test; it must be: "(1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably foreseeable." Thompson, 652 P.2d at 264.

4:17-cv-00325-CRK-CDL

The first element, an independent, intervening act, is one that is "not logically compelled by, and does not naturally flow from," the original negligence. <u>Henry</u>, 877 F.2d at 1495. The intervening act may be linked to the original act but cannot be "invited by nor an ordinary response to" the original act. <u>Id.</u>

The second element, whether an act is adequate to bring about the result, necessarily requires a determination, as a matter of law, as to causation. Thus, granting judgment as a matter of law based on an intervening cause should only be done after cause-in-fact is established. <u>See</u> W. Page Keeton, et al., <u>Prosser and Keaton on the Law of Torts</u> § 44, at 301 (5th ed. 1984) (discussing that causation is not an issue in actions involving intervening cause because causation does not arise until a plaintiff establishes cause-in-fact); <u>see, e.g.</u>, <u>Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co.</u>, 15 S.W.3d 425, 432 (Tenn. Ct. App. 1997) (stating that intervening acts appear as a legal question only at issue once plaintiff establishes causation-in-fact).

The third element is that the occurrence of the intervening act must not be reasonably foreseeable. If there is "room for reasonable difference of opinion as to whether such act was [wrongful] or foreseeable, the question should be left for the jury." <u>Trask v. Franco</u>, 446 F.3d 1036, 1047 (10th Cir. 2006) (quoting Restatement (Second) of Torts § 453 cmt. b (1965)).

Here, genuine disputes of material fact as to the three elements of whether the conduct of the jail staff is a supervening cause preclude summary judgment for Integris. <u>See</u> <u>Anderson</u>, 477 U.S. at 248. Although Plaintiff only contests the element

27

of foreseeability, see Resp. Integris Br. at 8–9, none of the elements have been established.  Plaintiffs present a disputed material fact tending to show the conduct of the jail staff was foreseeable.  Plaintiffs claim a detention officer, believed to be Bray, told the paramedics Ellis was "faking" his condition and if the illness was not "life-threatening" not to take him to the hospital.  Pls.' 56-1 Statement (Integris) ¶¶ 4–5.  A jury could conclude, based on the fact that Bray told the paramedics Ellis was "faking" his illness, that the paramedics should have foreseen the jail staff's mistreatment and thus should have taken him to the hospital.

Integris has also not established the lack of a genuine dispute of fact as to the other two elements.  While Plaintiffs assume, without discussing, that the acts of the jail staff are independent and causal, see Resp. Integris Br. at 7–8, Horn, Shoemaker, Bray, and Floyd dispute that their conduct was the cause of Ellis' injury and challenge Integris' facts regarding their conduct.  Horn denies committing any wrongdoing towards Ellis.  Def. Theresa Horn's First Am. Partial Answer Pls.' Compl. ¶ 1, Oct. 20, 2017, ECF No. 53.  Horn also denies Ellis died while in the jail's custody.  Id. ¶ 22.  Further, Horn denies telling Ellis he was faking and that she did not refer him to a physician.[20]  Id. ¶¶ 23–32.  Bray and Shoemaker deny having any responsibility or liability for the violation of Ellis' constitutional rights.  Answer Def. Shoemaker to Pls.' Compl. ¶ 1, Aug. 2, 2018, ECF No. 69 ("Shoemaker Answer"); Answer Def. Bray

---

[20] Although Horn states in her answer that she did not fail to refer Ellis to a physician, see Compl. ¶¶ 23–32, she did not deny Plaintiffs' undisputed fact that she failed to provide medical care to Ellis after mocking and threatening him around 10:44 a.m. on October 22, 2015.  See Pls.' 56-1 Statement (Horn) ¶ 18; Horn Reply.

to Pls.' Compl. ¶ 1, Aug. 2, 2018, ECF No. 70 ("Bray Answer").  Bray and Shoemaker deny that jail staff told Ellis the jail would not pay for the emergency services visit, or that anyone was "deliberately indifferent" to him.  Shoemaker Answer ¶ 30; Bray Answer ¶ 30.  Floyd asserts he committed "no wrongdoing" toward Ellis.  Def. Jeremy Floyd's First Am. Partial Answer Pls.' Compl. ¶ 1, Oct. 20, 2017, ECF No. 51.  These arguments embrace the ultimate issue of the liability of the other defendants. Therefore, because causation in fact of the harm done to Ellis has not been established, the questions of causation and intervening cause are for the factfinder, and Integris' motion for summary judgment fails.

## CONCLUSION

Thus, Floyd, Horn, Bray, Shoemaker, and Integris are not entitled to summary judgment of the Plaintiffs' claims.  It is,

**ORDERED** that Defendant Floyd's Motion for Summary Judgment is denied; and it is further

**ORDERED** that Defendant Theresa Horn's Motion for Summary Judgment is denied; and it is further

**ORDERED** that the Motion for Summary Judgment of Defendant Johnny Bray is denied; and it is further

**ORDERED** that the Motion for Summary Judgment of Defendant Charles Shoemaker is denied; and it is further

**4:17-cv-00325-CRK-CDL**

**ORDERED** that the Motion for Summary Judgment by Defendants Baptist Healthcare of Oklahoma, LLC d/b/a Integris Miami EMS, Kent Williams and Jennifer Grimes is denied; and it is further

**ORDERED** that the parties confer and file with the Court a joint proposed scheduling order amending the dates in the Second Amended Scheduling Order, see ECF No. 102, on or before **Friday, November 18, 2022**.

/s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated:        November 4, 2022
              New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.