IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)   AUSTIN P. BOND, as Personal Representative of the Estate of Terral Ellis, II, deceased, (2) TERRAL B. ELLIS, SR., and (3) SHELLY BLISS,<br><br>         Plaintiffs,<br><br>v.<br><br>(1)   THE SHERIFF OF OTTAWA COUNTY, in his official capacity, et al.,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.   4:17-cv-00325-CRK-CDL<br>)<br>)<br>)<br>)<br>)<br>) |

_____

**DEFENDANT THE SHERIFF OF OTTAWA COUNTY,
IN HIS OFFICIAL CAPACITY'S, MOTION IN LIMINE**
_____

Wellon B. Poe, OBA No. 12440
Jamison C. Whitson, OBA No. 18490
COLLINS, ZORN, & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK   73105-1815
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
E-mail: wbp@czwlaw.com
   jcw@czwlaw.com

ATTORNEYS FOR DEFENDANT THE
SHERIFF OF OTTAWA COUNTY, IN HIS
OFFICIAL CAPACITY

April 3, 2023

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS...........................................................................................i - ii

TABLE OF AUTHORITIES ..................................................................................iii - iv

LIST OF EXHIBITS ...................................................................................................v

INTRODUCTION ...................................................................................................1

ARGUMENT AND AUTHORITY ............................................................................2

1.     REFERENCES TO OKLAHOMA DEPARTMENT OF HEALTH
   JAIL STANDARDS OR OTHER NATIONAL STANDARDS AND
   SUGGESTIONS THAT THE JAIL'S POLICIES AND PRACTICE
   WERE NOT IN COMPLIANCE THEREWITH ..............................................2

2.     ANY DISCUSSION REGARDING WHETHER THE JAIL RECEIVED
   THE DECEDENT'S EMS RECORDS AFTER HIS DEATH.............................3

3.     ANY REFERENCES TO PRIOR ALLEGED DENIALS OF INMATE
   MEDICAL CARE AT THE JAIL WITHOUT PROOF AND REFERENCES
   TO "SICK" OR "ILL" INMATES GENERALLY ............................................3

4.     ANY SUGGESTION THAT THE COST OF MEDICAL CARE
   AFFECTED THE QUALITY OF CARE AT THE JAIL......................................4

5.     ANY EVIDENCE OR REFERENCES TO PRIOR INMATE
   SUICIDES OCCURRING AT THE OTTAWA COUNTY JAIL.......................5

6.     ANY REFERENCE OR SUGGESTION THAT NURSE HORN DIAGNOSED
   INMATES OUTSIDE THE SCOPE OF HER LICENSURE AS AN LPN.........5

7.     ANY REFERENCE OR SUGGESTION THAT THE DECEDENT OR
   ANY OTHER INMATE WAS CHAINED TO THE "D-RING" ......................6

8.     ANY REFERENCE TO THE MANNER IN WHICH OTHER JAIL,
   FACILITIES MAY PROVIDE INMATE MEDICAL CARE ...........................6

9.     ANY TESTIMONY OR EVIDENCE SUGGESTING THAT
   FORMER SHERIFF DURBOROW ATTEMPTED
   TO "COVER UP" WHAT HAPPENED TO THE DECEDENT
   BY REMOVAL AND REPLACEMENT OF THE DVR ..................................7

10      ANY TESTIMONY OR EVIDENCE SUGGESTING THAT THE
DECEDENT WAS PLACED IN "ADMINISTRATIVE SEGREGATION"
IN VIOLATION OF THE JAIL'S WRITTEN POLICIES ...................................................8

11.    ANY REFERENCE TO OR DISCUSSION OF THE FAILURE
TO SIGN THE JAIL'S WRITTEN POLICIES OR SUGGESTION
THAT SUCH FAILURE RENDERED THEM INVALID.................................................8

12.    ANY SUGGESTION THAT THE DECEDENT DID NOT KNOW OF HIS
RIGHT TO MEDICAL CARE AT THE JAIL OR HOW TO ACCESS SAME...............9

13.    TESTIMONY AND EVIDENCE OF GRIEF AND LOSS OF COMPANIONSHIP
AND PECUNIARY LOSS OF SURVIVING FAMILY ..............................................10

14.    ANY SUGGESTION THAT AN LPN CANNOT BE SUPERVISED
BY A DOCTOR OR A PHYSICIAN ASSISTANT ........................................................11

15.    PREVIOUS OR SUBSEQUENT LAWSUITS AGAINST OTTAWA COUNTY............11

16.    NEWSPAPER ARTICLES AND MEDIA PUBLICATIONS ....................................11

17.    THE POSSIBLE EXISTENCE OF LIABILITY INSURANCE ...................................13

18.    EXPERT MEDICAL OPINIONS FROM ANY LAY WITNESS ...............................13

19.    FINANCIAL CONDITION OF THE PARTIES ........................................................14

20.    ANY EXPERT WITNESS OPINIONS NOT PREVIOUSLY DISCLOSED ..............15

21.    OPINIONS OR QUESTIONS OF WITNESSES ABOUT THE
TRUTHFULNESS OR HONESTY OF OTHER WITNESSES .....................................15

22.    OPINION OF COUNSEL ...........................................................................................15

23.    HYPOTHETICAL QUESTIONS ..................................................................................16

24.    PERSONALIZING THE CASE ..................................................................................16

25.    USING A VERDICT TO "SEND A MESSAGE" OR
TO PUNISH THE DEFENDANTS ..............................................................................17

26.    THE DEFENDANT SHERIFF JOINS IN THE
INTEGRIS DEFENDANTS' MOTION IN LIMINE......................................................17

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Banque Hypothecaire Du Conton DeGeneve v. Union Mines, Inc.*,
652 F.Supp. 1400 (D.Md. 1987) ................................................................................. 1

*Berry v. City of Muskogee, Okl.*, 900 F.2d 1489 (10th Cir. 1990) ............................... 10

*Boxberger v. Martin*, 552 P.2d 370 (Okla. 1976) ........................................................ 13

*Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166 (5th Cir. 2005) ...................... 16

*Donohue v. Hoey*, 109 Fed. App'x. 340 (10th Cir. 2004) ............................................ 12

*Draper v. Airco, Inc.*, 580 F.2d 91 (3rd Cir. 1978) ...................................................... 14

*Eisenhower v. Burger*, 431 F.2d 833 (6th Cir. 1970) ................................................... 14

*Fitzgerald v. Manning*, 679 F.2d 341 (4th Cir. 1982) .................................................. 13

*Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519 (10th Cir. 1983) ....................... 14

*Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732 (5th Cir. 1978) ......................................... 16

*Kinan v. City of Brockton*, 876 F.2d 1029 (1st Cir. 1989) ........................................... 11

*Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074 (8th Cir. 2000) ..................................... 16

*McKellips v. Saint Francis Hosp.*, 741 P.2d 467 (Okla. 1987) ..................................... 13

*Miles v. Ramsey*, 31 F.Supp.2d 869 (D.Colo.1998) ..................................................... 12

*Moody v. Ford Motor Co.*, 506 F.Supp.2d 823 (N.D. Okla. 2007) .............................. 17

*New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646 (10th Cir. 1989) ............. 12

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) ........................................................... 1

*Pivot Point Interne, Inc. v. Charline Prods., Inc.*, 932 F.Supp. 220 (N.D.Ill. 1996) ..... 1

*Romero v. Bd. of Cty. Comm'rs*, 60 F.3d 702 (10th Cir. 1995)  ......................... 2, 3, 8, 9

*Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226 (7th Cir. 1982) .................... 16

*Tanberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005) ............................................................ 2, 3, 8, 9

*United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811,
84 L.Ed. 1129 (1940) ............................................................................................................ 14

*United States v. Stahl*, 616 F.2d 30 (2nd Cir. 1980) ............................................................ 14

*Whitehead v. Food Max of Miss. Inc.*, 163 F.3d 265 (5th Cir. 1998) ..................................... 16, 17

*Whiteley v. OKC Corp.*, 719 F.2d 1051 (10th Cir. 1983) ..................................................... 14

## **STATUTES**

42 U.S.C § 1983 ......................................................................................................... 2, 9, 10

12 O.S. § 1053(B) ........................................................................................................... 10

12 O.S. §§ 2401-2404 ..................................................................................................... 14

## **RULES**

Fed. R. Evid. 401 ..................................................................................................... passim

Fed. R. Evid. 402 ..................................................................................................... passim

Fed. R. Evid. 403 ..................................................................................................... passim

Fed. R. Evid. 411 ........................................................................................................... 13

Fed. R. Evid. 608 ........................................................................................................... 15

Fed. R. Evid. 701 ........................................................................................................... 15

Fed. R. Evid. 702 ........................................................................................................... 15

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................. 15

# LIST OF EXHIBITS

Exhibit 1      Deposition of Theresa Horn taken on October 8, 2019

Exhibit 2      Deposition of Jeff Harding taken on November 15, 2019

Exhibit 3      Deposition of Todd Wilcox taken on October 21, 2019

Exhibit 4      Fax of EMS Records to Jail

Exhibit 5      Deposition of Terry Durborow taken on November 18, 2019

Exhibit 6      Deposition of Charles Shoemaker taken on November 21, 2019

Exhibit 7      Deposition of Johnny Bray taken on November 20, 2019

Exhibit 8      10/31/15 Letter of Inmate Justin Barrera

Exhibit 9      Plaintiff's Preliminary Exhibit List

Exhibit 10     Bray Incident Report

Exhibit 11     Plaintiff's Preliminary Witness List

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1)  AUSTIN P. BOND, as Personal            )
Representative of the Estate of             )
Terral Ellis, II, deceased,                 )
(2) TERRAL B. ELLIS, SR., and               )
(3) SHELLY BLISS,                           )
                                            )
        Plaintiffs,                )
                                            )
v.                                          )    Case No.   4:17-cv-00325-CRK-CDL
                                            )
(1)  THE SHERIFF OF OTTAWA                  )
COUNTY, in his official capacity, et al.,   )
                                            )
        Defendants.                )

## DEFENDANT THE SHERIFF OF OTTAWA COUNTY, IN HIS OFFICIAL CAPACITY'S, MOTION IN LIMINE

COME NOW the Defendant, the Sheriff of Ottawa County, in his official capacity, respectfully requests that the Court enter an Order in Limine to exclude from evidence at the trial of this case any argument, evidence, questioning, suggestion, or innuendo related to the below-listed topics. Plaintiffs object to all Motions in Limine except Motion No. 17.

## INTRODUCTION

The purpose of a motion in limine is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Conton DeGeneve v. Union Mines, Inc.*, 652 F.Supp. 1400, 1402 (D.Md. 1987). In addition to saving trial time, pretrial rulings on evidence frequently save the parties time, effort, and cost in preparing and presenting their cases. *Pivot Point Interne, Inc. v. Charline Prods., Inc.*, 932 F.Supp. 220, 222 (N.D.Ill. 1996). With this standard in mind, Defendants ask the Court to exclude the following evidence.

<u>**ARGUMENT AND AUTHORITY**</u>

**1.**     **REFERENCES TO OKLAHOMA DEPARTMENT OF HEALTH JAIL STANDARDS OR OTHER NATIONAL STANDARDS AND SUGGESTIONS THAT THE JAIL'S POLICIES AND PRACTICE WERE NOT IN COMPLIANCE THEREWITH.**

The Defendant Sheriff anticipates that Plaintiff will seek to introduce testimony or other evidence regarding the Oklahoma Department of Health's Jail Standards and whether the Ottawa County Jail's policies and practices related to healthcare plan, classification, medical questionnaire, 15 minute checks for inmates under medical observation, and other policies and practice were in compliance therewith. (Ex. 1, Horn Depo., p. 51:13 – p. 56:8; p. 62:16 – p. 63:6; p. 67:6-20; p. 72:8-16; Ex. 2, Harding Depo., p. 47:20 – p. 48:19; p. 52:10 – p. 53:12; p. 55:4-23; p. 63:1 – p. 66:13; p. 70:21 – p. 76:20). Likewise, the Defendant Sheriff anticipates that Plaintiff will seek to introduce testimony or other evidence suggesting the jail's policies are not in compliance with national standards of accrediting associations such as the NCCHC or ACA. (Ex. 3, Wilcox Depo., p. 140:2-17). However, any such evidence or questioning should be excluded as it is irrelevant, misleading, and would confuse the jury.

The clearly-established law requires the exclusion of any evidence regarding the violation of state law, state regulations, policies and procedures, and state and/or national standards. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1167 (10th Cir. 2005) (police standard operating procedures irrelevant and likely to cause jury confusion); *see also Romero v. Bd. of Cty. Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995) (violations of state law and police procedures do not give rise to 42 U.S.C § 1983 claim). Indeed, the standard in this case is whether any agent, employee or office of the Ottawa County Jail was deliberately indifferent to the Decedent's objectively serious medical needs and whether any such deliberate indifference was attributable to any policy, practice, or

custom the Defendant Sheriff. Violation of any standard, policy, or state law does not amount to a violation of one's civil rights. *See Tanberg*, 401 F.3d at1167; *see also Romero*, 60 F.3d at 705. Therefore, any questions, references, or evidence regarding the Oklahoma Jail Standards, or any other national standards, and whether the Ottawa County Jail's policies and practices were in compliance therewith should be prohibited since they are irrelevant, misleading, and would confuse the jury. *See* Fed. R. Evid. 401-403.

___X___ Objection        _____ No Objection

**2.      ANY DISCUSSION REGARDING WHETHER THE JAIL RECEIVED THE DECEDENT'S EMS RECORDS AFTER HIS DEATH.**

The Defendant Sheriff anticipates that Plaintiff will attempt to introduce evidence indicating that the Ottawa County Jail received the Decedent's EMS records after his death and to inquire as to the reasons for jail staff requesting those records. (Ex. 4, Fax Cover Sheet of EMS Records to Jail; Ex. 1, Horn Depo., p. 189:14 – p. 190:18). However, any such evidence and questioning should be excluded pursuant to Fed. R. Evid. 401-403 as it has absolutely no relevance to Plaintiff's claim against the Defendant Sheriff in this matter.

___X___ Objection        _____ No Objection

**3.      ANY REFERENCES TO PRIOR ALLEGED DENIALS OF INMATE MEDICAL CARE AT THE JAIL WITHOUT PROOF AND REFERENCES TO "SICK" OR "ILL" INMATES GENERALLY.**

The Defendant Sheriff anticipates that Plaintiff's counsel may attempt to reference or mention alleged prior instances of denial of inmate medical care at the Ottawa County Jail without providing any actual evidence or proof that such prior instances actually occurred. Likewise, the Defendant Sheriff anticipates that Plaintiff's counsel may refer to inmates being "sick" or "ill" in general and implying that such condition requires emergency medical treatment without reference

3

to any specific, objectively serious medical need. Any such references are improper and should be excluded pursuant to Fed. R. Evid. 401-403 as they irrelevant, misleading, confusing to the jury and unfairly prejudicial to the Defendant Sheriff.

    __X__ Objection    _____ No Objection

**4.    ANY SUGGESTION THAT THE COST OF MEDICAL CARE AFFECTED THE QUALITY OF CARE AT THE JAIL.**

    The Defendant Sheriff anticipates that Plaintiff may seeks to ask admit testimony or other evidence regarding the costs of providing medical to inmates at the Ottawa County Jail and to suggest to the jury that the costs of medical care at the jail negatively affected the quality of care provided to inmates. However, there is simply no evidence to support such a suggestion. While Nurse Horn had some general conversations with the former Sheriff and Jail Administrator regarding the medical bills for the facility, there is no evidence that those costs affected the quality of medical care provided to inmates in any way. (Ex. 1, Horn Depo., p. 80:24 – p. 84:11; p. 95:12 – p. 97:10; Ex. 2, Harding Depo., p. 109:18 –p. 110:6; p. 116:1 – p. 117:10; Ex. 5, Durborow Depo., p. 61:22 – p. 63:21). As such, any evidence regarding the costs of providing medical to inmates at the Ottawa County Jail and any suggestion that the costs of medical care at the jail negatively affected the quality of care provided to inmates should be excluded pursuant to Fed. R. Evid. 403 as any minimal probative value of such evidence is substantially outweighed by the danger of unfair prejudice to the Defendant Sheriff, and by the danger it will confuse the issues and mislead the jury.

    __X__ Objection    _____ No Objection

**5.     ANY EVIDENCE OR REFERENCES TO PRIOR INMATE SUICIDES OCCURRING AT THE OTTAWA COUNTY JAIL.**

The Defendant Sheriff anticipates that Plaintiff may seeks to ask admit testimony or other evidence regarding prior inmate suicides that occurred at the Ottawa County Jail. (Ex. 1, Horn Depo., p. 85:2 – p. 90:9). However, there is no evidence that these prior suicides were in any way related to the provision of inmate medical care at the jail. Therefore, any questions, references, or evidence regarding these prior suicides should be prohibited since they are irrelevant, misleading, and would confuse the jury. *See* Fed. R. Evid. 401-403.

<u>    X    </u> Objection     _____ No Objection

**6.     ANY REFERENCE OR SUGGESTION THAT NURSE HORN DIAGNOSED INMATES OUTSIDE THE SCOPE OF HER LICENSURE AS AN LPN.**

The Defendant Sheriff anticipates that Plaintiff may reference or suggest that Nurse Horn was diagnosing inmate medical issues outside the scope of her licensure as an LPN. In particular, at deposition, Plaintiff's counsel suggested that Nurse Horn had diagnosed the Decedent with a protruding spinal disc outside the scope of her licensure and without performing the necessary medical testing to make such a diagnosis. However, as Nurse Horn repeatedly corrected Plaintiff's counsel, she made no such diagnosis, but rather merely stated that it *appeared* that the Decedent had a protruding disc. (Ex. 1, Horn Depo., p. 115:16 – p. 119:1). The suggestion that Nurse Horn diagnosed inmate medical conditions outside the scope of her licensure is simply without evidentiary support. As such, any such reference or suggestion should be excluded pursuant to Fed. R. Evid. 403 as any minimal probative value of such evidence is substantially outweighed by the danger of unfair prejudice to the Defendant Sheriff, and by the danger it will confuse the issues and mislead the jury.

___X___ Objection      _____ No Objection

**7. ANY REFERENCE OR SUGGESTION THAT THE DECEDENT OR ANY OTHER INMATE WAS CHAINED TO THE "D-RING."**

The Defendant Sheriff anticipates that Plaintiff may attempt to reference or suggest that the Decedent was chained to the "D-ring" in his cell. However, while Nurse Horn did threaten to chain the Decedent to the D-Ring on one occasion, he was never in fact chained to the D-ring. Moreover, prior to this incident, there is no evidence that D-ring had ever been used for the punishment of inmates, and the Sheriff had never approved use of the D-ring. (Ex. 1, Horn Depo., p. 132:10 – p. 133:9; Ex. 2, Harding Depo., p. 213:13 – p. 215:1; Ex. 5, Durborow Depo., p. 109:5-20; p. 113:7 – p. 114:16; p. 147:6 – p. 148:5; Ex. 6, Shoemaker Depo., p. 106:16-18; p. 107:2-20; Ex. 7, Bray Depo., p. 77:2-25; p. 82:6-17). As such, any false reference or suggestion that the Decedent, or any other inmate, had been chained to the D-ring is wholly without evidentiary support. Consequently, any such reference or suggestion should be prohibited as irrelevant, misleading, confusing to the jury, and unfairly prejudicial to the Defendant Sheriff. *See* Fed. R. Evid. 401-403.

___X___ Objection      _____ No Objection

**8. ANY REFERENCE TO THE MANNER IN WHICH OTHER JAIL FACILITIES MAY PROVIDE INMATE MEDICAL CARE.**

The Defendant Sheriff anticipates that Plaintiff may attempt to reference the practices of other jail facilities regarding the provision of medical care to inmates. (Ex. 5, Durborow Depo., p. 72:17 – p. 73:7). However, the manner in which other jail facilities may provide inmate medical care is wholly irrelevant to Plaintiff's claim against the Defendant Sheriff. Rather, the only relevant issue in that regard is whether the Ottawa County Jail's medical system was constitutionally

adequate. As such, any such references should be prohibited as irrelevant, misleading, and confusing to the jury. *See* Fed. R. Evid. 401-403.

___X___ Objection _____ No Objection

**9. ANY TESTIMONY OR EVIDENCE SUGGESTING THAT FORMER SHERIFF DURBOROW ATTEMPTED TO "COVER UP" WHAT HAPPENED TO THE DECEDENT BY REMOVAL AND REPLACEMENT OF THE DVR.**

The Defendant Sheriff anticipates that Plaintiff may attempt to introduce testimony or other evidence suggesting that former Ottawa County Sheriff Terry Durborow attempted to "cover up" what happened to the Decedent by removing two Digital Video Recorders (DVRs) and hard drives from the Ottawa County Jail after the Decedent's death and replacing them with a new ones. (*See* Ex. 8, 10/31/15 Letter of Inmate Justin Barrera; Ex. 9, Plaintiff's Preliminary Exhibit List; Ex. 5, Durborow Depo., p. 178:1 – p. 179:25). However, there is no evidence other than pure speculation that former Sheriff Durborow was attempting to cover up what happened to the Decedent. Rather, as Durborow explained during his deposition he removed the DVRs and hard drives from the jail after receiving a record preservation letter from Plaintiff's counsel in order to preserve the video evidence. (Ex. 5, Durborow Depo., p. 139:12-25). Indeed, the video evidence was preserved and provided to Plaintiff. As such, any minimal probative value such evidence may have in this case is substantially outweighed by the danger of unfair prejudice to the Defendant Sheriff, and by the danger it will confuse the issues and mislead the jury. Thus, such evidence is excludable pursuant to Fed. R. Evid. 403.

___X___ Objection _____ No Objection

10.   **ANY TESTIMONY OR EVIDENCE SUGGESTING THAT THE DECEDENT WAS PLACED IN "ADMINISTRATIVE SEGREGATION" IN VIOLATION OF THE JAIL'S WRITTEN POLICIES.**

The Defendant Sheriff anticipates that Plaintiff may attempt to introduce testimony or other evidence suggesting that the Decedent was placed in "administrative segregation" in violation of the Jail's written policies. However, the Decedent was not placed in "administrative segregation" under the Jail's policies. Rather, he was merely moved into a holding cell to monitor his medical condition. (Ex. 10, Bray Incident Report; Ex. 2, Harding Depo., p. 98:10 – p. 104:25). Regardless, this issue is completely irrelevant. As discussed above, the clearly-established law requires the exclusion of any evidence regarding the violation of internal policies and procedures. *See Tanberg*, 401 F.3d at 1167 (police standard operating procedures irrelevant and likely to cause jury confusion); *see also Romero*, 60 F.3d at 705 (violations of state law and police procedures do not give rise to 42 U.S.C § 1983 claim). Violation of any standard, policy, or state law does not amount to a violation of one's civil rights. Therefore, any questions, references, or evidence suggesting that the Decedent was placed in "administrative segregation" in violation of the Jail's written policies should be prohibited since they are irrelevant, misleading, and would confuse the jury. *See* Fed. R. Evid. 401-403.

_____X___ Objection   _____ No Objection

11.   **ANY REFERENCE TO OR DISCUSSION OF THE FAILURE TO SIGN THE JAIL'S WRITTEN POLICIES OR SUGGESTION THAT SUCH FAILURE RENDERED THEM INVALID.**

The Defendant Sheriff anticipates that Plaintiff may attempt to introduce testimony or other evidence the former Sheriff's failure to actually physically sign certain of the Ottawa County Jail's written policies and to suggest that such failure rendered those policies invalid and not in

compliance with the Oklahoma Jail Standards. (Ex. 2, Harding Depo., p. 58:4 – p. 61:7). However, the particular policy provision which Plaintiff's counsel referenced in this regard during Harding's deposition clearly states "Terry Durborow, Sheriff, Ottawa County Sheriff's Office, Signature on File." Former Sheriff Durborow further testified that, to his recollection, he had reviewed and approved new policies and policy changes even if he did not physically sign them. (Ex. 5, Durborow Depo., p. 96:16 – p. 98:6). As such, any suggestion that the failure to physically sign any written policy provisions somehow rendered them invalid is without support.

Regardless, the issue is entirely irrelevant. As discussed above, the clearly-established law requires the exclusion of any evidence regarding the violation of internal policies and procedures. *See Tanberg*, 401 F.3d at 1167 (police standard operating procedures irrelevant and likely to cause jury confusion); *see also Romero*, 60 F.3d at 705 (violations of state law and police procedures do not give rise to 42 U.S.C § 1983 claim). Violation of any standard, policy, or state law does not amount to a violation of one's civil rights. Therefore, any questions, references, or evidence regarding the Sheriff's failure to physically sign any of the jail's written policies should be prohibited since they are irrelevant, misleading, and would confuse the jury. *See* Fed. R. Evid. 401-403.



_____X_____ Objection          _____ No Objection

## 12.     ANY SUGGESTION THAT THE DECEDENT DID NOT KNOW OF HIS RIGHT TO MEDICAL CARE AT THE JAIL OR HOW TO ACCESS SAME.

The Defendant Sheriff anticipates that Plaintiff may attempt to introduce testimony or other evidence suggesting that the Decedent did not know of his right to medical care at the Ottawa County Jail or how to access same. However, any such suggestion is utterly baseless as the record is replete with instances of the Decedent making medical complaints and requesting medical care.

9

As such, any such suggestions should be prohibited as irrelevant, misleading, and confusing to the jury. *See* Fed. R. Evid. 401-403.

___X___ Objection      _____ No Objection

## 13. TESTIMONY AND EVIDENCE OF GRIEF AND LOSS OF COMPANIONSHIP AND PECUNIARY LOSS OF SURVIVING FAMILY.

The Defendant Sheriff anticipates that Plaintiff's counsel intends to call the Decedent's surviving family members to testify as to the own grief and loss of companionship of the Defendant and their own pecuniary losses following his death. (See Ex. 11, Plaintiff's Preliminary Witness List). However, while damages for such losses are available to Plaintiff under Oklahoma's wrongful death statute, Okla. Stat. tit. 12, § 1053(B), that statute does not apply to Plaintiffs 42 U.S.C. § 1983 claim against the Defendant Sheriff, and such familial damages are not available to Plaintiff under § 1983. *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1500-1507 (10th Cir. 1990). Consequently, such evidence is wholly irrelevant to Plaintiff's claim against the Defendant Sheriff and is excludable pursuant to Fed. R. Evid. 401-402. Moreover, because such testimonial evidence will inevitably be very emotional and impactful, any minimal probative value it may have in this case is substantially outweighed by the danger of unfair prejudice to the Defendant Sheriff, and by the danger it will confuse the issues and mislead the jury. Thus, any such evidence is also excludable pursuant to Fed. R. Evid. 403.

___X___ Objection      _____ No Objection

**14. ANY SUGGESTION THAT AN LPN CANNOT BE SUPERVISED BY A DOCTOR OR A PHYSICIAN ASSISTANT.**

The Defendant Sheriff anticipates that Plaintiff may attempt to introduce testimony or other evidence suggesting that it is unlawful or improper for an LPN, such as Nurse Horn, to be directly supervised by a Doctor or a Physician Assistant (PA). However, any such suggestion is simply without any legal basis or support. *See* Jail Standards, OAC 310:670-5-8 Medical care and health services. As such, any such suggestions should be prohibited as irrelevant, misleading, and confusing to the jury. *See* Fed. R. Evid. 401-403.

___X___ Objection    _____ No Objection

**15. PREVIOUS OR SUBSEQUENT LAWSUITS AGAINST OTTAWA COUNTY.**

The Defendant Sheriff specifically moves the Court to instruct counsel for Plaintiff, Plaintiff, and Plaintiff's respective witnesses to refrain from referencing or mentioning, either directly or indirectly, by innuendo, or otherwise, any previous or subsequent lawsuits against Ottawa County, the Defendant Sheriff, or any of their agents or employees. This would be irrelevant and prejudicial. *See* Fed. R. Evid. 401-403; *see also Kinan v. City of Brockton*, 876 F.2d 1029, 1034-35 (1st Cir. 1989) (trial court's exclusion of two other civil rights lawsuits against defendant police officer was not abuse of discretion).

___X___ Objection    _____ No Objection

**16. NEWSPAPER ARTICLES AND MEDIA PUBLICATIONS.**

The Defendant Sheriff specifically moves the Court to instruct counsel for Plaintiff, Plaintiff, and Plaintiff's respective witnesses to refrain from referencing or mentioning, either directly or indirectly, by innuendo, or otherwise, any newspaper articles or other media publications. The Defendant Sheriff has reason to believe that Plaintiff will seek to admit one or more newspaper articles

or media publication regarding the Decedent's death. Specifically, Plaintiff identified a February 7, 2016 news article published in The Frontier, *What happened to Terral? Family questions suspicious Ottawa County jail death*, in his Preliminary Exhibit List. (Ex. 9, Plaintiff's Preliminary Exhibit List).

Such articles and publications are nothing more than rank hearsay. *See Miles v. Ramsey*, 31 F.Supp.2d 869, 876 (D.Colo.1998) ("Courts have uniformly found that newspaper articles are inadmissible hearsay when the article was not written or acknowledged by the defendant, yet is produced as proof of facts stated in that article"). Plaintiff intends to offer such articles and statements as truth of the matters asserted therein, and yet the declarants at issue are not available for cross-examination. Because these articles amount to hearsay, they are inadmissible. *See e.g., Donohue v. Hoey*, 109 Fed. App'x. 340, 346-347 (10th Cir. 2004) ("The only record evidence they offer in support of this fact is a newspaper article that quotes Cassidy for this information . . . Because the article does not lay a foundation. . . it is inadmissible hearsay and cannot be considered in reviewing the motion for summary judgment."); *New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989) ("These purported admissions in the article were recounted in statements of a third party reporter, who was unavailable for cross-examination, and the statements were offered to prove the truth of the matters asserted. The fact that the statement was in the form of a newspaper account reinforces its hearsay character, for the final product is not the reporter's alone, and it was not demonstrated that the statements as reported were accurate. . ."). Such articles and publications should be excluded from evidence.

<u>   X   </u>   Objection   <u>     </u>   No Objection

## 17. THE POSSIBLE EXISTENCE OF LIABILITY INSURANCE.

The Defendant Sheriff specifically moves the Court to instruct counsel for Plaintiff, Plaintiff, and Plaintiff's respective witnesses to refrain from referencing or mentioning, either directly or indirectly, by innuendo, or otherwise, the possible existence of liability insurance. The law does not permit any party to offer evidence of the existence of liability insurance. Although there are exceptions to this evidentiary rule, none of the exceptions apply to the circumstances at hand. Fed. R. Evid. 411. Therefore, this Court should enter an order precluding Plaintiff, his counsel, or any witness from inferring or mentioning the existence of liability insurance or any other such coverage at any time during the trial proceedings.

_____ Objection    __X__ No Objection

## 18. EXPERT MEDICAL OPINIONS FROM ANY LAY WITNESS.

The Defendant Sheriff specifically moves this Court to instruct counsel for the Plaintiff, Plaintiff, and Plaintiff's respective lay witnesses to refrain from testifying about or expressing any opinion about the medical causation of any of the damages or injuries of the Decedent attributable to the alleged acts of the Defendant Sheriff or any of his agents or employees. This includes origin, etiology, or medical reasons for the death of the Decedent and the Decedent's mental state before his death, inasmuch as such testimony fundamentally requires expert medical testimony. *Boxberger v. Martin*, 552 P.2d 370 (Okla. 1976); *Fitzgerald v. Manning,* 679 F.2d 341 (4th Cir. 1982); *McKellips v. Saint Francis Hosp.,* 741 P.2d 467 (Okla. 1987).

__X__ Objection    _____ No Objection

**19.    FINANCIAL CONDITION OF THE PARTIES.**

The Defendant Sheriff specially moves this Court to instruct Plaintiff to refrain from referring to the financial condition or wealth of or the ability to pay any judgment herein as to the Defendant Sheriff or Ottawa County, or any statement or suggestion that Plaintiff's family and heirs are struggling to make ends meet. Such statements are completely immaterial to the issues involved, and further, the mere making of such a reference would be extremely prejudicial and harmful to the Defendant Sheriff.

"Reference to the wealth or poverty of either party, or reflection on financial disparity, is clearly improper argument." *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983) (citing *United States v. Stahl*, 616 F.2d 30, 33 (2nd Cir. 1980)); *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3rd Cir. 1978); *Eisenhower v. Burger*, 431 F.2d 833, 837 (6th Cir. 1970); *see also* 12 O.S. §§ 2401-2404. Further, the United States Supreme Court has held "appeals to class prejudice to be highly improper and urged trial courts to be alert to prevent such discourse." *Garcia*, 708 F.2d at 522 (citing *United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940)); see also *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1055 (10th Cir. 1983) (finding that the financial condition of defendant is only relevant at the punitive damages stage of trial, if necessary). Because any statements and/or references to the financial condition of the parties are improper and prejudicial to the Defendant Sheriff, they should be excluded by an Order from this Court.

_____X_____ Objection          _____ No Objection

14

**20.  ANY EXPERT WITNESS OPINIONS NOT PREVIOUSLY DISCLOSED.**

Under Fed. R. Civ. P. 26(a)(2)(B), expert witnesses are required to provide a "complete statement of all opinions the witness will express and the basis and reasons for them." Plaintiff's expert witness should be barred from expressing any opinion not previously disclosed in the expert witness reports or in the expert's deposition taken in October 2019.

___X___ Objection       _____ No Objection

**21.  OPINIONS OR QUESTIONS OF WITNESSES ABOUT THE TRUTHFULNESS OR HONESTY OF OTHER WITNESSES.**

The Defendant Sheriff anticipates that Plaintiff may attempt to elicit testimony regarding his or other witnesses' dislike of other witnesses and/or the Defendants, or to suggest opinions as to the honesty and/or truthfulness of other witnesses. This is improper under Fed. R. Evid. 608, if the truthfulness of the subject witness has not previously been put at issue. The Defendant Sheriff requests that Plaintiff be ordered not to offer such testimony or evidence at trial.

___X___ Objection       _____ No Objection

**22.  OPINION OF COUNSEL.**

Plaintiff's counsel is neither a qualified lay witness under Fed. R. Evid. 701 nor an established expert under Fed. R. Evid. 702. As such, there is no rule by which opinion testimony by Plaintiff's counsel may be properly admitted. Such testimony is therefore not relevant under Fed. R. Evid. 401, and must be deemed inadmissible under Fed. R. Evid. 402-403. Further, any appeal to the jury based upon Plaintiff's opinion risks undue prejudice where the jury may consider Plaintiff's counsel to be a proper or influential officer of the court. Such testimony must be inadmissible under Fed. R. Evid. 403.

___X___ Objection       _____ No Objection

## 23.    HYPOTHETICAL QUESTIONS.

Plaintiff's counsel should not pose hypothetical fact scenarios and questions of witnesses. It would be improper for Plaintiff to use these witnesses to elicit hypothetical-based legal opinions that would be tantamount to instructing the jury on the law in this case. This is improper and would be unfairly prejudicial to the Defendant Sheriff. Instructing the jury on the proper considerations is the Court's province, and it should not be invaded by a misuse of these witnesses.

___X___ Objection          _____ No Objection

## 24.    PERSONALIZING THE CASE.

The Defendant Sheriff anticipates that Plaintiff may plea to the jury to consider how they or their family members might feel if a family member died under similar circumstances as the Decedent in this case. This tactic, also called the "Golden Rule Argument," is inherently prejudicial and should be prohibited at trial pursuant to 401-403 of the Federal Rules of Evidence. A plea to the jury members to "put themselves in the shoes of the plaintiff and do unto him as they would have done unto them under similar circumstances ... [is] improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than the evidence." *Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 541 (5th Cir. 1978). Other courts have stated that use of the golden rule argument is "universally condemned because of the effect it has on triers of fact." *Lovett ex ref. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (quoting *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982)).

> Even if counsel does not explicitly invoke the Golden Rule but merely invites the jury to place themselves in the position of the plaintiff, the result is effectively the same and the risk of taint is no different.

*Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 179 (5th Cir. 2005) (*citing Whitehead v.*

*Food Max of Miss. Inc.*, 163 F.3d 265, 278 (5th Cir. 1998). The Defendant Sheriff asks that all such arguments be barred in limine in advance of trial.

___X___ Objection _____ No Objection

## 25. USING A VERDICT TO "SEND A MESSAGE" OR TO PUNISH THE DEFENDANTS.

The Defendant Sheriff specifically moves the Court to instruct counsel for Plaintiff, Plaintiff, and Plaintiff's respective witnesses to refrain from referencing or mentioning, either directly or indirectly, by innuendo, or otherwise, using a verdict to send a message or to punish the Defendants. The jury's verdict should be based upon the evidence presented to them and the instructions, which they receive from the court. Moreover, the Defendant Sheriff is sued only in his official capacity and it not subject to any jury award of punitive damages. Therefore, Plaintiff should be prohibited from requesting, suggesting, or implying that the jury should "send a message" with their verdict or "show with their verdict what they think about the alleged constitutional violations" or any other similarly prejudicial remark which requests that the jury decide liability or damages on any factor other than the evidence presented to them at trial. Such comments are unfairly prejudicial and can form the basis of a R.G. of a new trial. *See Moody v. Ford Motor Co.*, 506 F.Supp.2d 823, 837-38 (N.D. Okla. 2007) (asking jury to "send a message" with its verdict is improper).

___X___ Objection _____ No Objection

## 26. THE DEFENDANT SHERIFF JOINS IN THE INTEGRIS DEFENDANTS' MOTION IN LIMINE.

The Defendant Sheriff also adopts and joins in with the Defendants Baptist Healthcare of Oklahoma, LLC, d/b/a Integris Miami EMS, Kent Williams, and Jennifer Grimes Motion in Limine being filed on behalf of those defendants:. Nos. 4. Video Taped Depositions; 5. Reference

to Any Witness That Was Not Called to Testify; 6. Reference to Failure to Call a Witness or Introduce Evidence at Trial; 7. Any Reference to Other Verdicts or Judgments; 10. Any Reference or Argument Related to "Golden Rule" or "Reptile Theory"; and 13. Any Reference to Verdicts or Judgment in Other Cases.

Respectfully submitted,

s/ Wellon B. Poe
Wellon B. Poe, OBA No. 12440
Jamison C. Whitson, OBA No. 18490
COLLINS, ZORN, & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK   73105-1815
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
E-mail: wbp@czwlaw.com
   jcw@czwlaw.com

ATTORNEYS FOR DEFENDANT THE SHERIFF OF OTTAWA COUNTY, IN HIS OFFICIAL CAPACITY

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2023, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen, via electronic mail at: danielsmolen@ssrok.com
kendrarash@ssrok.com
Robert M. Blakemore, via electronic mail at: bobblakemore@ssrok.com
Bryon D. Helm, via electronic mail at: bryonhelm@ssrok.com
SMOLEN & ROYTMAN, PLLC
701 South Cincinnati Avenue
Tulsa, OK 74119
*Attorneys for Plaintiffs*

John R. Paul, via electronic mail at: john@paulandlackey.com
PAUL & LACKEY, P.C.
20 East 5th Street, Suite 1000
Tulsa, OK 74103

John David Lackey, via electronic mail at: johndavid@paulandlackey.com
Amy N. Bennett, via electronic mail at: amy@paulandlackey.com
PAUL & LACKEY, P.C.
20 East Fifth Street, Suite 1000
Tulsa, OK 74103
***Attorneys for Defendants Baptist Healthcare of Oklahoma, LLC,
   d/b/a Integris Miami EMS, Jennifer Grimes and Kent Williams***

Randall J. Wood, via electronic mail at: rwood@piercecouch.com
Carson C. Smith, via electronic mail at: csmith@piercecouch.com
Robert S. Lafferrandre, via electronic mail at: rlafferrandre@piercecouch.com
Pierce Couch Hendrickson Baysinger & Green, L.L.P.
1109 N. Francis
Oklahoma City, OK 73106
***Attorney for Defendants Johnny Bray
   and Charles Shoemaker***

Seth D. Coldiron, via electronic mail at: scoldiron@gphglaw.com
David Proctor, vial electronic mail at: dproctor@gphglaw.com
GOOLSBY, PROCTOR, HEEFNER & GIBBS, P.C.
701 N. Broadway Avenue, Suite 400
Oklahoma City, OK 73102-6006
***Attorney for Defendant Theresa Horn, L.P.***


s/ Wellon B. Poe
Wellon B. Poe