**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AUSTIN P. BOND, as Personal Representative of the Estate of Terral Ellis II, Deceased, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 17-cv-00325- CRK-CDL |
| OTTAWA COUNTY SHERIFF, in his Official Capacity, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE INTEGRIS EMS DEFENDANTS' *SUPPLEMENTAL* MOTION FOR SUMMARY JUDGMENT

**COME NOW** the Plaintiffs and respectfully submit their Response in Opposition to Defendant Baptist Health care of Oklahoma, LLC d/b/a Integris Miami EMS ("Integris EMS"), Kent Williams and Jennifer Grimes' (collectively referred to as "Defendants" or "Integris EMS Defendants") *Supplemental* Motion for Summary Judgment (Dkt. #320) as follows:

### Introduction and Background

As well-documented, this case involves the suffering and death of Terral Ellis ("Mr. Ellis") at the Ottawa County Jail ("Jail"). Plaintiffs have brought a negligence claim against the Integris EMS Defendants, alleging that they violated the applicable standard of care in failing to adequately assess and treat Mr. Ellis on October 21, 2015.

The Integris EMS Defendants filed their first Motion for Summary Judgment on December 18, 2019, asserting only that they are not liable under the supervening/intervening cause doctrine. *See* Dkt. #133. In the first Motion for Summary Judgment, the Integris EMS Defendants made no mention of Plaintiff's proffered expert's (Todd Wilcox, M.D.) lack of qualifications to opine concerning any necessary element of Plaintiffs' negligence claim. *Id.*

1

On November 4, 2022, the Court filed its Opinion and Order denying the Integris EMS Defendants' first Motion for Summary Judgment. *See* Dkt. #217.

Now, in a most unusual turn of events, the Integris EMS Defendants have been granted leave, over Plaintiffs' objection, to file a second -- or what they call "Supplemental" -- Motion for Summary Judgment. *See* Dkt. #320.

On June 16, 2023, less than 60 days before trial of this matter is set to begin, the Court filed a Memorandum and Order ruling that Plaintiffs failed to lay a sufficient foundation for Dr. Wilcox to testify concerning the standard of care applying to paramedics. *See* Dkt. #303.

Seizing on the Court's June 16 ruling, the Integris EMS Defendants now argue that they are entitled to summary judgment because "Plaintiffs do not have an expert witness to testify that the conduct of the paramedics Kent Williams and Jennifer Grimes violated the standard of care for paramedics when attending to Mr. Terral Ellis at the Ottawa County jail on October 21, 2015." Dkt. #320 at 1.

While Plaintiffs concede that losing their expert witness less than two months prior to trial is less than ideal, the Integris EMS Defendants are *still* not entitled to summary judgment in this matter. In one of the cases cited by the Integris EMS Defendants, *Roberson v. Jeffrey M. Waltner, M.D., Inc.*, 2005 OK CIV APP 15, ¶ 6, 108 P.3d 567, 569,[1] the Court stated the long-established Oklahoma rule that "[i]n a medical malpractice action, evidence of medical **standard in the community** may be **established by testimony of the defendant** physician." *Roberson v. Jeffrey M. Waltner, M.D., Inc.*, 2005 OK CIV APP 15, ¶ 6, 108 P.3d 567, 569 (citing *Robertson v. LaCroix*, 1975 OK CIV APP 14, ¶ 24, 534 P.2d 17, 21). As discussed more fully *infra*, the testimony of the Defendant Kent Williams, consistent with the State of Oklahoma's Emergency Medical Services

---

[1]     Dkt. #320 at 6.

Protocols ("EMS Protocols"), establishes that the applicable standard of care required the Integris EMS Defendants to measure Mr. Ellis' pulse oximetry when assessing him on October 21, 2015. By implication, their failure to do so was a breach of that standard of care. Thus, as a matter of Oklahoma law, expert testimony -- concerning the basic standard of care at issue -- is not required.

The Integris EMS Defendants' *Supplemental* Motion for Summary Judgment (Dkt. #320) should be denied.

## LCvR 56.1(c) Statement

### A.  Response to Defendants' Statement of "Material Undisputed Facts"

**1-2.**  Admit.

**3.**  Plaintiffs dispute any suggestion that Integris EMS took a full set of vital signs. Ellis purportedly informed Integris EMS that he: (A) had flank pain which grew worse upon palpitation; (B) had "two seizures"; (C) was "severely dehydrated"; and (D) had been urinating in a cup because he could not get up to go to the bathroom. Integris EMS Records (10/21/15) (Dkt. #152-15) at Plaintiffs_000014 and 000018.[2] As Defendant Williams testified, under the circumstances, the ***"[t]he pulse ox would have been applied***…" as part of the assessment of Mr. Ellis. Williams Depo. (Ex. 1) at 45:6-20 (emphasis added). However, in fact, the "pulse ox" was *not* applied. The Integris EMS Defendants failed to record any measurement of Ellis' pulse oximetry. *See* Integris EMS Records (10/21/15) (Dkt. #152-15).[3]

---

[2]  There are unexplained discrepancies between the Integris EMS "Comprehensive Report" and Integris EMS Defendant Jennifer Grimes' individual report.  For instance, while the so-called "Comprehensive Report" states that Ellis' pain did not worsen with palpitation, Grimes' individual report states that his ribs were hurting "upon palpitation." *Compare* Integris EMS Records (10/21/15) (Dkt. #152-15) at Plaintiffs_000014 and 18.  The above summary combines facts taken from both reports, which must be read in the light most favorable to Plaintiffs.

[3]  Setting aside any issue concerning the paramedic standard of care, Dr. Wilcox has opined that -- based on Mr. Ellis' condition at the time -- had a pulse oximetry reading been taken, it likely would have shown "an abnormality" requiring additional medical "workup." Wilcox (Verified) Report (Dkt. #152-9) at 8-9.

Mr. Williams' admission that the assessment of Mr. Ellis should have included a pulse oximetry reading is consistent with the State of Oklahoma's Emergency Medical Services Protocols ("EMS Protocols"). In pertinent part, the EMS Protocols provide that in conducting any "medical general assessment", EMS professionals should "[l]iberally obtain pulse oximetry readings…." EMS Protocols (Excerpts) (Ex. 2) at 11 of 20. Pulse oximetry readings are a required component of the "ABCs" -- i.e., "Airway, Breathing and Circulation" -- of an EMS assessment. *Id.* The EMS Protocols confirm that "vital signs" include "pulse, respiratory rate, blood pressure" and "pulse oximetry." *Id.* at 16 of 20. The EMS Protocol specific to "Seizure[s]" also requires that the EMT "obtain vital signs". *Id.* at 19 of 20. *See also* 2013 EMS Protocols (Excerpts) (Ex. 3).

**4.** Disputed. The surveillance video does not show paramedic Grimes or Williams using a stethoscope to listen to Mr. Ellis' "breath sounds". *See* Video Clip 3 (Dkt. #152-13) at 13:30 − 28:45; *see also* Video Clip 4 (Dkt. #152-17).[4] Therefore, the Integris EMS Defendants could not have reasonably determined that Mr. Ellis' "breath sounds" were "clear" or that he was not in respiratory distress.

**5.** Plaintiffs dispute any suggestion that Integris EMS took a full set of vital signs. *See* LCvR 56.1(c) Statement(A)(3), *supra.*

**6.** While Plaintiffs do not dispute that the Integris EMS Defendants "advised" the Jail staff that "nothing acute appeared to be happening" with Ellis, because a full assessment was not performed (LCvR 56.1(c) Statement(A)(3-4)), this advice was unreasonable. Plaintiffs also assert that it was unreasonable for the Jail staff to rely on this "assessment", particularly once Mr. Ellis' condition worsened.

---

[4] Integris EMS Paramedics can be seen, wearing pink-colored shirts, attending to Ellis in bottom right screen of Video Clip 3. Video Clip 4 is the same surveillance video footage from D-Pod as is included in Video Clip 3, but full screen.

**7-8.** Admit.

**9.** Plaintiffs dispute the assertion that Mr. Ellis refused medical treatment and transport to the emergency room. *See* Video Clip 4 (Dkt. #152-17); Bray Depo. (Dkt. #152-2) at 97:5-11; Harding Depo. (Dkt. #152-20) at 135:18 − 136:14, 197:19 − 198:14; Williams Depo. (Dkt. #152-21) at 25:6-15; Grimes Depo. (Dkt. #152-22) at 79:18-21; Shoemaker Depo. (Dkt. #152-6) at 221:8 − 222:1-12.

**10-13.** Admit.

**14.** Disputed. As summarized in LCvR 56.1(c) Statement(A)(3), *supra*, and in the Discussion section, *infra*, Plaintiffs have "admissible evidence to establish the standard of care of the paramedics or that the Integris EMS paramedics Kent Williams and/or Jennifer Grimes breached a standard of care regarding their care of Mr. Ellis on October 21, 2015." Dkt. #320 (Fact #14).

## B.    Additional Relevant Facts

**1.** Integris EMS was dispatched to the Jail at 4:36 PM on October 21 − they were apparently notified that an "INMATE HAD SEIZURE AND IS COMPLAINING OF OTHER MEDICAL PROBLEMS." Miami Police Department Complaint Card (Dkt. #152-14) at 000038. At 4:39 PM, Integris EMS arrived at the scene. *See* Integris EMS Records (10/21/15) (Dkt. #152-15) at Plaintiffs_000013.

**2.** Another inmate, Michael Harrington, overheard one of the detention officers, believed to be Officer Bray, tell the Integris paramedics that ***Ellis was "faking"*** his illness, and that unless his condition was life threatening, ***"do not take him"*** to hospital. Harrington Depo. (Dkt. #152-4) at 50:12 − 51:4; *see also* Harrington Letter (Dkt. #152-5). Harrington further heard the officer, likely Bray, state to the Integris paramedics that the Jail would ***not "foot[] the bill"*** for Ellis's transport to the hospital. *Id.* Under these circumstances, Integris EMS ultimately decided

not to transport Ellis. *See, e.g.*, Integris EMS Records (10/21/15) (Dkt. #152-15) at Plaintiffs_000013-14.

**3.** As Assistant Jail Administrator Shoemaker testified, because the Jail's nurse, Nurse Horn, was commonly absent from the Jail during working hours, when an inmate medical issue would arise, detention staff were forced to call EMS to assess the inmate. Shoemaker Depo. (Dkt. #152-6) at 92:18-25. In fact, "more often than not" when detention staff reported a medical issue to Nurse Horn, she would rely on EMS to check out the inmate without ever conducting her own assessment. Bray Depo. (Dkt. #152-2) at 112:11 – 113:18; 116:5-16.[5] Nurse Horn would use EMS to medically assess inmates despite the fact that paramedics/EMTs have less medical training than an LPN. *Id.* at 144:18 – 145:4. It is Dr. Wilcox's opinion that such a practice constitutes an inappropriate "reversal in the medical licensure." Wilcox Depo. (Dkt. #152-16) at 66:12 – 67:20. Nurse Horn can provide ***no answer*** as to why she relied on EMS to make medical decisions despite their lesser training. *See* Horn Depo. (Dkt. #152-8) at 145:5-8.

<u>Discussion</u>

**<u>PROPOSITION:</u>** **The Integris EMS Defendants Are *Not* Entitled to Summary Judgment as Expert Testimony is Not Required to Establish the Applicable Standard of Care in this Case**

In their *Supplemental* Motion, the Integris EMS Defendants assert that they are now entitled to summary judgment "because Plaintiffs do not have an expert witness to testify that the conduct of the paramedics Kent Williams and Jennifer Grimes violated the standard of care for paramedics when attending to Mr. Terral Ellis at the Ottawa County jail on October 21, 2015." Dkt. #320 at

---

[5] Other times when a medical request was made of Nurse Horn, she would feign her intent to assess the inmate the following day, and never actually see the inmate. Bray Depo. (Dkt. #152-2) at 34:21 – 35:8.

1. However, under the particular circumstances of this case, expert testimony is unnecessary as a matter of law. Consequently, the Integris EMS Defendants are not entitled to summary judgment.

To begin with, Plaintiffs note that the Integris EMS Defendants do not cite a single Oklahoma case, or any other Oklahoma legal authority, that specifically requires expert testimony in a case involving a paramedic's alleged negligence. While the Integris EMS Defendants broadly assert that the "requirement of expert testimony applies to all medical professionals", the authorities relied on support of this assertion are from the Tenth Circuit applying *Kansas* law, the United States District Court for the Southern District of Mississippi and the United States District Court for the District of Colorado. *See* Dkt. #320 at 6 (citing *Cruz v AM. Nat'l Red Cross,* 2022 WL 2813237 (10th Cir. 2022); *Jones ex rel. Estate of Butler v Mobile Medic Ambulance Service, Inc.,* 2021 U.S. Dist. LEXIS 248656 (S.D. Miss. 2021); *Watkins v Action Care Ambulance, Inc.,* 2011 WL 4017986 (D. Colo. 2011)).

Nevertheless, even assuming that an expert witness would ordinarily be needed to establish the paramedic standard of care in a negligence action, no expert witness is required under the unique facts of *this* negligence case.

In one of the cases cited by the Integris EMS Defendants, *Roberson v. Jeffrey M. Waltner, M.D., Inc.,* 2005 OK CIV APP 15, ¶ 6, 108 P.3d 567, 569, the Court stated the long-established Oklahoma rule that "[i]n a medical malpractice action, evidence of medical **standard in the community** may be **established by testimony of the defendant** physician." *Roberson v. Jeffrey M. Waltner, M.D., Inc.,* 2005 OK CIV APP 15, ¶ 6, 108 P.3d 567, 569 (citing *Robertson v. LaCroix,* 1975 OK CIV APP 14, ¶ 24, 534 P.2d 17, 21). "It is well settled in Oklahoma and elsewhere that the extrajudicial admission of a party opponent **has the same legal competency as direct expert testimony** to establish the requisite elements of a prima facie case of negligence in a medical malpractice action." *Robertson v. LaCroix,* 1975 OK CIV APP 14, ¶ 24, 534 P.2d 17, 21–22

(citing *Bungardt v. Younger*, 112 Okla. 165, 239 P. 469; *Greenwood v. Harris, Okla.*, 362 P.2d 85; 1 Washburn L.J. 614; and cases cited in 70 C.J.S. *Physicians and Surgeons* s 62). *See also Meyer v. Gibson*, 17 F. App'x 821, 823 (10th Cir. 2001).

As Defendant Williams testified, the ***"[t]he pulse ox would have been applied*…"** as part of the paramedics' assessment of Mr. Ellis. Williams Depo. (Ex. 1) at 45:6-20 (emphasis added). However, in fact, the "pulse ox" was *not* applied. The Integris EMS Defendants failed to record any measurement of Ellis' pulse oximetry. *See* Integris EMS Records (10/21/15) (Dkt. #152-15).

Williams' admission that the assessment of Ellis should have included a pulse oximetry reading renders expert testimony unnecessary as to the standard of care. *See Roberson*, 108 P.3d at 569; *Robertson*, 534 P.2d at 21. And breach of that standard is established by evidence that a pulse oximetry reading was not recorded.[6]

At trial, Plaintiffs' evidence will only be strengthened when Williams and Grimes are asked about Oklahoma's EMS Protocols. Again, the EMS Protocols provide that in conducting any "medical general assessment", EMS professionals should "[l]iberally obtain pulse oximetry readings…." EMS Protocols (Excerpts) (Ex. 2) at 11 of 20. Pulse oximetry readings are a required component of the "ABCs" -- *i.e.,* "Airway, Breathing and Circulation" -- of an EMS assessment. *Id.* The EMS Protocols also confirm that "vital signs" include "pulse, respiratory rate, blood pressure" and "pulse oximetry." *Id.* at 16 of 20. The applicable standard of care is clear without need of expert testimony.

Under the peculiar facts of this case, Plaintiffs should be allowed to proceed to trial against the Integris EMS Defendants without an expert witness. The Integris EMS Defendants' *Supplemental* Motion for Summary Judgment should be denied.

---

[6]     In addition, it is not beyond province of a layperson that the Integris EMS Defendants could not have assessed Mr. Ellis' "breath sounds" without use of a stethoscope.

WHEREFORE, premises considered, Plaintiffs respectfully request that the Court deny the Integris EMS Defendants' *Supplemental* Motion for Summary Judgment (Dkt. #320).

Respectfully,

/s/ Robert M. Blakemore
Robert M. Blakemore, OBA #18656
bobblakemore@ssrok.com
Daniel E. Smolen, OBA # 19943
danielsmolen@ssrok.com
Bryon D. Helm, OBA #33003
bryonhelm@ssrok.com
SMOLEN & ROYTMAN
701 South Cincinnati Avenue
Tulsa, Oklahoma 74119
Telephone: (918) 585-2667
Facsimile: (918) 585-2669

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of July 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/Robert M. Blakemore