UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Terral B. Ellis, Sr., et al., <br><br> Plaintiffs, <br><br> v. <br><br> Jennifer Grimes, et al., <br><br> Defendants. | 4:17-cv-00325-CRK-CDL |

## OPINION AND ORDER

This case involves a detainee Terral Ellis II ("Ellis") housed at a county jail who died after requesting medical treatment. Ellis' estate, Terral Ellis, Sr., and Shelly Bliss ("Plaintiffs") are suing the sheriff's office managing the jail and the emergency medical ambulance services provider and its paramedics who responded to the jail.[1] Before the Court is defendants Baptist Healthcare of Oklahoma, LLC, d/b/a Integris Miami EMS, Kent Williams, and Jennifer Grimes' (collectively "Integris") supplemental summary judgment motion. See Suppl. Mot. Summ. J., June 29, 2023, ECF No. 320 ("Motion").

## BACKGROUND

The Court assumes familiarity with the facts of this matter as set forth in its prior order denying defendants' summary judgment motions, see Bond ex rel. Ellis v.

---

[1] The claims against the nurse and detention officers who worked at the jail have been dismissed. See Stipulation of Dismissal, Dec. 14, 2022, ECF No. 231.

1

Sheriff of Ottawa Cnty., No. 17-cv-00325, 2022 WL 16716149 (N.D. Okla. Nov. 4, 2022), appeal dismissed sub nom. Bond v. Horn, No. 22-5101, 2022 WL 19829863 (10th Cir. Dec. 16, 2022) ("SJO"), and its order regarding the expert testimony of Dr. Todd Wilcox, see Mem. and Order, June 16, 2023, ECF No. 303, and now recounts facts pertinent to this motion.

Plaintiffs commenced this action seeking relief against Integris in a state claim for negligence over which the Court has supplemental jurisdiction pursuant to 28 U.S.C § 1367. See Compl. ¶¶ 4, 65–71, June 9, 2017, ECF No. 2. Plaintiffs alleged that Mr. Ellis had been "under the custody of the Ottawa County Sheriff's Department ("OCSD") at the Ottawa County Jail ("Jail")." Compl. ¶ 20. He first complained of back pain on October 17, 2015. SJO at *2. Further, as stated in this Court's prior order:

> On October 19, 2015, Ellis complained of back pain to [Nurse] Horn directly, but this time he believed he had kidney stones. When Horn examined Ellis and identified a protrusion on his back as a possible dislocated rib, she administered ibuprofen.
>
> On October 21, 2015, Ellis reported having a seizure to jail staff, and Horn instructed jail staff to call emergency services. Jail staff called emergency services, and paramedics Kent Williams and Jennifer Grimes arrived. Ellis described experiencing a seizure and complained of back pain and difficulty walking. Detention officer Bray and assistant jail administrator Shoemaker were present at least part of the time when the responding paramedics examined Ellis. The paramedics did not transport Ellis to the hospital at that time. The jail staff advised the paramedics that they would place Ellis in a holding cell in view of the guard desk and would check him every 15 minutes. Further, the jail staff advised the paramedics that if Ellis' condition changed, they would call back emergency services immediately.

>Around 9:30–10:00 p.m. on October 21, 2015, detention officer Curtis Lawson reported to Bray that Ellis said he could not feel his legs, and Bray called Horn. Horn told Bray the paramedics had already been to the jail earlier to check on Ellis. Horn then advised Bray to insist Ellis get up and move around, and that he needed to use the bathroom himself. She also advised Bray to give Ellis over-the-counter pain medication and that she would be in to see him in the morning.
>
>Around 10:23 p.m. on October 21, 2015, Ellis reported to Bray and Lawson that his legs were numb, and Bray responded to Ellis he had no injuries that would cause his legs to go numb and prevent him from moving his legs. Bray admits that Ellis' condition was worsening. Bray did not call emergency medical services for Ellis the evening of October 21, 2015.
>
>On October 22, 2015, around 8:28 a.m., Ellis is heard moaning in distress, and the jail staff mocked him and told him that they were not going to call emergency services. Around 8:59 a.m. on October 22, 2015, Ellis asks for water, but a member of the jail staff refuses, saying, "don't let him fool you."
>
>Around 10:45 a.m. on October 22, 2015, Ellis again complained of being unable to walk, that his legs were black and blue, and that he was in pain. Shoemaker was near the cell Ellis was in when Horn arrived to examine him. Instead of referring Ellis for medical treatment, Horn mocked and threatened him for reporting his symptoms, implied he was faking his illness, and told him she was tired of dealing with him. Despite hearing Horn mock and threaten Ellis, Shoemaker did nothing to assist Ellis.
>
>Around 1:45 p.m. on October 22, 2015, Horn contacted emergency services when she noticed Ellis' discolored eyes and skin, low body temperature and pressure, and difficulty speaking. Ellis died at the hospital at 2:51 p.m. from sepsis/septic shock resulting from acute bronchopneumonia.

SJO at *3–4 (internal citations omitted).

Following discovery Integris moved for summary judgment. Mot. Summ. J. by [Integris], Dec. 18, 2019, ECF No. 133. On November 4, 2022, this Court denied Integris' initial motion for summary judgment, concluding that "genuine disputes of

3

material fact [existed] as to the three elements of whether the conduct of the jail staff [was] a supervening cause." SJO at *11–13. Subsequently, Integris filed a motion in limine seeking, in part, to exclude the testimony of Plaintiffs' expert witness, Dr. Wilcox, on the standard of care applicable to paramedics. See Integris Mot. in Limine at 1–3, Apr. 3, 2023, ECF No. 243. The Court held an evidentiary hearing on June 14, 2023, Mins. of Hr'g, June 14, 2023, ECF No. 298, and subsequently issued an order precluding the testimony of Dr. Wilcox regarding Integris' standard of care, Mem. and Order, June 16, 2023, ECF No. 303. Following the Court's order, Integris moved for leave to file a supplemental motion for summary judgment, arguing that this Court's order precluding Dr. Wilcox from testifying to the standard of care for paramedics rendered Plaintiffs' claims "unproveable at trial." Mot. Leave to File Mot. Summ. J. at 4–7, June 20, 2023, ECF No. 307. The Court granted Integris' motion for leave, Order, June 28, 2023, ECF No. 319, and Integris filed the instant motion for summary judgment on June 29, 2023. Plaintiffs responded on July 12, 2023, Pls.' Resp. Opp. [Motion], July 12, 2023, ECF No. 331 ("Response"), and Integris replied on July 14, 2023, Reply [in Supp. of Motion], July 14, 2023, ECF No. 333 ("Reply").

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) (2018), which provide original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States, and which provide original jurisdiction over any civil action authorized by law to redress the deprivation of Constitutional or federal statutory rights. The Court also has jurisdiction over the

state law claims forming part of the same case or controversy as those claims over which the Court has original jurisdiction, pursuant to 28 U.S.C § 1367.

The Court shall grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering summary judgment, the court must view all facts and inferences drawn from the record in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, only disputes over material facts—those affecting the outcome of the case—preclude summary judgment. Id. at 248.

The moving party need not affirmatively negate a non-moving party's claims but rather need only point out there is an absence of evidence to support the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 325 (1986). The burden then shifts to the non-moving party to show there is a genuine dispute over material facts. Id. at 324.

Parties may show facts using any evidentiary materials listed in Federal Rule of Civil Procedure 56(c), except the pleadings themselves. Celotex, 477 U.S. at 324. While the form of the evidence need not be admissible, the content or substance of the evidence must be admissible. Thomas v. Int'l Bus. Machines, 48 F.3d 478, 485 (10th Cir. 1995). If a party fails to properly support an asserted fact or dispute an opposing party's asserted fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

## UNDISPUTED FACTS[2]

The Court draws the following undisputed material facts from the record. These facts are relevant to Plaintiffs' claims against Integris.

Terral Ellis was a 26-year-old placed into the Ottawa County jail in early October 2015. Integris Facts ¶ 1; Plaintiffs Facts ¶ 1. Integris paramedics were dispatched to the jail at 4:36 pm on October 21, 2015, for Mr. Ellis following a report of seizure and complaints of other medical problems, and they arrived at the jail at 4:39 pm. Integris Facts ¶ 2; Plaintiffs Facts ¶ 2; Plaintiffs Add'l Facts ¶ 1; Integris Reply Add'l Facts ¶ 1. Upon request from the jail nurse for an assessment of "anything acute" with Mr. Ellis, the Integris paramedics advised jail staff that nothing acute appeared to be happening. Integris Facts ¶ 6; Plaintiffs Facts ¶ 6; Integris Reply Facts ¶ 6. Mr. Ellis told the Integris paramedics he wanted to call his grandfather, and if he could call him then he wanted to be left alone at the jail. Integris Facts ¶ 7; Plaintiffs Facts ¶ 7. Jail staff told the Integris paramedics that, if Mr. Ellis' condition changed, they would call them back immediately. Integris Facts ¶ 8; Plaintiffs Facts ¶ 8. Jail staff told Mr. Ellis he could not call his grandfather, and Mr. Ellis became agitated, took off the paramedics' blood pressure cuff, and asked to be returned to his holding cell. Integris Facts ¶ 9; Plaintiffs Facts ¶ 9. The Integris paramedics were at the jail attending to Mr. Ellis for approximately 20 minutes.

---

[2] Paragraphs in "Integris Facts," "Plaintiffs Facts," "Plaintiffs Add'l Facts," "Integris Reply Facts," and "Integris Reply Add'l Facts" are citations to the parties' statements under Local Civil Rule 56.1(c) contained in their briefs on the motion. See Motion at 3–4; Response at 3–6; Reply at 2–5.

Integris Facts ¶ 10; Plaintiffs Facts ¶ 10. Jail staff next called for paramedic assistance on October 22, 2015, and Quapaw paramedics responded and arrived at the jail at 1:58 pm. Integris Facts ¶ 11; Plaintiffs Facts ¶ 11. The Quapaw paramedics departed the jail at 2:20 pm on October 22, 2015, transporting Mr. Ellis to the Integris Miami Emergency Room. Integris Facts ¶ 12; Plaintiffs Facts ¶ 12. Mr. Ellis died at 2:51 pm on October 22, 2015, at Integris Baptist Regional Hospital; his cause of death was listed as sepsis secondary to acute bronchopneumonia. Integris Facts ¶ 13; Plaintiffs Facts ¶ 13.

## DISPUTED MATERIAL FACTS

The Court draws the following disputed facts from the record. These facts are material to Plaintiffs' claims against Integris.

The parties dispute whether Mr. Williams' statement "[t]he pulse ox would have been applied . . ." is sufficient to establish the standard of care applicable to the Integris paramedics. Plaintiffs Facts ¶ 3; Integris Reply Facts ¶ 3. It is disputed whether the Integris paramedics took a full set of vital signs,[3] including measurement

---

[3] Integris argues Plaintiffs have admitted that an initial set of vital signs and a second set of vitals were taken. See Reply at 2. Nonetheless, Plaintiffs dispute whether a full set of vitals were taken. See Response at 3. Integris sidesteps the question of whether a full set of vitals were taken by asserting that Plaintiffs' attempt "to incorrectly change the testimony of Mr. Williams itself (from 'would' to 'should')." Reply at 3. However, Plaintiffs Response actually asserts that Mr. Williams in his deposition states that "under the circumstances, the '[t]he pulse ox would have been applied . . . .'" Response at 3. Mr. Williams' statement is ambiguous. It would not be unreasonable for a jury to conclude that Mr. Williams meant that applying the pulse oximetry would be the standard practice for paramedics under the circumstances and would therefore be required for a full set of vitals. Thus, what Mr. Williams meant is a question for the jury and cannot be resolved on summary judgment.

of Ellis' pulse oximetry.[4]  Integris Facts ¶¶ 3, 5; Plaintiffs Facts ¶¶ 3, 5; Integris Reply Facts ¶¶ 3, 5.  The parties also dispute whether the Integris paramedics used a stethoscope to listen to Mr. Ellis' "breath sounds" and therefore whether they could determine if his breathing was clear.[5]  Integris Facts ¶ 4; Plaintiffs Facts ¶ 4; Integris Reply Facts ¶ 4.  The parties dispute whether Mr. Ellis refused medical treatment and transport to the emergency room.[6]  Integris Facts ¶ 9; Plaintiffs Facts ¶ 9;

---

[4] Integris argues the Court should strike several facts as being inadmissible at trial for lack of authentication.  See, e.g., Reply at 2–3.  However, on summary judgment, parties can cite to evidence in a form inadmissible at trial though "the content or the substance of the evidence must be admissible."  Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1122 (10th Cir. 2005).  Regardless, the "bar for authentication of evidence is not particularly high."  United States v. Isabella, 918 F.3d 816, 843 (10th Cir. 2019).  A court can consider a document authentic based on one of several types of evidence, including "appearance, contents, substance, internal patterns, or other distinctive characters" with all the circumstances.  Fed. R. Evid. 901(b).

[5] Although Plaintiffs cite to video clips to support their disputed material fact, see Plaintiffs Facts ¶ 4; Video Clips, ECF Nos. 152-13, 152-17, Plaintiffs never conventionally filed these videos as indicated on the docket.  However, the Court does not need to review these video clips to deny the Motion.  Even if this fact were undisputed, there are other disputed material facts precluding summary judgment.  Moreover, Integris argues that Plaintiffs have no evidence to dispute the fact that the paramedics listened to the breath sounds of Mr. Ellis because Plaintiffs merely point to the fact that, in the video clip they cite, the view of Mr. Ellis and the paramedics is blocked for most of the time.  Integris Reply Facts ¶ 4.  However, Integris does not specifically deny that the paramedics did not use a stethoscope nor point to evidence that the paramedics did use a stethoscope.  Because Integris' argument against this evidence goes to weight not admissibility, there is a genuine dispute of material fact.

[6] Integris argues that Plaintiffs fail to support their position that Mr. Ellis wanted to go to the hospital.  Reply at 4.  However, the question is not whether Mr. Ellis wanted to go to the hospital but rather whether he refused to go to the hospital.  See Proposed Pretrial Order at 12, June 30, 2023, ECF No. 322 ("41. Whether Mr. Ellis refused transport to the hospital on October 21, 2015").  Plaintiffs dispute that he refused and point to the testimony of several witnesses, for example Johnny Bray, who says he does not recall Mr. Ellis refusing to be transported to the hospital.  Plaintiffs Facts ¶ 9; see also Integris Report at 2–3, Oct. 21, 2015, ECF 320-1 (three separate instances

Integris Reply Facts ¶ 9. Further, the parties dispute whether one of the detention officers, possibly Johnny Bray, told the Integris paramedics that Mr. Ellis was faking his illness and that, unless Mr. Ellis' condition was life threatening, to not take him to the hospital. Plaintiffs Add'l Facts ¶ 2; Integris Reply Add'l Facts ¶ 2. The parties also dispute whether that officer, possibly Mr. Bray, told the Integris paramedics that the jail would not "foot the bill" for Mr. Ellis' transport to the hospital. Plaintiffs Add'l Facts ¶ 2; Integris Reply Add'l Facts ¶ 2.

## DISCUSSION

Integris argues that Plaintiffs will be unable to succeed in their claims against it as a matter of law now that the Court has precluded Dr. Todd Wilcox from testifying as to the standard of care relevant to paramedics. Motion at 5–7. Plaintiffs respond that the standard of care can be established without an expert and therefore summary judgment is inappropriate. Response at 6–9. For the following reasons, the Court denies the motion.

Despite the general rule that plaintiffs must rely on expert testimony to establish negligence in professional liability cases, a court need not require expert testimony where common knowledge or experience of a layman can establish the standard of care, the breach of care, and causation with reasonable certainty. See Boxberger v. Martin, 552 P.2d 370, 373 (Okla. 1976). Courts generally require expert testimony in professional liability cases because "the trier of the fact must have

---

where the paramedics indicate that the plaintiff did not sign the refusal for treatment indicating at the same time that he was taken to another part of the jail).

sufficient technical and scientific testimony at his disposal to answer a scientific and technical question of fact." Id.; see Winham v. Reese, 392 P.3d 715, 718–20 (Okla. Civ. App. 2015) (affirming district court's summary judgment for defendant-physicians because plaintiff's expert was not qualified to testify to defendants' causation).[7]

Nonetheless, expert testimony may not be needed where laypeople can ascertain the elements of a claim for negligence or malpractice through their common knowledge and experience. See Boxberger, 552 P.2d at 374–75. In Boxberger, the Supreme Court of Oklahoma vacated the court of appeals' reversal and affirmed the district court's jury verdict for the plaintiff-patient because expert testimony was not necessary to determine whether defendant-physician caused plaintiff-patient's fractured femur during a post-surgery examination. Id. There, the court found enough circumstantial evidence based on plaintiff-patient's testimony and other witness testimony to reasonably lead a jury to find that defendant-physician exerted

---

[7] See also, e.g., Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969, 978 (10th Cir. 2001) (affirming district court's summary judgment for medical device manufacturer, under Kansas law, because plaintiff's expert was not qualified to testify to the sufficiency of the medical device manufacturer's warnings and there was no evidence that manufacturer's alleged "failure to warn" caused plaintiff's injuries); Holley v. Evangelical Lutheran Good Samaritan Soc., 588 F. App'x 792, 795–96 (10th Cir. 2014) (affirming district court's summary judgment for hospital in a medical malpractice claim, under New Mexico law, because patient failed to produce expert medical testimony to prove causation).

excessive physical pressure on plaintiff-patient's femur that caused the refracture.[8] Id. at 375.

Subsequently, in Benson v. Tkach, the Oklahoma Civil Court of Appeals applied the analysis under Boxberger to the standard of care. Benson, 30 P.3d 402, 405 (Okla. Ct. App. 2001). In Benson, the Court reversed summary judgment for defendants, two hospitals and a clinic, because those parties failed to "provide proper medical treatment" to decedent, and thus, did not meet the proper standard of care.[9] Id. at 406–07. Plaintiff testified that decedent's extensive pain and suffering only occurred after surgery and the hospital transfer; the court held that the hospital and clinic's breach of the standard of care "was so apparent and objective" based on plaintiff's testimony "that expert testimony was not necessary for the issue of negligence to reach the jury." Id.; see Turney v. Anspaugh, 581 P.2d 1301, 1308 (Okla. 1978) (explaining that only "common knowledge and experience" was required to assess a surgeon's lack of care in leaving a surgical sponge in plaintiff's abdomen during a hysterectomy procedure, quoting Boxberger, 552 P.2d at 373); Orthopedic Clinic v. Hanson, 415 P.2d 991, 997 (Okla. 1966) (in a medical malpractice case,

---

[8] Plaintiff-patient testified that the physician told him that the leg was "susceptible to refracture." Id. at 375. Another physician testified to the plaintiff-patient's areas of pain as related to whether the refracture occurred at the defendant-physician's office or elsewhere. Id. Finally, other witnesses testified to plaintiff-patient's leg condition—swelling, pain and suffering—pre- and post-examination. Id.

[9] The court in Benson also applied the exception to expert testimony for the standard of care to another defendant, Dr. Tkach. Id. at 405–06. According to plaintiff's testimony, Dr. Tkach refused to perform surgery to alleviate the decedent's risk of infection. Id. at 406. The court held that "reasonable persons could conclude" that Dr. Tkach failed to provide "proper treatment" to decedent and thus breached the standard of care. Id.

11

applying the "ordinary prudent person in the same or similar circumstances" standard of care to a therapy machine operator's actions, which caused plaintiff a leg burn injury).

Additionally, testimony of either the defendant's expert or lay witnesses may establish breach of the standard of care. See Benson, 30 P.3d at 405 (holding that reasonable persons could infer from defendant's statement that he did not provide proper treatment because of financial considerations); see also Robertson v. LaCroix, 534 P.2d 17, 22 (Okla. Ct. App. 1975) (holding that defendant's extrajudicial statement that he made a mistake and went too far during surgery constituted an admission and was probative of negligence).

Here, expert testimony may be unnecessary to establish the standard of care and the breach of that care given the disputed facts in this case. The parties dispute whether Integris paramedics took a full set of Mr. Ellis' vital signs on October 21, 2015, Integris Facts ¶¶ 3, 5; Plaintiffs Facts ¶¶ 3, 5; Integris Reply Facts ¶¶ 3, 5, and further dispute whether the paramedics used a stethoscope to evaluate Mr. Ellis, Integris Facts ¶ 4; Plaintiffs Facts ¶ 4; Integris Reply Facts ¶ 4. Additionally, the parties dispute whether jail staff told the Integris paramedics not to take Mr. Ellis to the hospital or that he was faking his condition. Plaintiffs Add'l Facts ¶ 2; Integris Reply Add'l Facts ¶ 2. These disputed allegations, if proven, could allow a jury could conclude based on its common knowledge and experience, or the testimony of defendant's own witnesses, that the standard of care was breached in this case as it was in Benson, 30 P.3d at 405. Further, Plaintiffs argue that Mr. Ellis' injuries were

so objectively serious that only common knowledge and experience are necessary to determine the Integris paramedics' lack of care by leaving Mr. Ellis at the jail, like the surgeon's actions in Turney, 581 P.2d at 1308. If jail employees told the Integris paramedics not to take Ellis to the hospital or that Ellis faked his condition, and the Integris paramedics acted on those instructions, then the Integris paramedics' failure to act can be judged using an "ordinary prudent person" standard of care, as explained in Orthopedic Clinic, 415 P.2d at 997. A jury could conclude, based on the above disputed material facts, that the Integris paramedics did not meet the proper standard of care as judged by an ordinary prudent person, and thus, lack of expert testimony does not preclude Plaintiffs' negligence claims against Integris.

It is also possible that, given the facts of this case, Plaintiffs may establish the standard of care and the breach of that standard through the lay opinion of Ms. Grimes and Mr. Williams. Plaintiffs point to Mr. Williams' deposition testimony, which they argue will establish the standard of care. See Plaintiffs Facts ¶ 3; Response at 8. Mr. Williams testified that the "[t]he pulse ox would have been applied . . ." when discussing the paramedics' assessment of Mr. Ellis. Kent Williams Dep. Excerpt at 45:14–20, July 12, 2023, ECF No. 331-1. Considering Mr. Williams' testimony in the light most favorable to Plaintiffs, whether Plaintiffs can establish the standard of care using Mr. Williams' testimony is a genuine dispute of material fact, which is consistent both with Oklahoma law, see Benson, 30 P.3d at 405; Robertson, 534 P.2d at 22, and Federal Rule of Evidence 701 (lay witnesses may provide an opinion if it is rationally based on their perception, helpful to the jury, and

13

not based on scientific, technical, or other specialized knowledge within scope of Rule 702).

Integris argues that expert testimony is needed in all but the "most extraordinary malpractice cases." Reply at 5–6. However, this case does not necessarily concern a scientific and technical question of fact. See Boxberger, 552 P.2d at 373. Summary judgment here requires answering whether the paramedics failed to properly assess Mr. Ellis and whether they were required, and failed, to transport Mr. Ellis to the hospital. The cases Integris cites were medical malpractice cases involving scientific and technical questions of fact. See Schulze v. United States, No. 18-CV-00130, 2019 WL 1526877, at *1 (N.D. Okla. Apr. 8, 2019) (mental health standard for discharging patient with suicidal ideations); Freeman v. Glanz, No. 16-CV-534, 2018 WL 4134669, at *1–4 (N.D. Okla. Aug. 29, 2018) (treatment of an inmate with adverse reactions to drugs, withdrawal, and complications from emergency treatment). However, the Integris paramedics' allegedly improper assessment and failure to transport appears less scientific and technical than a case in which proper medical treatment is at issue. Because reasonable jurors could rely on their common knowledge and experience to find that the Integris paramedics should have done a full assessment of Mr. Ellis and transported him to the hospital, Integris is not entitled to summary judgment on Plaintiffs' claim.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Integris' supplemental motion for summary judgment is denied.

/s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated: July 17, 2023
New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.