### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUSTIN BOND, Special Administrator of the Estate of Terral Ellis II, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE SHERIFF OF OTTAWA COUNTY, in his Official Capacity, *et al.*, | )<br>)<br>)<br>)<br>)<br>) Case No.: 17-cv-00325-CRK-CDL<br>)<br>)<br>)<br>) |

### PLAINTIFF'S FIRST TRIAL BRIEF

**COMES NOW** the Plaintiff, Austin Bond, as Special Administrator of the Estate of Terral Ellis II, Deceased, and for his first Trial Brief:

### Introductory Statement

At the conclusion of trial on August 15, 2023, the question arose of whether post-incident evidence that Defendant declined to punish certain Ottawa County Sheriff's Office ("OCSO") employees after Mr. Ellis's death should be admitted at trial. As discussed, *infra*, federal courts, including the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Circuits, have admitted post-incident evidence for numerous reasons, including to show a preexisting disposition and policy.

### Discussion

Several courts have held that post-incident evidence can be relevant to an official's disposition and the policies and practices that existed on the date of the incident at issue. For example, in *Grandstaff v. City of Borger,* 767 F.2d 161, 170–71 (5th Cir.1985), the Fifth Circuit held that "[t]he disposition of the policymaker may be inferred from his conduct after the events [claimed to constitute a constitutional deprivation]." In arriving at this conclusion, the Fifth Circuit reasoned that, following the constitutional deprivation by police officers:

1

> there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that no changes had been made in their policies. If that episode of dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger. If prior policy had been violated, we would expect to see a different reaction. If what the officers did and failed to do ... was not acceptable to the police chief, changes would have been made.... The policymaker's disposition, his policy ... after [the incident] was evidence of his disposition prior to [that date]. As subsequent conduct may prove discriminatory motive in a prior employment decision, and subsequent acts may tend to prove the nature of a prior conspiracy, so the subsequent acceptance of dangerous recklessness tends to prove his preexisting disposition and policy.

*Id.* at 171 (citations omitted).

In *Cordova v. Aragon,* 569 F.3d 1183 (10th Cir.2009), the Tenth Circuit cited, with approval, the Fifth Circuit's *Grandstaff* opinion. In *Cordova,* the plaintiff claimed that officers used excessive force in fatally shooting Mr. Cordova while he was fleeing the officers in a car case. Cordova's survivors alleged the city was liable under a municipal liability theory. The court found a genuine issue of fact as to whether a constitutional violation occurred, preventing summary judgment on that element of a municipal liability claim. *Id.* at 1193–94. With respect to the second element (whether a municipal policy or custom was the moving force behind the constitutional violation), the plaintiffs claimed that the city's actions deviated from official policy "both in its training of officers and in failing to discipline [the officer] for his conduct." *Id.* at 1194. Analyzing the allegations relating to the city's failure to discipline the officer, the Tenth Circuit stated:

> As for any failure to discipline Officer Aragon, basic principals [sic] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation. A subsequent cover-up might provide circumstantial evidence that the city viewed the policy as a policy in name only and routinely encouraged contrary behavior, *see, e.g., Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir.1985) ("The disposition of the policymaker may be inferred from his conduct after the [violation occurred]."), though that hardly seems to be the case here, since the County Critical Incident Team conducted a full investigation and the CCPD police chief simply called off a second investigation as being unnecessarily duplicative. A failure to investigate or reprimand might also cause a future violation by sending a message to officers that such behavior is tolerated. It

2

>does not, however, in and of itself constitute a causal connection in the immediate case.

*Id.* Similarly, the Ninth Circuit has held, with respect to post-incident evidence:

>In holding that [witness declarations regarding similar jail treatment following the incident at issue] may be used to establish municipal liability although the events related therein occurred after the series of incidents that serves [sic] as the basis of Henry's claims, we reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry.... When a county continues to turn a blind eye to severe violations of inmates' constitutional rights—despite having received notice of such violations—a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference.

*Henry v. County of Shasta*, 137 F.3d 1372, 1372 (9th Cir.1998) (amending prior opinion at 132 F.3d 512, 519 (9th Cir.1997)).

Plaintiff is not asserting that a failure to discipline OCSO employees for their roles in Mr. Ellis's death somehow *caused* the violation of his constitutional rights. But, as held and reasoned by the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Circuits, post-event evidence can be used at trial to, *inter alia,* "shed light on what policies existed" on the date of an alleged constitutional violation and establish that a policy maker had a pattern of tacitly approving constitutional violations. *See, e.g., Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015) ("To be sure, post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right.") (internal punctuation and quoted case omitted); *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3rd Cir. 1996) (similar subsequent events "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force."); *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-gathering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the

incident."); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (holding introduction of post-event evidence was not error: "Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right."); *Lindquist v. Arapahoe County*, 2011 WL 3163095, at *2 (D. Colo. July 26, 2011) ("some post-incident conduct may be relevant to a showing of an unconstitutional policy, custom or practice pursuant to Monell"); *Mayes v. City of Hammond*, 442 F.Supp.2d 587, 644 & n.14 (N.D. Ind. 2006) ("The Seventh Circuit has held that in some circumstances subsequent conduct taken by municipal officers may be used to prove a preexisting disposition and policy.")

Again, contrary to Defendant's assertion, Plaintiff is not seeking to introduce post-event evidence in order to argue that Defendant "ratified" the actions of his employees. *See* Dkt. #375 at 2. Plaintiff is not asserting that a failure to discipline OCSO employees for their roles in Mr. Ellis's death somehow *caused* the violation of his constitutional rights.

Plaintiff does contend, however, that post-event evidence is relevant to pre-existing unconstitutional policies/practices at the OCSO. Should Mr. Harding testify that the Ottawa County Sheriff's Office, after conducting a full investigation into Mr. Ellis's death, determined that no discipline was warranted for any OCSO employees, and no changes needed to be made to OCSO policy, it would clearly be relevant to "what policies existed…on the date" Mr. Ellis's constitutional rights were violated. In other words, if OCSO decided not to punish anyone for their handling of Mr. Ellis's care, a reasonable jury could conclude that OCSO had maintained a policy, practice, and/or custom of providing woefully subpar medical care to its inmates. *See Cox v. Glanz*, No. 11-CV-457-JED-FHM, 2014 WL 903101, at *10–12 (N.D. Okla. Mar. 7, 2014), rev'd in part (on other grounds), appeal dismissed in part, 800 F.3d 1231 (10th Cir. 2015) ("Certain post-incident conduct may be relevant to the disposition of the Sheriff or the existence of a policy or

4

custom at the time of Mr. Jernegan's July 2009 incarceration and death. Indeed, as noted by the Ninth Circuit, such evidence may be 'highly probative' of such an inquiry…"

Plaintiff respectfully requests the Court permit Plaintiff's counsel to inquire into any discipline of OCSO employees, any changes in policy, and any changes in practice following Mr. Ellis's death.

Respectfully submitted,

**SMOLEN & ROYTMAN**

/s/Bryon D. Helm
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
danielsmolen@ssrok.com
bobblakemore@ssrok.com
bryonhelm@ssrok.com

***Attorneys for Plaintiff***

### CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/Bryon D. Helm