IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

AUSTIN P. BOND, as Personal )
Representative of the Estate of )
Terral Ellis, II, deceased, )
                              )
                   Plaintiff, )
                              )
v.                            )        Case No. 17-cv-00325-CRK-CDL
                              )
THE SHERIFF OF OTTAWA         )
COUNTY, in his official capacity, )
                              )
                   Defendant. )

---

## DEFENDANT'S MOTION FOR NEW TRIAL
## AND BRIEF IN SUPPORT

---

Wellon B. Poe, OBA No. 12440
Jamison C. Whitson, OBA No. 18490
Alison B. Levine, OBA No. 33021
Justin P. Ashlock, OBA No. 33459
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105
Telephone:    (405) 524-2070
Facsimile:    (405) 524-2078
E-mail:       wbp@czwlaw.com
              jcw@czwlaw.com
              abl@czwlaw.com
              jpa@czwlaw.com

*ATTORNEYS FOR DEFENDANT SHERIFF
OF OTTAWA COUNTY, IN HIS OFFICIAL
CAPACITY*

October 5, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i-ii

TABLE OF AUTHORITIES ........................................................................................iii-v

LIST OF EXHIBITS.......................................................................................................vi

BRIEF IN SUPPORT .......................................................................................................1

ARGUMENT AND AUTHORITY ...................................................................................1

I.      THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE ..........1

      A.     NO EVIDENCE POLICIES OR CUSTOMS CAUSED ANY CONSTITUTIONAL VIOLATION ........................................................................2

            1.     Jail policy required that inmates receive adequate medical care .................3

            2.     No evidence of a custom of deliberate indifference to medical needs ........................................................................................................4

            3.     The evidence did not establish a failure to train ...........................................5

      B.     NO EVIDENCE OF DELIBERATE INDIFFERENCE BY DEFENDANT'S EMPLOYEES ..............................................................................6

II.     IMPROPER ARGUMENTS AND CONDUCT OF PLAINTIFF'S COUNSEL .............8

      A.     EXTENT OF REMARKS.....................................................................................9

      B.     CURATIVE ACTION ........................................................................................12

      C.     THE SIZE OF THE VERDICT WAS SHOCKING AND EXCESSIVE ............14

III.    ERRONEOUS AND INADEQUATE JURY INSTRUCTIONS .....................................15

      A.     JURY INSTRUCTION NO. 17 CONTAINS AN ERRONEOUS STATEMENT OF LAW....................................................................................16

      B.     FAILING TO INSTRUCT THE JURY ON ABUSIVE LANGUAGE................19

IV.    ADMITTING NCCHC AND STATE JAIL STANDARDS WAS ERROR....................20

V.     TESTIMONY OF WILCOX SHOULD HAVE BEEN EXCLUDED ............................23

CONCLUSION................................................................................................................25

i

CERTIFICATE OF SERVICE ..................................................................................................26

## **TABLE OF AUTHORITIES**

### **CASES**

*Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158 (10th Cir. 2003) ...................................... 9

*Adkins v. Rodriguez*, 59 F.3d 1034 (10th Cir. 1995) ..................................................... 20

*Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957 (10th Cir. 1993) ......................................... 9

*Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489 (10th Cir. 1990) ........................................ 7

*Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997).... 2

*Burke v. Deere & Co.*, 6 F.3d 497 (8th Cir. 1993) ......................................................... 12

*Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019) .......................................................... *passim*

*Carey v. Lovett*, 132 N.J. 44 (N.J. 1993) ................................................................. 10

*City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ................... 5, 6

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ................................................... 3, 5

*Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980) ............................................ 12

*Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) ........................................................... 20

*Crowson v Washington Co., Utah*, 983 F.3d 1166 (10th Cir. 2020) ...................................... 17, 18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ......................................... 24

*Dougal v. State Farm Mutual Auto. Ins. Co.*, 2006 WL 1141621 (N.D.Okla. April 26, 2006) ... 12

*Escue v. Northern OK College*, 450 F.3d 1146 (10th Cir. 2006) .................................................. 1

*Estate of Briones v. Ardrey*, 2021 WL 4170460 (D. Colo. Sept. 14, 2021) .......................... 22, 23

*Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir. 1985) ................................................... 17

*Henning v. Union Pacific R. Co.*, 530 F.3d 1206 (10th Cir. 2008) ............................................. 16

*Hinds v. Gen. Motors Corp.*, 988 F.2d 1039 (10th Cir. 1993) ................................................... 1

*Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993) ................................................. 3, 6

*Holmes v. Wack*, 464 F.2d 86 (10th Cir. 1972) ............................................................... 2

*Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999)..................................................................... 7

*Lance v. Morris*, 985 F.3d 787 (10th Cir. 2021).................................................................... 6

*Leprino Foods Co. v. Factory Mut. Ins. Co.*, 653 F.3d 1121 (10th Cir. 2011)............................ 20

*Martinez v. Caterpillar, Inc.*, 572 F.3d 1129 (10th Cir. 2009) ..................................................... 16

*Mata v. Saiz,* 427 F.3d 745 (10th Cir. 2005).......................................................................... 7

*McBride v. Deer*, 240 F.3d 1281 (10th Cir. 2001)..................................................................... 20

*McDonough Power Equip., Inc. v. Greenwood*, 454 U.S. 548 (1984) ......................................... 1

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) ................................. 2, 4

*Moody v. Ford Motor Co.*, 506 F.Supp.2d 823 (N.D. Okla. 2007) ....................................... 10, 13

*Naider v. West Park Hosp.*, 254 F.3d 1168 (10th Cir. 2001)........................................... 23, 24

*Nanda v. Philips 66 Company*, 754 Fed.Appx. 675 (10th Cir. 2018)............................................ 2

*Osterhout v. Bd. of Cty. Comm'rs*, 10 F.4th 978 (10th Cir. 2021).................................................. 9

*Pembaur v. Cincinnati*, 475 U.S. 469 (1986) ................................................................................ 2

*People v. Brown*, 2015 Ill. App. 4th. 130412 (Ill. App. Ct. 2015)............................................... 10

*Racher v. Westlake Nursing Home Ltd. Partnership*, 871 F.3d 1152 (10th Cir. 2017)............ 9, 11

*Rivera v. Rivera*, 262 F.Supp. 2d 1217 (D.Kan. 2003).................................................................. 2

*Ryder v. City of Topeka*, 814 F.2d 1412 (10th Cir. 1987)............................................................. 9

*Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008) ........................................................................ 7

*Tanberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005) .......................................................... 3, 22, 23

*U.S. v. Smith*, 13 F.3d 1421 (10th Cir. 1994)........................................................................ 16, 20

*U.S. v. Winchell*, 129 F.3d 1093 (10th Cir. 1997)...................................................................... 16

*Voda v. Medtronic Inc.*, 899 F.Supp.2d 1188 (W.D. Okla. 2012), *aff'd*, 541 F. App'x 1003 (Fed. Cir. 2013)............................................................................................................................ 2

*Waller v. City and County of Denver*, 932 F.3d 1277 (10th Cir. 2019)..................................... 4, 5

iv

*Weaver v. Blake*, 454 F.3d 1087 (10th Cir. 2006) ......................................................... 20

*White v. Conoco, Inc.*, 710 F.2d 1442 (10th Cir. 1983) ................................................. 1

*Whitehead v. Food Max*, 163 F.3d 265 (5th Cir. 1998) ................................................. 12

*Whittenburg v. Werner Enterprises, Inc.*, 561 F.3d 1122 (10th Cir. 2009) .......................... passim

*Young v. Correctional Healthcare Companies, Inc.*, No. 13-CV-315-13J-JFJ
    (N.D. Okla. Feb. 24, 2023) ......................................................................................... 14

## **FEDERAL STATUTES AND RULES**

Fed. R. Civ. P. 59 ....................................................................................................... 1

Fed. R. Civ. P. 59(a)(1)(A) ......................................................................................... 1

## **LIST OF EXHIBITS**

Exhibit 1 – Excerpt from Trial Transcript Vol. III

Exhibit 2 – Excerpt from Trial Transcript Vol. XI

Exhibit 3 – Excerpt from Trial Transcript Vol. X

Exhibit 4 – Excerpt from Durburow Video Depo Clip Report

Exhibit 5 – Excerpt from Trial Transcript Vol. IV

Exhibit 6 – Excerpt from Trial Transcript Vol. VII

Exhibit 7 – Excerpt from Trial Transcript Vol. II

Exhibit 8 – Excerpt from Trial Transcript Vol. XIII

Exhibit 9 – Unpublished decision in *Dougal v. State Farm*

Exhibit 10 – Jury Verdict in *Young v. Correctional Healthcare Companies, Inc.*

Exhibit 11 – Amended Complaint in *Young v. Correctional Healthcare Companies, Inc.*

Exhibit 12 – Excerpt from Trial Transcript Vol. IX

Exhibit 13 – Excerpt from Trial Transcript Vol. XII

Exhibit 14 – Excerpt from Trial Transcript Vol. I

Exhibit 15 – Unpublished decision in *Estate of Briones v. Ardrey*

**DEFENDANT'S MOTION FOR NEW TRIAL**
**AND BRIEF IN SUPPORT**

Defendant Sheriff of Ottawa County, in his official capacity ("Defendant"), respectfully moves this Court, pursuant to Fed. R. Civ. P. 59, to order a new trial on the grounds that the jury verdict was against the weight of the evidence, there were improper actions and remarks by Plaintiff's counsel, there were errors with jury instructions and in admitting evidence, and Plaintiff's expert witness should not have been permitted to testify. In support thereof, Defendant submits the following Brief.

**BRIEF IN SUPPORT**
**ARGUMENT AND AUTHORITY**

Federal Rule of Civil Procedure 59(a)(1)(A) permits a trial court to grant a new trial on some or all of the issues raised in a motion for new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision whether or not to grant a new trial rests with the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 454 U.S. 548, 556 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993). Parties seeking to set aside jury verdicts "must demonstrate trial errors which constitute prejudicial error, or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

**I.    THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE**

A motion for a new trial premised on the verdict being against the weight of the evidence involves reviewing facts presented at trial and is therefore left to the discretion of the trial court. *Escue v. Northern OK College*, 450 F.3d 1146, 1156-57 (10th Cir. 2006) (citing *Black v. Hieb's Enters.*, 805 F.2d 360, 363 (10th Cir. 1986)). While the Tenth Circuit has stated that the facts must be viewed in the light most favorable to the plaintiff (*see Escue*, 450 F.3d at 1156), some federal district courts within the Tenth Circuit and appellate courts in the majority of other circuits have

held that a court "may weigh the evidence for itself and assess the credibility of the witnesses." *Rivera v. Rivera*, 262 F.Supp. 2d 1217, 1230 (D.Kan. 2003). *See also Voda v. Medtronic Inc.*, 899 F.Supp.2d 1188, 1193 (W.D. Okla. 2012), *aff'd*, 541 F. App'x 1003 (Fed. Cir. 2013) ("[W]hen ruling on a motion for a new trial, the court does not view the evidence in the light most favorable to either party; rather, the governing standard is whether 'the claimed error substantially and adversely affect the party's rights.'"). Regardless, a jury verdict "must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Nanda v. Philips 66 Company*, 754 Fed.Appx. 675, 679-80 (10th Cir. 2018) (quoting *M.D. Mark, Inc.*, 565 F.3d at 762). When a trial court believes the verdict is against the weight of the evidence, a new trial is proper. *Holmes v. Wack*, 464 F.2d 86, 89 (10th Cir. 1972) (citing *Community National Life Ins. Co. v. Parker Square Savings & Loan Ass'n*, 406 F.2d 603, 605 (10th Cir. 1969)). Here, the jury verdict was clearly and decidedly against the weight of the evidence.

## A.   NO EVIDENCE POLICIES OR CUSTOMS CAUSED ANY CONSTITUTIONAL VIOLATION

As Defendant was sued in his official capacity as the Sheriff of Ottawa County under 42 U.S.C. § 1983, he could only be found liable for violating Ellis's Fourteenth Amendment rights if Plaintiff proved that there was a constitutional injury caused by Defendant's own policies or customs. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). A governmental entity can only be held liable for a constitutional violation when the entity "makes a deliberate choice to follow a course of action from among various alternatives." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 406-07 (1997). Rather, § 1983 plaintiffs must establish that a policy or custom of the defendant existed and was in force and that the policy or custom directly caused the alleged

2

constitutional violations. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22 (1985); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Assuming, without conceding, that Ellis's Fourteenth Amendment rights were violated by one or more of Defendant's employees, the evidence *still* does not support a finding of liability against Defendant because there was no evidence that Defendant's policies, practices, or customs caused any such violation.

> ### 1.     Jail policy required that inmates receive adequate medical care.

Both Plaintiff and Defendant introduced evidence at trial of the policies which were in place regarding inmate medical care during Ellis's detention at the jail. In fact, the parties made numerous stipulations regarding Defendant's policies prior to trial and the jury was advised of those stipulations in the jury instructions. [Dkt. 388, pp. 3-6]. The jury was instructed that the following facts regarding Defendant's policies were not in dispute and required no proof: jail policy required medical care to be delivered under the direction of a licensed physician; jail policy required a schedule for sick call; jail policy permitted detention officers to call emergency services if the jail nurse was not available; jail policy required the jail administrator to review statistics on inmate medical care and required the administrator and nurse to review the medical care's effectiveness and efficiency quarterly. [Dkt. 388, pp. 3-6]. While the parties also stipulated those policies largely were not followed, a violation of internal policy does not equate to or establish a constitutional violation. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1163-65 (10th Cir. 2005). The jury was also instructed on that fact. [Dkt. 388, Inst. 21, p. 29]. Jail Policy also required that

> [a]ll county jail inmates shall be entitled to health care comparable to that available to citizens in the surrounding community. Medical care at the facility shall be delivered under the direction of a licensed physician and through the use of trained health care personnel. No jailer or other employee will ever summarily or arbitrarily deny an inmate's request for medical service.

(Plf. Trial Ex. 33; Dft. Trial Ex. 10F). The jail clearly had policies in place which required that inmates have access to both emergency and non-emergency medical care. (Plf. Trial Ex. 32-36).

3

Plaintiff argued at trial that language from the job description for the jail nurse constituted a policy of deliberate indifference to inmates' medical needs. The job duty description states that

> [b]asically a correctional facility nurse does almost everything a trauma nurse does. It's just the type of patients we deal with are different. Never let your guard down, never turn your back to them, and don't ever let them gain your trust.

(Plf. Trial Ex. 29, pp. 11-12). However, testimony demonstrated that was neither the intent nor the effect of the policy. Former Jail Administrator Harding testified that the policy meant "trust but verify." (Ex. 1, Vol. III, 292:4-293:5). He specifically testified that jail staff should verify anything inmates tell them because sometimes inmates are not truthful and from time to time fake illnesses for one reason or another. (Ex. 1, Vol. III, 263:15-25, 292:4-293:5). Physician Assistant Aleta Fox testified that this is the standard policy and practice in correctional medicine and that she was trained on that policy at another correctional facility. (Ex. 2, Vol. XI, 1223:18-1224:25). Even Plaintiff's own expert witness, Dr. Todd Wilcox ("Wilcox"), testified that it is important for jail staff to observe and consider what they are actually seeing and not to rely just on what the inmate is telling them regarding medical complaints to determine whether or not the inmate is malingering. (Ex. 3, Vol. X, 1015:5-13).

The evidence at trial clearly demonstrated that the policies and procedures of the jail required that inmates receive medical care when needed. Consequently, under *Monell, supra,* even if Ellis's constitutional rights *were* violated, any such violation cannot fairly have been to be proximately caused by any policy or procedure of the jail. The jury's finding in favor of Plaintiff was therefore against the weight of the evidence.

### 2.   No evidence of a custom of deliberate indifference to medical needs.

Municipal liability can also be established by an informal custom so widespread and permanent that it is equivalent to an official policy. *Waller v. City and County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir.

4

2010)). Evidence of a single incident is insufficient to establish a widespread custom and impose liability under *Monell. See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Even evidence of one prior incident sufficiently similar in nature to put a defendant on notice that a problem exists is insufficient to establish a pattern of violations, even when the incident is egregious. *Waller, supra,* 832 F.3d at 1287 (citing *Coffey v. McKinley Cty.*, 504 F. App'x 715, 719 (10th Cir. 2012); *Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987)). Deliberate indifference cases in particular require proof of a pre-existing *pattern* of constitutional violations. *Id.* at 1287.

Here, assuming that Plaintiff's constitutional rights were actually violated, *no* evidence was presented of any pattern of deliberate indifference to medical care occurring prior to Ellis's death. Harding testified that while he was the jail administrator, there were no other deaths in the jail. (Ex. 1, Vol. III, 263:2-5). Durburow testified that he wanted to improve the quality of healthcare for inmates at the jail so he contracted with P.A. Fox to provide an additional level of healthcare over and above that provided by Nurse Horn. (Ex. 4, Durburow Video Depo Clip Report, 44:17-45:18, 46:1-47:1). Prior to Ellis's death, Durburow had no reason to believe that the healthcare being provided to inmates may possibly violate inmates' constitutional rights. He testified that prior to Ellis, he had no knowledge of Nurse Horn or jail staff treating any inmate in the manner Ellis was unfortunately treated. (Ex. 4, Durburow Video Depo Clip Report, 175:2-5, 175:8-11).

Because there was no evidence to support that an informal custom of deliberate indifference to healthcare existed either, the verdict is against the weight of the evidence in that regard.

### 3.      The evidence did not establish a failure to train

There are limited circumstances where inadequacy in training can be a basis for § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Inadequacy in training may serve as the basis for municipal liability under § 1983 "only where the

failure to train amounts to deliberate indifference." *Id.* at 388. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality...can a city be liable for such a failure under § 1983." *Id.* at 389. To establish deliberate indifference to a need for training, Plaintiff was required to prove Defendant both knew of and disregarded the substantial risk of inadequate training of his employees. *Id.* at 388. He was required to prove there was a policy or custom of the jail involving deficient training, that the policy or custom caused an injury, and that the policy or custom was adopted with the knowledge it could put citizens at a substantial risk of serious harm. *Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021) (citing *Waller, supra,* 932 F.3d at 1283-84).

The evidence at trial did not prove any of these elements. In fact, former Jail Administrator Harding testified that jailers are required to complete annual training, that they review policies and procedures when hired, and that they receive on-the-job training via shadowing, (Ex. 1, Vol. III, 248:5-19). The jail had a policy in place requiring that staff be trained and Harding followed that when training jail staff. (Ex. 1, Vol. III, 248:20-250:17). Former Sheriff Durburow also testified that new jail staff received 24 hours of training and all jail staff, including the jail nurse, received annual training on the jail's policies and procedures and Oklahoma Jail Standards. (Ex. 4, Durburow Video Depo Clip Report, 175:12-176:2, 176:5-177:4, 177:7). Durburow was personally aware the training had occurred because he watched the undersheriff and the Jail Administrator conduct the training. (Ex. 4, Durburow Video Depo Clip Report, 177:8-15). Because the evidence overwhelmingly shows jail staff were trained and that Defendant did not have a policy of deliberate indifference to the need for additional training, the jury's verdict was against the weight of the evidence in this regard as well.

## B.    NO EVIDENCE OF DELIBERATE INDIFFERENCE BY DEFENDANT'S EMPLOYEES

"A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

This is so "regardless of whether the municipality's policies might have 'authorized' such harm." *Id*. (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). The threshold issue for the jury to decide in this case was whether Defendant's employees were deliberately indifferent to Ellis's medical needs. Plaintiff was required to establish that jail staff knew of a substantial risk of harm to Ellis *and* failed to take reasonable measures to abate it. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). He had to prove by a preponderance of the evidence that jail staff was aware of facts from which the inference could be drawn that Ellis was at a substantial risk of serious harm *and* that they actually drew that inference. *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Mere negligence, even gross negligence, is insufficient to support a claim of deliberate indifference under § 1983. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495 (10th Cir. 1990). The jury's finding of deliberate indifference was against the weight of the evidence on this issue as well.

Testimony from witnesses at trial overwhelmingly established that jail staff failed to perceive that there was a substantial risk of harm to Ellis from the morning of October 22, 2015 until they called EMS that afternoon. The strongest evidence of this is the fact that on October 21, less than 24 hours prior, Ellis had experienced a seizure. (Ex. 5, Vol. IV, 341:22-342:15). When jail staff became aware of this, they called EMS. (Ex. 5, Vol. IV, 341:22-342:15, 366:24-367:24). When EMS arrived at the jail, they examined Plaintiff and determined that he had no acute medical concerns. (Ex. 2, Vol. XI, 1157:1-5; Ex. 5, Vol. IV, 341:22-342:15, 366:24-367:24). In other words, the evidence plainly showed that when jail staff were aware of facts from which the

7

inference could be drawn that Ellis was at risk of substantial harm and they actually *did* draw that inference, they acted by calling EMS.

The evidence also plainly shows that on October 22 they did *not* draw that inference until early that afternoon. Nurse Horn testified that on the morning of October 22, she did not believe that Ellis was faking his illness but that she believed Ellis was being untruthful about what was actually wrong with him because what he was telling her did not match what she was seeing. (Ex. 6, Vol. VII, 726:16-727:10). Nurse Horn and other jail staff clearly failed to perceive the significant risk of harm to Ellis. (Ex. 7, Vol. II, 135:6-16; Ex. 1, Vol. III, 263:15-270:25). Former Jail Administrator Harding testified that six different jail employees believed that Ellis was faking his illness. (Ex. 7, Vol. II, 140:10-14, 146:1-5, 156:8-15). Even Plaintiff's own expert witness testified that he believed jail staff did not really think Ellis was actually ill. (Ex. 3, Vol. X, 1022:10-2). Plaintiff's expert further testified that if jail staff had seen Ellis walking around just hours earlier that they could reasonably presume that Ellis was not actually as ill or injured as he said he was and that no ambulance needed to be called. (Ex. 3, Vol. X, 1015:5-1016:20). He further testified that symptoms of sepsis can mimic other things and that it can be difficult to diagnose. (Ex. 3, Vol. X, 994:17-997:21). And again, once jail staff *did* draw the inference that Ellis's condition was an emergency, they *did* call EMS.

The jury's finding that jail staff was deliberately indifferent to the medical needs of Ellis is against the weight of the evidence. As such, a new trial is warranted for this additional reason.

## II.    IMPROPER ARGUMENTS AND CONDUCT OF PLAINTIFF'S COUNSEL

In addition, the improper conduct of Plaintiff's counsel clearly tainted and biased the jury against the Defendant, which returned an excessive $33-million-dollar compensatory damages award against Defendant. A new trial may be ordered due to the misconduct of counsel when the moving party demonstrates it was prejudiced as a result of that conduct. *Ryder v. City of Topeka*,

814 F.2d 1412, 1426 (10th Cir. 1987); *Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1175 (10th Cir. 2003). Whether misconduct was harmful enough to require a retrial is at the discretion of the Court. *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 962 (10th Cir. 1993) (citing *Poison v. Davis*, 895 F.2d 705, 711 (10th Cir. 1990)). Likewise, improper arguments by counsel warrant a new trial when it "clearly appears that the challenged remarks influenced the verdict." *Racher v. Westlake Nursing Home Ltd. Partnership*, 871 F.3d 1152, 1168 (10th Cir. 2017). Here, Plaintiff's counsel took improper actions, including purportedly crying while questioning a witness and while making his closing argument, and making improper remarks which clearly influenced the jury verdict.[1]  In *Whittenburg v. Werner Enterprises, Inc.*, 561 F.3d 1122 (10th Cir. 2009), the Tenth Circuit explained that Courts should weigh three factors when determining whether a new trial is warranted. *Id.* at 1133. Those factors include the extensiveness of the improper statements or conduct, the absence of any meaningful action, and the size of the verdict. *Id.* When weighing the factors indicates that misconduct influenced the verdict, the trial court may order a new trial. *Osterhout v. Bd. of Cty. Comm'rs*, 10 F.4th 978, 992 (10th Cir. 2021).

A.    **EXTENT OF REMARKS**

Plaintiff's counsel's misconduct and improper remarks were present beginning on the first day of trial but were even more extensive during closing arguments. While questioning former Jail Administrator Harding, Plaintiff's counsel began to apparently cry in front of the jury. (Ex. 7, Vol. II, 148:7-150:2). Defense counsel objected to the emotional display. (Ex. 7, Vol. II, 148:7-150:2). The Court advised Plaintiff's counsel to take a break and stated that if counsel was going to get emotional then she would stop the trial until everyone could control themselves, but counsel refused the break and continued on. (Ex. 7, Vol. II, 148:7-150:2). Prior to closing arguments, the Court issued a preemptive warning to Plaintiff's counsel regarding getting emotional in front of

---

[1]  Defendant has contemporaneously filed a Motion for Remittitur on this issue. [Dkt. 412].

the jury. (Ex. 2, Vol. XI, 1087:6-1088:14). Plaintiff's counsel agreed that he would signal the judge for a break if he was getting emotional and needed to stop. (Ex. 2, Vol. XI, 1087:6-1088:14). However, during closing arguments, Plaintiff's counsel again apparently began to cry, but denied he was crying, despite the fact that defense counsel saw him doing so and objected, and the judge confirmed she heard him sniffling.. (Ex. 8, Vol. XIII, 1453:2-24).

Defendant recognizes that "closing arguments need not, nor should, be a sterile exercise devoid of passion," that parties are "entitled to have someone speak with eloquence and compassion for their cause," and that closing arguments "may be forceful, colorful, or dramatic, without constituting reversible error." *Whittenburg*, 561 F.3d at 1133. However, there are limitations on passion and blatant appeals to prejudice. *Id.* at 1128 (citing *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978)). Decisions from New Jersey and Illinois have stated that it is highly improper for counsel to cry during closing arguments, as that action inflames the emotions of the jury. *See People v. Brown*, 2015 Ill. App. 4th. 130412 (Ill. App. Ct. 2015); *Carey v. Lovett*, 132 N.J. 44, 63-65 (N.J. 1993). In *Carey*, the court concluded in reference to counsel crying that "the passion of the proceeding adversely affected the trial court, which, perhaps without realizing it, allowed its feelings to infect the trial of both liability and damages." *Carey*, 132 N.J. at 65. That is precisely what occurred here. The jury was exposed to Plaintiff's counsel purportedly crying at the outset and at the very end of trial, despite Defendant's objections and the Court's preemptive warnings. When the jury's verdict is the product of counsel inflaming their passions, the proper remedy is a new trial. *Moody v. Ford Motor Co.*, 506 F.Supp.2d 823, 847 (N.D. Okla. 2007) (citing *Mason, supra,* 948 F.2d at 1561).

Seeming to cry was not the full extent of the improper actions by Plaintiff's counsel. As Defendant has explained in its Motion for Remittitur, during his closing argument, Plaintiff's counsel blatantly also asked the jury to render a verdict based on deterrence, which was wholly

improper as Defendant is a governmental entity and punitive damages were not available. *See Burke v. Regalado*, 935 F.3d 960, 1029 (10th Cir. 2019). Over Defendant's objections, Plaintiff's counsel argued that

> **[t]hey talk about this idea of "you can't punish us," but the point of constitution law, the point of a 1983 case, which is the area that we practice, is the idea of a deterrent effect**… The idea of deterrence, the idea that you eight people are getting to make this decision, and you can deter this from happening in our community through your verdict.

(Ex. 8, Vol. XIII, 1454:6-1456:2). He further argued that

> this has to be an incredibly significant verdict; otherwise, these gentlemen are going to walk out of here, and they're going to high-five because they'll say, "We can – we can run a cheap medical system. We don't have to even have a doctor. We can go 18 years with an LPN and no one following the policies, no one even knowing what the medical policies were, no one following the contracts. We can run a very, very cheap medical system because that jury just came back with a very small verdict. They listened to us. The just awarded the family 3 million dollars. Business as usual. That worked out from a financial standpoint.
>
> That's what it's about to them. That's why we're here, is because they think, like them, who devalue a human life for a person who is in a jail setting, that you will as well… [w]e've had people die for our country to make sure that we have these rights. And you are the eight people who can uphold those rights, and you can award a verdict that actually compensates, truly compensates, for what Terry went through, and also has the ability to deter it from happening in the future.

(Ex. 8, 1456:25-1458). The jury therefore improperly heard that punishing Defendant to deter future similar behavior is the *very point* of a § 1983 claim.

Such arguments are *only* appropriate "when the law and evidence place the issue of punitive damages before the jury." *Racher v. Westlake Nursing Home Ltd. Partnership*, 871 F.3d 1152, 1169 (10th Cir. 2017) (citing *Ramsey v. Culpepper*, 738 F.2d 1092, 1100 (10th Cir. 1984); *Vansike v. ACF Indus. Inc.*, 665 F.2d 188, 209-210 (8th Cir. 1981)). There is no question that punitive damages were not available in this case. It is clear that these remarks were purposely intended to, and actually did, influence the jury verdict in this case and that Defendant was prejudiced as a result. When a large verdict is accompanied by improper arguments by counsel, it indicates the

11

jury was swayed by the improper statements and acted upon them. *Whitehead v. Food Max*, 163 F.3d 265, 278 (5th Cir. 1998); *see also Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 759 (6th Cir. 1980); *Burke v. Deere & Co.*, 6 F.3d 497, 513 (8th Cir. 1993); *Dougal v. State Farm Mutual Auto. Ins. Co.,* 2006 WL 1141621, *2 (N.D.Okla. April 26, 2006) (unpublished decision attached hereto as Ex. 9).

Taking the above issues into consideration together, the extent of the impropriety is substantial enough to undermine any faith that the verdict in this case was fairly obtained. *See Burke, supra,* 935 F.3d at 1026. The first *Whittenburg* factor thus weighs in favor of granting a new trial.

### B.    CURATIVE ACTION

The second factor for courts to consider when determining whether a new trial is warranted is whether any meaningful curative action was taken during trial. *Whittenburg*, 561 F.3d at 1133. Here, there was no *meaningful* curative action. The Court's attempt to remedy the prejudice Defendant suffered early on in the trial by Plaintiff's counsel purportedly crying was unsuccessful in preventing the same thing from happening again. While the Court technically sustained Defendant's objections regarding the purported crying and issued a preliminary warning to Plaintiff's counsel before closing arguments to refrain from becoming emotional, there were no curative remarks or instructions made to the jury by the Court after either incident once they occurred. The jury therefore went to deliberate with that second apparent emotional display fresh in their minds.

In terms of the improper comments regarding deterrence, Defendant lodged an ongoing objection on this issue after filing a Motion in Limine to exclude such improper remarks. Prior to trial, Defendant filed an omnibus Motion in Limine to prevent Plaintiff's counsel from asking the jury to use its verdict to "send a message" to Defendant as punishment or deterrence. [Dkt. 245,

Request No. 25]. Defendant cited to *Moody, supra,* in support of that request. The Motion was denied by the Court. [Dkt. 285]. In denying the Motion, the Court relied on opinions from the Second and Ninth Circuits which state that deterrence is a goal of § 1983 actions. But there is no precedential ruling to that effect in the Tenth Circuit. As explained above, Tenth Circuit precedent clearly states that deterrence arguments are wholly improper in § 1983 actions when punitive damages are not at stake. *See Burke, supra,* 935 F.3d at 1029.

Defendant also raised a running objection at trial regarding asking the jury to render a verdict as a deterrence or punishment at trial. (Ex. 8, Vol. XIII, 1454:6-22). The Court sustained the objection specifically as to punishment, but overruled the objection with respect to deterrence so no curative action was taken in that regard, Plaintiff was permitted to proceed with the improper arguments. (Ex. 8, Vol. XIII, 1454:6-22). Although a general instruction was given to the jury reminding them that argument from counsel is not evidence, the *Whittenburg* court made clear that such an instruction is not always curative. *Whittenburg, supra,* 561 F.3d at 1132. "[T]he more improper the argument and the more prejudicial the circumstances, the more specific and timely must be the curative instruction." *Id.* When a trial court overrules a contemporaneous objection to an improper closing argument, such a general instruction given later is not sufficient to undo the harm. *Id.* The *Whittenburg* court held in that case "[t]he district court's decision to overrule the objection to counsel's argument and deem it appropriate was never undone and remained the most specific and timely guidance from the court to the jury with respect to the propriety of counsel's closing remarks." *Id.* Here, the last impression the jury received from the trial court is that the arguments of Plaintiff's counsel were proper and that the jury was free to use its verdict as a deterrent for future behavior rather than as compensation for injuries suffered by Ellis. The only curative action available to remedy the prejudice suffered by Defendant at this juncture is granting a new trial.

13

### C.    THE SIZE OF THE VERDICT WAS SHOCKING AND EXCESSIVE

The third *Whittenburg* factor which courts must consider when deciding whether a new trial is warranted based on prejudicial conduct is the size of the jury verdict. "[T]he size of a verdict – whether it is large or excessive – is a **significant** factor suggesting prejudice sufficient to require a new trial." *Whittenburg, supra,* 561 F.3d at 1132 (emphasis added) (citing *Ketchum v. Nall*, 425 F.2d 242, 244 (10th Cir. 1970)). When a jury returns a high damages award after conduct from counsel which is clearly intended to increase the amount of damages, it is apparent that the purpose of the improper conduct was accomplished. *Id.* at 1132-1133 (citing *Chicago & N.W. Ry. Co. v. Kelly*, 84 F.2d 569, 576 (8th Cir. 1936)). As previously stated, Defendant has contemporaneously filed a Motion for Remittitur. [Dkt. 412]. That Motion contains a survey of jury verdicts in other § 1983 deliberate indifference cases involving the death of a pre-trial detainee and demonstrates that the $33-million-dollar award in this case is far in excess of what has been awarded in those comparable cases.

Two recent cases from the Northern District of Oklahoma indicate how grossly out of proportion and excessive the compensatory damages award is in this case. In *Burke, supra,* the Tenth Circuit held that a $10-million-dollar award was large but not shocking given that evidence was presented at trial that the decedent's injury and paralysis were left untreated for five days, he was unattended for days at a time, he was unable to eat or drink, jail staff dragged him from one cell to another, and that he was naked when he suffocated to death on the jail floor. *Burke, supra,* 935 F.3d at 1033. Most recently, in *Young v. Correctional Healthcare Companies, Inc.*, No. 13-CV-315-13J-JFJ (N.D. Okla. Feb. 24, 2023) (Ex. 10, *Young* Jury Verdict), the jury awarded $14 million in compensatory damages (compared with a punitive damages award of $68 million) following the death of a woman at the Tulsa County Jail.[2]  There, the plaintiff alleged the decedent,

---

[2]  Defendant in that case has filed a Motion for a New Trial, or in the Alternative, a Motion for

14

who had a prior history of heart problems, did not receive adequate medical care over a period of four months and complained about nausea, vomiting, back, and stomach pain the morning she died. (Ex. 11, Amended Complaint in *Young*). Notably, Plaintiff's counsel in this case was also the counsel for the plaintiffs in *Burke* and *Young*.

While each of those cases involved evidence that the decedents were denied access to medical care for multiple days, the evidence in *this* case showed that jail staff called 911 for Ellis on October 21 and that EMS found no signs of acute illness after examining Ellis. (Ex. 5, Vol. IV, 341:22-342:15, 366:24-367:24; Ex. 2, Vol. XI, 1157:1-5). Ellis then refused transport to the hospital. (Ex. 5, Vol. IV, 404:16-405:3). The evidence further showed that Ellis got up and walked on his own twice during the night and did not request more medical attention until approximately 8:30 a.m. on October 22. (Ex.1, Vol. III, 274:10-284:9; Dft's Trial Exhibit 24, Videos D and E). As a result, any deliberate indifference to Ellis's medical needs did not stretch on for a week or even five days as was the case in *Young* or *Burke*. Awarding compensatory damages in this case of $33 million when $10 million was awarded in *Burke* and $14 million was awarded in *Young* is a strong indication that the improper remarks and conduct of Plaintiff tainted the jury verdict. The third *Whittenburg* factor therefore also weighs in favor of ordering a new trial.

Taken together, the combination of the three *Whittenburg* factors indicates that this case must be retried. The extent and severity of the improper conduct, the lack of any meaningful curative actions at the time, and the size of the verdict all indicate that passion and prejudice impacted both the jury's finding of liability and the damages award.

## III.    ERRONEOUS AND INADEQUATE JURY INSTRUCTIONS

The jury instructions in this case permitted the jury to find Defendant liable when there could be no liability under the applicable law. Defendant challenges two rulings on jury

---

Remittitur. As of the date the present pleading was filed, the Motion is still pending.

instructions in particular: Instruction No. 17 contained an inaccurate statement of law, and no instruction was given to the jury regarding abusive language when such an instruction should have been given. As a whole, the jury instructions in this case did not provide the jury a clear understanding of the issues and the applicable legal standards they were to apply when determining liability. *See Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009). When ruling on a challenge to jury instructions courts must determine whether the jury was misled by the instructions, taken together as a whole, and whether the instructions as a whole gave the jury an "intelligent, meaningful understanding of the applicable issues and standards." *U.S. v. Winchell*, 129 F.3d 1093, 1096 (10th Cir. 1997). *See also U.S. v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994) (citing *U.S. v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993)). "'Failure to properly instruct the jury requires a new trial 'if the jury might have based its verdict on the erroneously given instruction.'" *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1221 (10th Cir. 2008) (quoting *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002)). A new trial may also be granted when there is "substantial doubt that the jury was fairly guided." *Smith*, 13 F.3d at 1424 (quoting *Mullins*, 4 F.3d at 900)). Here, the instructions as a whole did not provide the jury a clear, meaningful understanding of the law and the jury might have based its verdict on the erroneously given instructions.

## A. JURY INSTRUCTION NO. 17 CONTAINS AN ERRONEOUS STATEMENT OF LAW

Jury Instruction No. 17, which instructed the jury on elements Plaintiff was required to prove to succeed on his § 1983 deliberate indifference claim, contained an inaccurate statement of law. The instruction informed the jury that Plaintiff could satisfy his burden of proof on the third element by establishing that "One or more agents or employees' deliberate indifference, **or the deliberate indifference of multiple agents and employees together, as a result of gross deficiencies in policies or staffing**, proximately caused injury to Mr. Ellis." [Dkt. 388, No. 17, p.

16

23] (emphasis added). The instruction had the effect of giving the jury the impression it could find Defendant liable even without a definite constitutional violation as long as they found that there were gross deficiencies in policies or staffing. Under § 1983, Defendant can only be held liable if one of his subordinates committed an underlying constitutional violation. *Burke, supra,* 935 F.3d at 1009-1010 (citing *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). "[N]either a supervisor nor a municipality may be held liable based on an unconstitutional policy where there is no evidence of a constitutional violation by any individual subordinate." *Id.* at 1010 (citing *Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009)).

The language in Instruction No. 17 came from *Crowson v Washington Co., Utah*, 983 F.3d 1166 (10th Cir. 2020). In *Crowson*, the plaintiff sued the defendant county under § 1983 for deliberate indifference to medical needs on the theory that the complete absence of medical care policies by the county resulted in his constitutional rights being violated. The county moved for summary judgment on the grounds that there was no constitutional violation by its employees and that no policy or procedure led to any alleged violation. *Id.* at 1177. The district court denied summary judgment, finding that a jury could find that the jail nurse and jail doctor were deliberately indifferent to the plaintiff's medical needs. *Id.* Citing to *Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir. 1985), the Tenth Circuit held that "[d]eliberate indifference to serious medical needs may be shown by proving there are such gross deficiencies in staffing, facilities, equipment, or procedures that the inmate is effectively denied access to adequate medical care" and that even when "the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Crowson*, 983 F.3d at 1186 (citing *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985)). The court clarified, though, that failure-to-train claims may *not* be maintained without a showing of a

17

constitutional violation by a particular improperly-trained officer. *Id.* at 1187. The court noted that in *Martinez*, it had expressly rejected the idea that a county could be held liable for a "systemic injury caused by the interactive behavior of several government officials, each of whom may be acting in good faith." *Id.* (citing *Martinez, supra,* 563 F.3d at 1092. After stating that the ruling in *Garcia* governs over *Martinez*, the court further clarified that the general rule is

> **there must be a constitutional violation, not just an unconstitutional policy, for a municipality to be held liable**. In most cases, this makes the question of whether a municipality is liable dependent on whether a specific municipal officer violated an individual's constitutional rights. But *Garcia* remains a **limited exception** where the alleged violation occurred as a result of multiple officials' actions or inactions.

*Id.* at 1191 (citing *Trigalet v. City of Tulsa*, 239 F.3d 1150 (10th Cir. 2001)) (emphasis added). However, the language of Jury Instruction No. 17 clearly gave the impression that liability could be found *without* a constitutional violation, as long as the jury found policies or staffing were inadequate. And of course, a failure to train claim was at issue in this case and *Crowson* made very clear that the narrow systemic failure exemption does not and cannot apply in cases where the theory of liability is failure to train. *Id.* at 1187.

Defendant objected to the language of Instruction No. 17 multiple times arguing that *Crowson* was not applicable in a case such as this one where there were medical care policies in place and individual acts could be attributed to individual jail employees. (Ex. 12, Vol. IX, 882:22-887:15; Ex. 3, Vol. X, 1031:2-1032:6, 1048:3-1053:15). Defendant specifically objected on the grounds that *Crowson* was a limited exception and that including language from *Crowson* in the jury instructions would confuse the legal standards between negligence and deliberate indifference. (Ex. 12, Vol. IX, 882:22-887:15; Ex. 3, Vol. X, 1048:3-1053:15). The Court requested that the parties brief their objections to the Court's proposed jury instructions and Defendant objected to Jury Instruction No. 17 based on its inclusion of language from *Crowson*. [Dkt. 384]. The Court seemed to recognize the inherent confusion the *Crowson* language creates,

as the judge was initially unsure whether Plaintiff intended to communicate to the jury that a constitutional violation was or was not required by proposing use of the language. (Ex. 12, Vol. IX, 882:22-887:15). Yet the Court still included the language from *Crowson* in Instruction No. 17. Defendant acknowledges that the Court removed the *Crowson* language from Instructions 18 and 19 regarding failure to train and municipal liability after Defendant objected to its inclusion in those instructions as well. (Ex. 13, Vol. XII, 1356:18-1370:3). But looking at the jury instructions as a whole, the inclusion of the language in Instruction No. 17 likely misled the jury as to what Plaintiff was actually required to prove in his deliberate indifference claim. The instructions as a whole do not accurately state the law given that Plaintiff made a claim based on failure to train, and a new trial is warranted.

### B.    FAILING TO INSTRUCT THE JURY ON ABUSIVE LANGUAGE

Compounding the *Crowson* instruction issue is the fact that the jury was not instructed on the applicable law regarding abusive language and constitutional violations. Before trial, Defendant proposed a jury instruction which instructed the jury that

> mere words alone – no matter how insensitive or reprehensible – are insufficient to establish a constitutional violation. Verbally abusive language, taunts, threats, and deplorable, offensive, or unprofessional language toward an inmate do not amount to a constitutional violation.

[Dkt. 354]. It was proposed again during trial due to the fact that Plaintiff had repeatedly shown a video of Nurse Horn using abusive language and threats against Ellis and because Plaintiff's counsel repeatedly suggested that the abusive language was the last thing Ellis heard before his death. [Dkt. 384, pp. 7-8]. In considering the instruction, the Court agreed with Defendant, noting that "this language has been emphasized again and again and again, and we've heard it a lot and that it's taken a certain prominence here." (Ex. 3, Vol. X, 1070:18-22).

However, the Court ultimately did not include the instruction, over Defendant's objection, to its exclusion. (Ex. 3, Vol. X, 1067:6-1071:15). So despite being exposed to the language *ad*

*nauseum* and despite the language being a central theme of Plaintiff's questioning of witnesses and argument, the jury was left to deliberate liability without any instruction on whether abusive language is a constitutional violation or not. Case law is clear that abusive language and threats on their own do not violate an inmate's constitutional rights. *McBride v. Deer*, 240 F.3d 1281, 1291, n. 3 (10th Cir. 2001); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037-38 (10th Cir. 1995); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (per curiam).

Because the jury was left without a meaningful explanation of the applicable law and there is doubt the jury was fairly guided, a new trial is warranted. *See Smith*, *supra*, 13 F.3d at 1424.

## IV.    ADMITTING NCCHC AND STATE JAIL STANDARDS WAS ERROR

Evidentiary rulings are generally left to the broad discretion of the trial court and are subject to reversal only when based on an erroneous conclusion of law, erroneous finding of fact, or manifest error in judgment. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 653 F.3d 1121, 1131 (10th Cir. 2011) (citing *Webb v. ABF Freight Sys. Inc.*, 155 F.3d 1230, 1246 (10th Cir. 1998)). When a motion for a new trial is premised on an error concerning the admittance of evidence, the verdict will not be disturbed unless the court made a "clear error of judgment or "exceeded the bounds of permissible choice in the circumstances." *Weaver v. Blake*, 454 F.3d 1087, 1091 (10th Cir. 2006) (citing *Hinds v. Gen. Motors Corp.*, 988 F.2d 1038, 1046 (10th Cir. 1993)). Here, the court made an erroneous conclusion of law regarding the admissibility of jail standards.

Plaintiff's counsel questioned witnesses at length regarding the jail standards set by the Oklahoma Department of Health ("DOH") and the jail standards used by the National Commission on Correctional Health Care ("NCCHC") and the American Correctional Association ("ACA"), whether the care provided to Ellis conformed to those standards, and whether the policies and procedures of the jail conformed to those standards. Defendant objected to the introduction of testimony regarding those standards in a Motion in Limine before trial [Dkt. 245, pp. 2-3] and

again at trial (Ex. 14, Vol. I, 5:2-8:18; Ex. 3, Vol X, 906:7-12, 907:8-17) due to the risk of confusing the jury. Defendant further objected to the NCCHC standards on the grounds that they are voluntary standards which are not required to be followed. (Ex. 14, Vol. I, 5:2-8:18). When ruling on the Motion in Limine, the Court acknowledged that "[a]dmission of state and national standards could generate a risk of confusion of the issues and may mislead the jury if the jury believed conduct inconsistent with those national and state standards to be solely dispositive of deliberate indifference" but still denied the Motion, stating that the risk of prejudice and confusion did not outweigh their probative value. [Dkt. 285, pp. 6-7].

In both the Order denying the Motion in Limine and in response to Defendant's objection at trial, the Court stated it would issue an instruction to help avoid confusion. [Dkt. 285, p. 8]. Instruction Number 21 was given to the jury, which instructed them that a violation of State law, regulation or policy may be evidence of, but by itself, would be insufficient, to show deliberate indifference or liability under § 1983." [Dkt. 388, Inst. 21, p. 29]. When Plaintiff's counsel began questioning former Jail Administrator Harding regarding the Oklahoma Jail Standards, the Court instructed the jury that

> [y]ou're going to start hearing about some jail standards, some national and state standards, throughout the trial. You are allowed to consider these, but you should not consider these standards as solely dispositive of whether the sheriff's office acted with deliberate indifference. So you should consider them, but you should not consider them solely dispositive.

(Ex. 14, Vol. I, 61:14-20). But still, it was apparent there was confusion present during the direct questioning of Harding in the distinction between state jail standards and jail policy and differences in what each requires. (Ex. 7, Vol. II, 159:9-163:25).

When Plaintiff's counsel began questioning Plaintiff's expert witness Wilcox on the NCCHC and ACA standards, Defendant made a continuing objection on the basis of relevance, but the Court overruled the objection and did not give a renewed or reminder instruction regarding

the standards at that time. (Ex. 3, Vol X, 906:7-12, 907:8-17). There was additional confusing testimony from Wilcox regarding the NCCHC standards. He testified that the NCCHC is merely a "not-for-profit organization that advocates for healthcare in correctional facilities," but then also testified that "there have been legal rulings that have mandated NCCHC accreditation of different facilities." (Ex. 3, Vol. X, 991:1-992:2). When asked by defense counsel on cross whether the Ottawa County Jail was required to obtain that accreditation, Wilcox noncommittally answered that he was "not familiar with that." (Ex. 3, Vol. X, 992:3-6). This clearly created a confusing issue for the jurors regarding these inapplicable, irrelevant jail standards and their relationship to a deliberate indifference analysis. That confusion ultimately prejudiced Defendant.

In *Estate of Briones v. Ardrey*, the court analyzed whether a report finding that the defendants did not comply with policies and standards regarding medical care provided to an inmate should be excluded under Federal Rule of Evidence 403 due to its risk of prejudice and confusion of the issues. Discussing *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-65 (10th Cir. 2005), the court stated:

> Were plaintiffs permitted to introduce the internal investigative report, which found that defendant violated Sheriff's office policies, the jury may make a decision based "on an improper basis," that is, that violation of the county's internal policy has some bearing on whether defendant committed a constitutional violation. *U.S. v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011) (citation omitted). *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-65 (10th Cir. 2005), is instructive. There, the trial court excluded evidence of a police department's standard operating procedures and an internal report that the defendant violated those procedures, and the Tenth Circuit affirmed. *Id.* The Tenth Circuit noted that local police regulations should not be used "as a standard for evaluating constitutionality of police conduct," because that a particular police action "violated police department procedures does not make it more or less likely" that the action was unconstitutional, therefore rendering it irrelevant. *See id.* at 1163-64. Moreover, the Tenth Circuit determined that explaining internal procedures, and the relevant standards for those procedures, would be confusing and time consuming, particularly where those standards are nearly identical to the constitutional standard. *Id.* at 1164-65.

*Estate of Briones v. Ardrey*, 2021 WL 4170460, *1 (D. Colo. Sept. 14, 2021) (unpublished decision attached hereto as Ex. 15).

The *Briones* court held that the standards should be excluded under Fed. R. Evid. 403 whether they were similar to constitutional standards or different from constitutional standards. *Id.* at *2. If the standards were different than the constitutional standards, they were irrelevant because the fact that the defendants did not follow the standards would not make it more or less likely that they also violated the inmate's constitutional rights. *Id.* If, on the other hand, the standards were similar to the constitutional standards, it would confuse the jury and tempt them to conclude that if defendants failed to comply with standards similar to actual law, they must also have violated constitutional requirements. *Id.* Allowing the evidence at trial would thus have "a substantial risk of leading the jury to resolve the constitutional question here based on an improper purpose, and could confuse the jury into thinking that the violation of the policy is somehow relevant to the constitutional claim." *Id.* Defendant relied on *Tanberg* in its Motion in Limine [Dkt. 245] but in denying the Motion, the Court determined that *Tanberg* was not applicable. [Dkt. 285]. However, *Briones* makes clear that *Tanberg* was entirely applicable in the present case and that questioning witnesses on state and "national" jail standards should have been excluded under Rule 403 due to the resulting confusion and prejudice to Defendant. Admission of evidence regarding the standards was error, based on a clearly erroneous conclusion of law. A new trial is therefore warranted.

## V.   TESTIMONY OF WILCOX SHOULD HAVE BEEN EXCLUDED

Trial courts have broad discretion whether to include or exclude expert witnesses. *Naider v. West Park Hosp.*, 254 F.3d 1168, 1173 (10th Cir. 2001) (citing *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1014 (10th Cir. 1993). However, an abuse of that discretion may be found to have occurred when the court makes "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment" regarding the expert testimony. *Id.* at 1174 (quoting *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994)). A new trial may be warranted when the choice to include expert testimony constitutes a "clear error of judgment" or "exceed[s] the bounds of permissible

23

choice in the circumstances." *Id.* (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)). Here, allowing Wilcox to testify was a clear error of judgment.

Defendant moved to exclude Wilcox prior to trial via a motion made pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [Dkt. 246]. The Motion was based on Wilcox not being qualified to render his opinions, his opinions being unhelpful to the jury because they were based on a very limited review of available evidence, his opinions usurping the role of the jury, and his opinions being subject to exclusion under Fed. R. Evid. 403 due to being misleading. [Dkt. 246]. The Court found that Wilcox was qualified to testify, that his opinions may help the jury understand the medical records concerning Ellis's medical complaints and the surveillance videos, and that his opinion testimony met the balancing test of Rule 403. [Dkt. 282]. Defendant's Motion was therefore denied. [Dkt. 282]. At trial, Defendant renewed its *Daubert* motion, objecting to the expert testimony of Wilcox for all the reasons stated therein. (Ex. 3, Vol. X, 897:9-13). The Court noted the objection and Wilcox testified.

Wilcox's testimony at trial demonstrated that his opinions were not helpful to the jury because he reviewed very little of the available evidence before rendering those opinions. He testified that he had not even read the deposition testimony of Nurse Horn before rendering his opinion that jail staff was deliberately indifferent to Ellis's medical needs and that he had read unidentified selected portions of other depositions after submitting his report but could not recall which witnesses the deposition testimony was from. (Ex. 3, Vol. X, 984:1-986:9). His testimony also confirmed that he was not an expert regarding the treatment of sepsis, the medical condition from which Ellis was suffering in the jail, and that he has no experience with providing healthcare to inmates in a small or rural jail. (Ex. 3, Vol. X, 986:10-990:12, 994:17-22). Because Wilcox should have been excluded as an expert witness at trial under *Daubert*, and failure to exclude him was a clear error of judgment, a new trial is warranted.

24

## **CONCLUSION**

A new trial is warranted for several reasons. First, it is clear that the jury's verdict was against the weight of the evidence. The evidence demonstrated that Ellis's Fourteenth Amendment rights were not violated by jail staff. Witness testimony did not establish that jail staff was actually aware that Ellis was at a substantial risk of serious harm between the time between the time he was examined by EMS on October 21 and when another ambulance was called for him on the afternoon of October 22. Even if testimony *did* actually support that jail staff was deliberately indifferent to Ellis's medical needs, the evidence did not establish that jail policies and procedures caused any deliberate indifference. The evidence at trial simply did not support a jury verdict in Plaintiff's favor. Second, Plaintiff's counsel made improper arguments which should have been excluded and took improper actions at trial, which tainted the jury verdict. And third, Plaintiff's expert witness should not have been permitted to testify. Each of things demonstrates Defendant should be granted a new trial in this matter.

WHEREFORE, premises considered, Defendant Sheriff of Ottawa County, in his official capacity, respectfully requests this Court GRANT his Motion for a New Trial.

Respectfully submitted,

s/ Alison B. Levine
Wellon B. Poe, OBA No. 12440
Jamison C. Whitson, OBA No. 18490
Alison B. Levine, OBA No. 33021
Justin P. Ashlock, OBA No. 33459
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK   73105
Telephone:     (405) 524-2070
Facsimile:     (405) 524-2078
E-mail:        wbp@czwlaw.com
               jcw@czwlaw.com
               abl@czwlaw.com
               jpa@czwlaw.com

*ATTORNEYS FOR DEFENDANT SHERIFF OF OTTAWA COUNTY, IN HIS OFFICIAL CAPACITY*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2023, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen
Robert M. Blakemore
Bryon D. Helm
SMOLEN & ROYTMAN, PLLC
701 South Cincinnati Avenue
Tulsa, OK 74119

***Attorneys for Plaintiff***

s/ Alison B. Levine
Alison B. Levine