## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**Terral B. Ellis, Sr., et al.,**

     **Plaintiffs,**

**v.**

**OTTAWA COUNTY SHERIFF,**
**in his Official Capacity,**

     **Defendant.**

**4:17-cv-00325-CRK-CDL**

## <u>OPINION AND ORDER</u>

Before the Court are a motion for attorney's fees and expenses and a bill of costs requested by Austin P. Bond ("Plaintiff"), as the Personal Representative of the Estate of Terral Ellis II ("Mr. Ellis"), deceased. <u>See</u> Pl.'s Mot. Atty's Fees & Expenses at 1, Oct. 10, 2023, ECF No. 417 ("Fees Mot."); Bill of Costs at 1, Oct. 6, 2023, ECF No 413; Item. Bill of Costs, Oct. 6, 2023, ECF No. 413-1 ("Item. Costs"); Br. In Supp. [Bill of Costs] at 1, Oct. 6, 2023, ECF No. 414 ("Costs Br."). Plaintiff submitted his Fees Motion pursuant to 42 U.S.C. § 1988, Rule 54 of the Federal Rules of Civil Procedure, and Rule 54.2 of the Local Rules for the United States District Court for the Northern District of Oklahoma. Plaintiff's bill of costs is filed pursuant to 28 U.S.C. § 1920, Rule 54 of the Federal Rules of Civil Procedure, and Rule 54.1 of the Local Rules of the United States District Court for the Northern District of Oklahoma. For the reasons that follow, Plaintiff's motion for attorney fees and bill of costs are both granted in part and denied in part.

## BACKGROUND

This matter involves the death of Mr. Ellis.  On October 10, 2015, the 26-year-old Mr. Ellis surrendered himself to the Ottawa County Jail due to an outstanding arrest warrant.  Pretrial Order at 3, Aug. 4, 2023, ECF No. 352-1 ("Stip. Facts").  Mr. Ellis was detained at the jail between October 10 and October 22, 2015.  Id. at 3–5.  On October 22, 2015, Mr. Ellis died of sepsis and pneumonia.  Id. at 3.  On June 9, 2017, Plaintiff filed a claim under 42 U.S.C § 1983 against the Sheriff of Ottawa County in his Official Capacity ("Defendant").  See generally Compl., June 9, 2017, ECF No. 2.  Plaintiff alleged that the jail failed to provide Mr. Ellis with appropriate medical care as a pre-trial detainee in violation of the Fourteenth Amendment.  Id. at ¶¶ 49–64.  The case was tried in the Northern District of Oklahoma in August of 2023.   The jury rendered a verdict in favor of Plaintiff, awarding Plaintiff compensatory damages in the amount of $33,000,000.00 as well as post-judgment interest at a rate of 5.39% per annum pursuant to 28 U.S.C. § 1961.  See Jury Verdict at 1, Aug. 23, 2023, ECF No. 392 ("Verdict").  This Court entered judgment in favor of the Plaintiff on September 8, 2023.  See Judgment at 1, Sept. 8, 2023, ECF No. 400.

On October 13, 2023, Plaintiff filed a motion for attorney's fees and expenses.  See Fees Mot. at 1.  Plaintiff requests a total of $1,226,009.00 in attorney's fees and expenses.[1]  See id. at 6.  Of the $1,226,009.00 requested total fees and expenses,

---

[1] In his Fees Motion, Plaintiff seeks an award for hours expended "set forth in the attached exhibits for which compensation is requested." Fees Mot. at 4.  In the exhibits, including the individual timetables for Plaintiff's attorneys, Plaintiff's calculations contain errors that are identified and corrected below.  To identify the

$1,205,400.00 is derived from 2,742.9 hours of attorney billable time, including the $550.00 hourly rate of Daniel Smolen, the $500.00 hourly rate of Robert Blakemore and the $350.00 hourly rate of Bryon Helm. Id. at 5–6. The remaining $20,609.00 is related to fees associated with video editing, document management and equipment for visual presentations provided by ProLegalTech. Id. at 6. Plaintiff additionally submitted his bill of costs and supporting brief for reimbursement of costs incurred as the prevailing party pursuant to 28 U.S.C. § 1920. See generally Bill of Costs; Item. Costs; Costs Br. Specifically, Plaintiff requests compensation from Defendant for fees of the clerk, process server fees, fees for daily transcripts, printing fees, witness expenses, and docketing fees totaling $23,263.35. See Bill of Costs at 1–2; Item. Costs at 1–2.

## DISCUSSION

Plaintiff requests attorney's fees and expenses under 42 U.S.C. § 1988. Fees Mot. at 2. The Court may award reasonable attorney's fees to a prevailing party. 42 U.S.C. § 1988(b). Pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure, costs other than attorney's fees should be granted to the prevailing party of a civil action unless federal law, the Rules of Civil Procedure, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1). Awarding fees to a prevailing party is within the "sound judicial discretion" of the district court. Callicrate v. Farmland Industries, Inc., 139 F.3d 1336, 1339 (10th Cir. 1998) (citing U.S. Industries, Inc. v. Touche Ross

---

errors, the Court added the sum of the hours represented by the timetables. Therefore, Plaintiff's request of $1,243,825.00 in his motion is inaccurate, and the correct total, as calculated, is $1,226,009.00.

**4:17-cv-00325-CRK-CDL**

& Co., 854 F.2d 1223, 1245 (10th Cir. 1988), overruled on other grounds by Osterhout

v. Board of County Com'rs of LeFlore Co., 10 F.4th 978 (10th Cir. 2021)).

## I.    Plaintiff is the Prevailing Party

Pursuant to 42 U.S.C. § 1988, the district court has discretion in civil rights

litigation to "allow the prevailing party, other than the United States, a reasonable

attorney's fee as part of the costs." Hensley v. Eckerhart, 461 U.S. 424, 426 (1983)

(citing 42 U.S.C. § 1988).   Although the Court's power to award attorney's fees is

discretionary, "that discretion is narrow once a civil rights plaintiff demonstrates that

he is a prevailing party." Robinson v. City of Edmond, 160 F.3d 1275, 1280 (10th Cir.

1988) (citing Phelps v. Hamilton, 120 F.3d 1126, 1129 (10th Cir. 1997)) (internal

quotations omitted).   Winning an adjudication constitutes prevailing on the merits.

See Robinson, 160 F.3d at 1281 (supporting its determination that the plaintiffs were

the prevailing party by citing its previous reversal of the trial court).

Here, there is no dispute as to whether Plaintiff is the prevailing party.  A trial

was held in the Northern District of Oklahoma in August of 2023.  After eight days,

the jury rendered a verdict in favor of Plaintiff, finding Defendant liable under

Section 1983 for depriving Mr. Ellis, as a pre-trial detainee, of his constitutional

rights while being held in the Ottawa County Jail.  See Verdict at 1; Judgment at 1.

The jury awarded $33,000,000.00 in compensatory damages.   See Verdict at 1;

Judgment at 1.   Given Plaintiff's success on the merits, Plaintiff is entitled to

reasonable attorney's fees and expenses.

4:17-cv-00325-CRK-CDL

## II.      Reasonableness of Attorney's Fees

The first step in determining the reasonableness of a party's request is calculating the "lodestar amount" of attorney's fees.  <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 567–68 (1986); <u>Cooper v. Utah</u>, 894 F.2d 1169, 1171 (10th Cir. 1990); <u>Robinson</u>, 160 F.3d at 1281.  The lodestar amount is the "product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" <u>Robinson</u>, 160 F.3d at 1281 (citing <u>Hensley</u>, 461 U.S. at 433).  Claimants are "entitled to the presumption" that the lodestar amount is reasonable.  <u>Id.</u> (citing <u>Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. at 563–65).

### A.      Hourly Rates

In determining whether an hourly rate is reasonable, courts consider "what the evidence shows the market commands for civil rights or analogous litigation." <u>Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.</u>, 157 F.3d 1243, 1255 (10th Cir. 1998); <u>see</u> <u>United Phosphorus, Ltd. v. Midlandt Fumigant, Inc.</u>, 205 F.3d 1219, 1234 (10th Cir. 2000).  "The party requesting the fees has 'the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" <u>United Phosphorus, Ltd.</u>, 205 F.3d at 1234 (quoting <u>Ellis v. Univ. of Kan. Med. Ctr.</u>, 163 F.3d 1186, 1203 (10th Cir. 1998)).  Courts may use their own knowledge to establish a reasonable rate when the prevailing party's evidence is insufficient.  <u>Case</u>, 157 F.3d at 1257 (citing <u>Lucero v. City of Trinidad</u>, 815 F.2d 1384, 1385 (10th Cir. 1987)).

4:17-cv-00325-CRK-CDL

As the prevailing party, Plaintiff requests an hourly rate for three attorneys: $550.00 per hour for Mr. Smolen, $500.00 per hour for Mr. Blakemore, and $350.00 per hour for Mr. Helm.  Fees Mot. at 5.  Plaintiff argues that the requested rates "are eminently reasonable market rates based upon the level of experience and skill of each attorney and rates which are paid to other lawyers of similar experience and skill."  Id.  Plaintiff further describes the requested rates as being "near the top of the scale for lawyers of similar vintage in Tulsa area."  Exh. 4: Decl. of Robert M. Blakemore at 4, Oct. 13, 2023, ECF No. 417-4 ("Blakemore Decl.").  However, Plaintiff produces no evidence that the requested rates are in line with the prevailing rates of other attorneys in the community of similar experience.  The requesting party must provide support for its claim of reasonableness.  Ellis, 163 F.3d at 1203.  Where the plaintiff fails to establish the reasonableness of proposed rates, as here, the Court may rely on its own knowledge.  See Case, 157 F.3d at 1257.

Here, Defendant invokes Lance v. Morris, a civil rights case from the Eastern District of Oklahoma tried in April of 2023, to challenge Plaintiff's request.  See Exh. 1: Lance v. Morris, Case No. CIV-17-378-RAW (E.D. Okla. Sept. 5, 2023), Nov. 10, 2023, ECF No. 426-1 ("Lance, Fees Order").  Similar to the instant case, in Lance the plaintiff advanced a civil rights claim alleging unconstitutional denial of medical treatment of a pretrial detainee by jail guards at a detention center.  See generally [Lance,] Petition, Nov. 10, 2023, ECF No. 426-2.  Plaintiff prevailed and then requested attorney's fees that consisted of hourly rates of $550.00 per hour, $450.00 per hour, and $400.00 per hour.  See Lance Fees Order at 9.  The district court found

6

the hourly rates unreasonable and adjusted them to $425.00 per hour for the attorney with 21 years of experience, $375.00 per hour for the attorney with 18 years of experience, and $300.00 per hour for the attorney with approximately five years of experience. Id. at 7–9. Given the similarities concerning both the legal subject matter and level of experience of the attorneys between Lance and the instant case, Lance provides an appropriate baseline for a reasonable hourly rate.

Adjustments to that baseline may be appropriate given the complexity of civil rights litigation and depending on the number of civil rights cases litigated by each attorney, as well as the number of years each attorney has been licensed to practice law. Id. at 9. Mr. Smolen has been a licensed practitioner for approximately 20 years, founding Smolen & Roytman in 2007, and since 2011 has devoted a significant amount of his practice to civil rights litigation. See Exh. 5: Decl. of Daniel E. Smolen at 1, Oct. 13, 2023, ECF No. 417-5. Given Mr. Smolen's history of civil rights litigation and his role as lead counsel in this case, the Court finds $450.00 as a reasonable hourly rate. See id.; Lance, Fees Order at 5–9. Mr. Blakemore has been a licensed attorney for 23 years and has been a partner in the civil rights practice of Smolen & Roytman since 2013, contributing to at least five civil rights cases argued before the Tenth Circuit. See Blakemore Decl. at 1–2. Given Mr. Blakemore's career and specialized experience in civil rights litigation, as well as his role in the instant case, the Court sets $425.00 as his reasonable hourly rate. See id. at 2; Lance, Fees Order at 5–9. Mr. Helm has been a licensed attorney for five years, practicing almost exclusively in the field of civil rights and serving as Mr. Smolen's co-counsel in six

4:17-cv-00325-CRK-CDL

civil rights trials.  See Exh. 6: Decl. of Bryon D. Helm at 1, Oct. 13, 2023, ECF No. 417-6.  Mr. Helm has the least amount of experience in civil rights matters as a practicing attorney, and his fee is adjusted accordingly to the hourly rate of $300.00. See id.; Lance, Fees Order at 5–9.

## B. Billable Hours

As the prevailing party, Plaintiff seeks $1,205,400.00 in fees at the requested hourly rate[2] for 2,742.9 hours of attorney time.  See Fees Mot. 6.  Plaintiff seeks a total of $308,715.00 for 561.3 hours worked by Mr. Smolen at the requested rate of $550.00 per hour.  See Exh. 2: Smolen Timetable, Oct. 13, 2023, ECF No. 417-2 ("Smolen Timetable").  Plaintiff seeks a total of $443,750.00 for 887.5 hours worked by Mr. Blakemore at the requested rate of $500.00 per hour.  See Exh. 1: Blakemore Timetable, Oct. 13, 2023, ECF No. 417-1 ("Blakemore Timetable").[3]  Plaintiff seeks a total of $452,935.00 for 1,294.1 hours worked by Mr. Helm at the requested rate of $350.00 per hour.  See Exh. 3: Helm Timetable, Oct. 13, 2023, ECF No. 417-3 ("Helm Timetable").[4]  Plaintiff argues that "time for which an award is sought is hard billable

---

[2] Plaintiff requests the Court set the following hourly rates for counsels' legal work:
1. Mr. Smolen at $550.00 per hour;
2. Mr. Blackmore at $500.00 per hour; and
3. Mr. Helm at $350.00 per hour.

Fees Mot. at 4–5.

[3] In Mr. Blakemore's billing timetable, Plaintiff erroneously claims the total attorney's fees for 887.5 hours of work at the rate of $500.00 per hour equals $488,125.00.  Blakemore Timetable at 32.  Plaintiff's calculation would be correct if Mr. Blakemore's rate was $550.00 per hour.  However, the actual total for 887.5 hours of work at the rate of $500.00 per hour is $443,750.00.

[4] In Mr. Helm's billing timetable, Plaintiff erred in calculating the total hours for Mr. Helm.  Plaintiff erroneously calculated a total of 1,277.1 hours for Mr. Helm's billings; however, the correct sum for Mr. Helm's totals is 1,294.1 hours.

time, reasonably expended on matters and activities, which are compensable." Fees Mot. at 4. Defendant argues that Plaintiff's billing records show that Plaintiff failed to exercise billing judgment because time spent on certain tasks were excessive, because time was devoted to unsuccessful claims and claims against other defendants, and because some of the hours consisted of duplicative and unnecessary work. Def.'s Resp. & Obj. to [Fees Mot.] at 7–17, Nov. 10, 2023, ECF No. 426 ("Fees Opp. Br."). Upon review of the Plaintiff's billing records, it is evident that a reduction is justified as Plaintiff did not demonstrate proper billing judgment.

### 1.    Excessive Time Spent on Tasks

The prevailing party seeking a fee award must demonstrate entitlement to the award and document the hours expended. Hensley, 461 U.S. at 437. The party must establish "the reasonableness of each dollar, each hour, above zero." Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1210 (10th Cir. 1986); see also Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995). The seeking party is required to "exercise billing judgment with respect to the hours worked and should maintain billing time records in a manner that will enable the reviewing court to identify distinct claims." Hensley, 461 U.S. at 437 (internal quotations and citations omitted). To demonstrate billing judgment, "counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Id. at 434, see also Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996).

Defendant challenges Plaintiff's claimed "343.4 hours Mr. Helm spent reviewing video footage produced in response to Plaintiff's discovery request to

Defendant."  Fees Opp. Br. at 9.  Defendant argues that "[t]he amount of video footage produced was clearly a direct result of Plaintiff's litigation strategy" and thus the amount is unreasonable because "cases such as this one where fee-shifting statutes are involved, high fees resulting from an aggressive litigation strategy are not voluntary, as opposed to cases in which a party affirmatively agrees to aggressive litigation choices[.]"[5]  Id. at 9.  Plaintiff offers no specific justification for the fees billed during Mr. Helm's review of the footage.  Rather, Plaintiff only contends that all the hours requested have been reasonably expended.  See Fees Mot. at 1–5 Irrespective of Plaintiff's lack of explanation, Defendant's argument is unpersuasive and Defendant's request for reduction on the matter of fees related to Mr. Helm's footage review is denied.

The footage from the jail was a significant part of the instant case.  It is undisputed that on October 10, 2015, the 26-year-old Mr. Ellis walked unassisted into the Ottawa County Jail, see Pl. Exh. 71 at 20:50,[6] and on October 22, 2015, he was pronounced dead.  Stip. Facts at 5.  Multiple cameras captured footage of Mr. Ellis from different times and different angles during the final 16 days of his life.  Plaintiff's attorneys necessarily combed through the footage in preparation for trial.  Defendant

---

[5]  "Fee-shifting imposes one party's fee obligations upon the very party who was the subject of that litigation strategy."  Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1247 (10th Cir. 2005).  Therefore, awards granted under fee-shifting statutes "are not intended to replicate fees which an attorney could earn through a private fee arrangement with a client."  Id.

[6]  Plaintiff's video exhibits 50–71 were entered into evidence in the Court's Pretrial Order without objection from Defendant.  See Pretrial Order at 26–27, Aug. 4, 2023, ECF No. 352; see also Pl.'s Witness and Exh. List at 2–4, August 23, 2023, ECF No. 390-1.

4:17-cv-00325-CRK-CDL

provides no evidence that Plaintiff's request for all video and audio was an aggressive litigation strategy rather than simple due diligence.  In the absence of such evidence, the Court does not have to reach the issue of fee-shifting in the context of litigation strategy.   Defendant also argues that the hours spent reviewing footage are unreasonable because "only a few days of footage were relevant to Plaintiff's claim against Defendant."  Fees Opp. Br. at 10.  It is unclear how Plaintiff would know what footage would be relevant before reviewing the footage in its entirety.  Defendant's request for reduction is denied.

Defendant similarly objects to Plaintiff recovering fees for the 37.6 hours spent discussing, drafting, reviewing, and revising the complaint. Id. at 10.  Again, Plaintiff makes no specific argument about this matter.  See generally Fees Mot.  Nonetheless, the hours spent on the complaint do not appear unreasonable.  Section 1983 is a complex statute.  The 37.6 hours expended by a total of three attorneys on the complaint is reasonable.  Indeed, the complaint consisted of 19 pages; it is conceivable that such a document consisting of a facts intensive claim would require multiple attorneys to draft and review.  Moreover, it is common practice in law firms for junior associates or less experienced attorneys to draft documents.  Mr. Helm's 27.6 hours spent on the complaint is not such an exorbitant amount of time as to be labeled excessive or warrant a reduction.  Therefore, Defendant's request for reduction is denied.

4:17-cv-00325-CRK-CDL

### 2.    Time Spent on Previous Co-Defendants

Plaintiff's counsel maintains that it has reasonably expended the hours logged in the time records of Mr. Smolen, Mr. Blakemore, and Mr. Helm, and are thus entitled to an award of fees.  Fees Mot. at 4.  Defendant takes issue with Plaintiff's inclusion of billable time related to claims against defendants other than the Sheriff, including former Co-Defendants Terry Durborow, Jeffrey Harding, Theresa Horn, Charles Shoemaker, and Johnny Bray; Baptist Healthcare of Oklahoma, LLC, d/b/a Integris Miami EMS ("Integris"), Jennifer Grimes, and Kent Williams; and the Board of County Commissioners of Ottawa County ("BOCC").   Fees Opp. Br. at 11. Defendant points to Plaintiff's own records to show that Mr. Helm, Mr. Blakemore, and Mr. Smolen devoted 69.8 hours, 89.0 hours, and 58.0 hours respectively on matters concerning previously dismissed Co-Defendants and claims. Id. at 13–16. However, Defendant fails to establish an appropriate basis for denying Plaintiff billable hours related to Durborow, Harding, Horn, Shoemaker, Bray, Grimes, Williams and BOCC.

When "two claims are interrelated and the plaintiff obtains excellent results on one of those claims, a fully compensatory fee should usually be awarded." Zuchel v. City & Cnty. of Denver, Colo., 997 F.2d 730, 744 (10th Cir. 1993) (citing Hensley, 461 U.S. at 435).  In Zuchel, the defendant objected to fees billed in connection with the previously dismissed defendant police officer who had settled for "a nominal amount including attorney[']s fees incurred against him."  Id. at 744.  The Court rejected the defendant's claim by invoking Hensley, 461 U.S. at 435, reasoning that

an award was proper for claims involving common facts and related legal theories despite a stipulation of dismissal that included a settlement of fees and expenses. Zuchel, 997 F.2d at 744 (citing Hensley, 461 U.S. at 435). Thus, the Court found that prevailing counsel could recoup costs expended on the litigation as a whole rather than on the basis of the individual claims comprising the lawsuit, regardless of their disposition. Id.; see also Hensley, 461 F.2d at 435. Indeed, the Supreme Court has stated that:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Hensley, 461 U.S. at 435.

Here, Plaintiff's claims against former Co-Defendants Durborow, Harding, Horn, Shoemaker, Bray, Grimes, Williams, and BOCC are interrelated with the claim against the Defendant. Although Defendant argues that in light of the Oklahoma Supreme Court's decision in Barrios v. Haskell Cty., 432 P.3d 233, 238–241 (Okla. 2018),[7] Plaintiff is not entitled to the hours spent on the BOCC claim, the BOCC

---

[7] On December 4, 2018, the Oklahoma Supreme Court determined that a private cause of action for denial of inmate medical care does not exist under Sections 7 and 9 of the Oklahoma Constitution. See Barrios v. Haskell Cty., 432 P.3d 233, 238–241 (Okla. 2018). In response, BOCC urged the court to dismiss Plaintiff's claim. See Def. Board's Not. Ruling By Okla. Supreme Ct. at 1–2, May 13, 2019, ECF No. 90. Pursuant to Rule Federal Rule of Civil Procedure 12(b)(6), the Court dismissed Plaintiff's claim against BOCC in light of the holding in Barrios.

claim is related to the death of Mr. Ellis and thus stems from the same common core of facts as the claims against Defendant. Likewise, the claims against Grimes and Williams share core facts with those related to the claim against Defendant. As it relates to Harding, Horn, Shoemaker and Bray, not only do they concern the same core facts, but are also based on the same legal theory. To succeeded on his claim, Plaintiff was required to prove that Defendant was deliberately indifferent to the serious medical needs of Mr. Ellis. Likewise, as it specifically relates to Harding, Horn, Shoemaker and Bray—had they remained parties to the instant claim— Plaintiff would have had to establish that they too acted with deliberate indifference. Irrespective of whether Durborow, Harding, Horn, Shoemaker or Bray were ever added as defendants, Plaintiff nonetheless would have had to expended time to establish their conduct in connection with his efforts to hold Defendant liable. For the preceding reasons, Defendant's request is denied, and Plaintiff is awarded hours relating to Durborow, Harding, Horn, Shoemaker, Bray, Grimes, Williams and BOCC in full.

### 3. Duplicative and Unnecessary Work

Defendant contends that the presence of two of Plaintiff's attorneys at the majority of their conducted depositions constitutes duplicative and unnecessary work, thus warranting reduction. Fees Opp. Br. at 16–17. Of the 1,294.1 hours submitted by Mr. Helm, Defendant points out that he "billed a total of 95.5 hours preparing for, traveling to and from, and attending the depositions of Derek Derwin (18 hours), Theresa Horn (16.2 hours), Jeff Harding (14.6 hours), Terry Durborow (12

hours), Johnny Bray and Charles Shoemaker (28.3 hours combined), and Michael Harrington (6.4 hours)," even though Mr. Helm never questioned deponents himself. Id. at 17 (footnotes omitted).  Defendant further highlights that Mr. Smolen not only attended all the same depositions, but actually conducted the interviews.  Id.; see Smolen Timetable at 4–5.  Plaintiff is silent on the matter and offers no justification for billing both Mr. Helm and the more seasoned lead attorney Mr. Smolen.  See generally Fees Mot.

Within the Tenth Circuit, "the presence of more than one lawyer at depositions and hearings must be justified to the court."  Ramos v. Lamm, 713 F.2d 546, 554 n.4 (10th Cir. 1983), disapproved of on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 717 n.4 (1987) (supplementing Delaware Valley Citizens' Council for Clean Air, 478 U.S. at 546); see also Oklahoma Nat. Gas Co. v. Apache Corp., 355 F. Supp. 2d 1246, 1259 (N.D. Okla. 2004).  Billed time is duplicative when "more than the necessary number of lawyers are present for a hearing or proceeding or when multiple lawyers do the same task."  Robinson, 160 F.3d at 1275 n.10 (citing Ramos, 713 F.2d at 554).

Plaintiff offers no justification for having two attorneys present at the above referenced proceedings.  Moreover, Plaintiff does not indicate whether Mr. Smolen benefitted from Mr. Helm's presence at the depositions.  Mr. Smolen is not only a much more seasoned attorney, but also the attorney who conducted the interviews. There is no basis asserted that might justify Mr. Helm's billings for preparation of depositions that he ultimately did not conduct and did not need to attend.  Moreover,

it does not appear that Mr. Smolen was further assisted by Mr. Helm's preparation, as Mr. Smolen conducted many hours of his own preparation and billed accordingly. See generally Smolen Timetable. There is no doubt that the depositions provided educational value for Mr. Helm; however, it is inappropriate for Defendant to bear the financial burden of training exercises. See Ramos, 713 F.2d at 554 n.4 ("No fees should be awarded for hours reported by lawyers or law clerks who are present at depositions, hearings, or trial for the purpose of being trained and who do not participate in or contribute to the proceedings"); Oklahoma Nat. Gas Co., 335 F. Supp. 2d at 1259. In the absence of any justification, Mr. Helm's preparation for and presence at the depositions of Derwin, Horn, Harding, Durborow, Bray, Shoemaker and Harrington is deemed unnecessary, and the 95.5 hours billed is duplicative. See Helm Timetable at 12–13. The Court is required to reduce fee requests that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434; Robinson, 160 F.3d at 1281; Jane L., 61 F.3d at 1510. Thus, Mr. Helm's total hours of 1,294.1 is reduced by 95.4 hours for a total of 1,198.7 hours at the adjusted rate of $300.00 per hour.

### 4. Mr. Black's Presence

Plaintiff requests fees pertaining to the services provided by Mr. Charlie Black. Fees Mot. at 5–6. Plaintiff states that Mr. Black "through his company, ProLegalTech—provided technical assistance with video editing, document management and visual presentation equipment during the trial." Id. at 5. Plaintiff requested a total of $20,609.00 in fees charged by Mr. Black through ProLegalTech.

16

See id. at 6.  Plaintiff argues that these expenses are "fully compensable, as the type of expenses usually billed in addition to the attorney's hourly rate."  Id. at 5. Defendant does not challenge "the compensability of Black's fees for his editing services," but rather "the necessity of Black managing documents and operating the video equipment throughout the eight-day trial."  Fees Opp. Br. at 18.  Defendant specifically challenges $11,840.00 charged by ProLegalTech for work during trial, amounting to $1,480.00 per day or $185.00 per hour.  See id. at 20.  As a preliminary matter, given that Defendant is only contesting $11,840.00 of the $20,609.00 requested by Plaintiff, the Court grants Plaintiff the uncontested amount of $8,769.00 regarding Mr. Black's editing services.  See id. at 18–20.  Thus, the only remaining question is whether the $11,840.00 charged by Mr. Black for document management and visual presentation equipment during the trial are compensable.

When considering fee requests pursuant to Section 1988, reasonable fees for non-attorneys are "determined in the same fashion" as attorney's fees.  See Case, 157 F.3d at 1249.  Therefore, Plaintiff bears the burden of proving that Mr. Black's fees are in line with rates prevailing in the community for similar services by individuals of reasonably comparable skill, experience, and reputation.  See Blum v. Stenson, 465 U.S. 886, 891 (1984); Ellis, 163 F.3d at 1203.  Yet, Plaintiff offers no evidence that Mr. Black's fees are in line with rates charged by those of similar experience and skill in the community.  It is apparent from the nature of the evidence in the instant case that there needed to be a dedicated individual operating video equipment; but it is not clear, and Plaintiff makes no specific argument to the contrary, that it had to be

17

Mr. Black at a rate of $185.00 per hour.  Moreover, while Plaintiff attaches a company invoice as an exhibit to the Fees Motion, see Exh. 8: ProLegalTech Invoice, Oct. 13, 2023, ECF No. 417-8, that invoice is silent as to Mr. Black's experience, expertise, or his necessity.

Plaintiff additionally requests fees for "document management" conducted by Mr. Black.   Fees Mot. at 5 (explaining that Mr. Black provided "document management" during trial).   Plaintiff fails to explain why Mr. Black conducted document management when there is no indication that the work provided could not have been performed by a firm employee.   Plaintiff fails to justify Mr. Black's fees for work that did not need to be billed at the rate Mr. Black charged.   Moreover, Plaintiff cites two unpublished cases from California[8] and one unpublished case from Colorado[9] to support the argument that Mr. Black's fees are compensable.   However, these cases are unpersuasive in the current matter as they do not relieve Plaintiff of showing that Mr. Black's presence at trial and the requested fees are reasonable. Hensley, 461 U.S. at 437 (explaining fee applicant's burden).   Consequently, Plaintiff does not provide the requisite amount of detail regarding Mr. Black's charges, thus

---

[8] See POM Wonderful LLC v. Ocean Spray Cranberries, Inc., No. 09-CV-565-DDP-RZX, 2012 WL 4936470, at *1–2 (C.D. Cal. Oct. 17, 2012) (granting costs for electronic trial presentation services pursuant to the district court's Local Rule 54-4.13, not under Section 1988); Deocampo v. Potts, No. 2:06-CIV-1283-WBS, 2014 WL 788429, at *13 (E.D. Cal. Feb. 25, 2014) (relying on POM to award fees paid to a contractor for "technical assistance with document management and video presentation during trial").

[9] Rocky Mountain Christian Church v. Bd. Of Cty. Comm'rs Of Boulder Cty., Colo, No. 06-CV-00554-REB-BNB, 2010 WL 148289, at *7 (D. Colo. Jan. 11, 2010) (stating that defendant had not challenged the reasonableness of "[$46,595.00] for video services and costs of electronic trial presentations" under 42 U.S.C. § 1988).

making it impossible for the Court to find them reasonable.  In the absence of such information, the Court finds that the $11,840.00 in fees rendered by Mr. Black are not compensable.

###           5.    **Amended Response Briefs**

In July of 2022, the Court ordered Plaintiff to file amended responses to Defendant's and former Co-Defendants' motions for summary judgment to conform with the Local General Rule 1-2(a) and Local Civil Rule 56-1(c) of the United States Court for the Northern District of Oklahoma and Federal Rule of Civil Procedure 56(c).[10]  See Order at 1–2, July 21, 2022, ECF No. 204; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion . . ."); LGnR1-2(a) ("The rules of procedure in any proceeding in this Court shall be as prescribed by . . . the Federal Rules of Civil Procedure . . . and these local rules"); LCvR56-1(c) ("The response brief in opposition to a motion for summary judgment . . . shall begin with a section responding, by correspondingly numbered paragraph, to the facts that the movant contends are not in dispute and shall state any fact that is disputed").  Counsel for Plaintiff indicates that the following time was spent drafting and filing the initial deficient response briefs to opposing parties' motions for summary judgment: Mr. Smolen billed 16.4 hours; Mr. Blakemore billed 95.9 hours; and Mr. Helm billed 61.4 hours.  See Smolen Timetable at 6; Blakemore Timetable at 13–15; Helm Timetable at 13–15.  Following the Court's order, counsel

---

[10]  In addition to Defendant's motion for summary judgment, Plaintiff was required to file amended responses to dismissed Co-Defendants Floyd, Horn, Integris, Grimes, Williams, Bray, and Charles Shoemaker.  Order at 1, July 21, 2022, ECF No. 204.

indicates that the following time was expended revising the response brief to conform with the Local Rules: Mr. Smolen billed 4 hours; Mr. Blakemore billed 54 hours; and Mr. Helm billed 10 hours.  Smolen Timetable at 7; Blakemore Timetable at 17–18; Helm Timetable at 16.

Here, it would be improper to allow for Plaintiff's counsel to bill for work product necessitated by counsel's disregard of the relevant rules.  The district court's ability to award fees is within its "sound judicial discretion."  <u>Callicrate</u>, 139 F.3d at 1339 (citing <u>Touche Ross & Co.</u>, 854 F.2d at 1245).   Counsel for Plaintiff was previously alerted to the need to follow the appropriate rules in another case.  <u>See</u> <u>Bennett v. Carter Cnty. Bd. of Cnty. Commissioners</u>, No. CIV-17-289-SPS, 2019 WL 1671979, at *2 n.2 (E.D. Okla. Apr. 17, 2019) (identifying that response briefs submitted by Mr. Smolen, Mr. Blakemore, and Mr. Helm did not conform with local filing requirements).   Accordingly, the hours billed by counsel for work on the amended response briefs, consisting of the 4 hours billed by Mr. Smolen, the 54 hours billed by Mr. Blakemore, and the 10 hours billed by Mr. Helm, must be deducted from their total billing.  Therefore, Mr. Smolen's 557.3 hours of billable work at the rate of $450.00 per hour totals the lodestar amount of $250,785.00; Mr. Blakemore's 833.5 hours of billable work at the rate of $425.00 per hour totals the lodestar amount of $354,238.00; and Mr. Helm's 1,188.7 hours of billable work at the rate of $300.00 per hour totals the lodestar amount of $356,610.00.  In sum, Plaintiff is awarded a total lodestar amount of $961,633.00 for the work of Mr. Smolen, Mr. Blakemore, and Mr.

4:17-cv-00325-CRK-CDL

Helm, and an additional $8,769.00 for the uncontested services rendered by Mr. Black

through ProLegalTech, for a total of $970,402.00 in attorney fees and expenses.

## III.   Bill of Costs

Pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure, costs other

than attorney's fees should be granted to the prevailing party of a civil action, unless

federal law, the Rules of Civil Procedure, or a court order provides otherwise.  Fed.

R. Civ. P. 54(d)(1).  The taxing of costs is within the "sound judicial discretion" of the

district court.  Callicrate, 139 F.3d at 1339 (citing U.S. Industries, Inc., 854 F.2d at

1245, overruled on other grounds by Osterhout, 10 F.4th 978).

### A.   Printing and Photocopies

Plaintiff argues that as the prevailing party, he is entitled to the "printing and

photocopying of documents necessary in the preparation of his case against Sheriff of

Ottawa County, in his Official Capacity."  Costs Br. at ¶ 10.  Plaintiff seeks a total of

$3,955.84 in fees for copying and printing.  See Bill of Cost at 1.  Specifically, Plaintiff

seeks to tax $2,864.26 of printing and copying expenses paid to ProLegalTech, as well

as $1,091.58 of expenses for "case-related in-house printing expenses," for a total of

$3,955.84.  See Item. Costs at 2.  Defendant counters that the documentation

produced in support of Plaintiff's claim are insufficient and "extraordinarily vague."

Def. Resp. & Obj. [Bill of Costs] at 2, Nov. 10, 2023, ECF No. 425 ("Costs Opp. Br.").

Because Plaintiff fails to provide sufficient detail regarding the relationship between

the litigation and the incurred printing and copying expenses, Plaintiff's request is

denied in part.  However, Plaintiff's request is granted in part where sufficiently detailed.

Pursuant to 28 U.S.C. § 1920(3) and (4), the prevailing party may recover the costs of fees related to copying and printing.  28 U.S.C. § 1920(3)–(4).  Fees for printing and copying must be "reasonably necessary to the litigation of the case." Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1550 (10th Cir.1987); see also Mitchell v. City of Moore, 218 F.3d 1190, 1204 (10th Cir. 2000).  Documents produced "solely for discovery" do not meet this standard.  In re Williams Sec. Litig.-WCG Subclass, 558 F.3d 1144, 1148 (10th Cir. 2009) (citing Furr, 824 F.2d at 1550). Materials "merely 'added to the convenience of counsel' or the district court" are not recoverable.  Id. at 1147–1148 (quoting Touche Ross, 854 F.2d at 1245).  The "prevailing party bears the burden of establishing the costs to which it is entitled." Cohlmia v. St. John Med. Ctr., 693 F.3d 1269, 1288 (10th Cir. 2012) (citing Allison v. Bank One-Denver, 289 F.3d 1223, 1248 (10th Cir. 2002)).  Additionally, the amount requested "must be reasonable." Id. (citing Callicrate, 139 F.3d at 1339).

Defendant first contests the $1,091.58 that Plaintiff expended on "case related in-house printing expenses."  Costs Opp. Br. at 2–3.  Defendant argues that "[t]he invoice indicates that the amount was charged to the 'Ellis, Terral & Caple, Megan' account, but states nothing further."  Id.  Defendant contends "[w]hile [the invoice] states 8,780 pages were printed, there is no explanation whatsoever of what types of documents were printed and/or copied or when the printing charges were accrued." Id. at 3.  Defendant further claims that the "complete lack of information on the

invoice makes it impossible for Defendant and this Court to know whether the charges are actually for documents necessarily obtained for use in the case." Id.

Upon review and inspection of Plaintiff's itemized bill of costs and the supporting brief, the Court concludes that Defendant is correct. See generally Bill of Costs; Item. Costs; Costs Br.  In requesting taxation related to printing and copying, Plaintiff must show that the documents were "necessarily obtained for use in the case." See 28 U.S.C. § 1920(3)–(4); Furr, 824 F.2d at 1550.  Implicit in this mandate is the need "to make some effort to identify the nature of the documents." Battenfeld of Am. Holding Co. v. Baird, 196 F.R.D. 613, 617 (D. Kan. 2000).  Here, Plaintiff makes no effort to identify the nature of the documents.  Plaintiff only describes the documents as "deposition transcripts, court proceeding transcripts, trial exhibits and pleadings." Costs Br. at ¶ 10.  Plaintiff's description is too vague.  For example, it is unclear what specific documents constitute Plaintiff's "pleadings."  Indeed, if the "pleadings" are related to former Co-Defendants, the Court would have to further examine when the documents were produced in order to determine if they fall within the purview of Section 1920 for taxing purposes.  See Callicrate, 139 F.3d at 1340 (explaining that it is usually best to determine reasonable necessity under Section 1920 in light of the facts known to the parties at the time the expenses were incurred).  However, the Court is unable to conduct such an inquiry due to the lack of context produced by Plaintiff.  The descriptions provided are insufficient.  See Green Construction Co. v. Kansas Power & Light Co., 153 F.R.D. 670, 683 (D. Kan. 1994) (denying copying expenses because prevailing party merely submitted statements

from copying services without identifying use made of the photocopied materials).

Thus, Plaintiff's request for taxation for copies and printing totaling $1,091.58 for case-related in-house printing expenses is denied.

Likewise, Defendant challenges the taxability of the printing expenses from ProLegalTech. Costs Opp. Br. at 3. Defendant objects to three of the four invoices[11] produced by ProLegalTech and offered by Plaintiff for reimbursement, arguing that the invoices are "similarly vague and insufficient to establish the costs were for the printing or copying of documents that were necessarily obtained for use in the case." Id. Plaintiff offers no specific support for taxability of the ProLegalTech invoices. Upon review, there is insufficient information to allow the invoices dated January 24, 2020, July 17, 2023, and August 16, 2023, to be taxed to Defendant.

As noted by Defendant, the January 24, 2020, invoice contains no information other than the case number. Item. Costs at 20. Likewise, the invoice dated July 17, 2023, includes no description other than the very general "Ellis Exhibits." Id. at 23–24. The August 16, 2023, invoice includes a description that reads "4 sets of 4 Admitted and Not Admitted Plaintiff's Exhibits." Id. at 23. Plaintiff's vague descriptions for these invoice entries makes the task of determining whether they are necessary impossible. Defendant argues that "[i]t appears from the descriptions that some of these charges may possibly be duplicative[.]" Costs Opp. Br. at 4. However, Plaintiff's overly vague descriptions do not provide the Court enough information to

---

[11] There are three invoices that fail to exhibit the requisite information necessary to be taxed, dated January 24, 2020, July 17, 2023, and August 16, 2023. Item. Costs. at 22–25.

make that determination.  It is the burden of the Plaintiff to show entitlement to costs under the statute.  See Cohlmia, 693 F.3d at 1288 (explaining burden).  Plaintiff has failed to carry this burden.  Therefore, Plaintiff is not entitled to: (1) $151.26 charged on January 24, 2020; (2) the $388.22 charged on July 17, 2023; or (3) the $2,006.75 charged on August 16, 2023.

The only invoice charge Plaintiff may recoup from Defendant is the ProLegalTech invoice dated May 10, 2023.  See Item. Costs at 23.  In addition to remaining unchallenged by Defendant, see Costs Opp. Br. at 3–4, the May 10, 2023, invoice indicates that it pertains to the "Johnny Bray Transcript."  Item. Costs at 23.  Because the purpose for the service cost is discernible on the invoice's face, and because the transcript was necessary for trial, the $318.03 invoice charge is taxable to Defendant.  See Furr, 824 F.2d at 1550; see also Item Costs at 23; Tr. Of Procs. Of Jury Trial Vol. 4 at 409, Aug. 16, 2023, ECF No. 394 (Johnny Bray video deposition).  Accordingly, Plaintiff is entitled to $318.03 of copying and printing costs of materials necessarily obtained for use in the case.

Plaintiff seeks taxation for $485.00 for thirty (30) binders, totaling $485.00.  Defendant objects to these costs and argues that binders are not taxable under Section 1920.  Costs Opp. Br. at 4.  The plain language of the statute weighs in favor of Defendant, and thus the $485.00 for binders are not taxable.  Plaintiff provides no specific argument as to why binders should be covered under the statute.

Under Section 1920(3) and (4), permitted taxable costs are "[f]ees and disbursements for printing and witnesses" and "[f]ees for exemplification and the

costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(3)–(4).  The plain language of the statute does not lend itself to provide for items such as binders.  Plaintiff provides no support for his request on this matter.  The thirty (30) binders are not taxable costs, thus Plaintiff's request for $485.00 is denied.  Accordingly, Plaintiff's requests for the costs incurred for case-related in-house printing expenses, the ProLegalTech invoices dated January 24, 2020, July 17, 2023, and August 16, 2023, and the thirty binders are denied; Plaintiff's request for $318.03 in copying and printing expenses for the May 10, 2023, invoice is granted.

### B.   Daily Transcripts

As the prevailing party, Plaintiff requests taxation for costs incurred for reporter fees for the depositions of witnesses and for reporter fees for the trial transcripts in the instant case.  Costs Br. at ¶¶ 7–9.  Plaintiff argues that these services "were necessarily obtained for use in the case" and are thus taxable under Section 1920(2).  Id. at 3.  Defendant argues that Plaintiff's request should be reduced because the "daily transcripts were a convenience rather than a necessity."  Costs Opp. Br. at 5.  Here, Defendant's argument is unpersuasive, and Plaintiff's request is granted.

For the expense of a transcript to qualify as a taxable cost, the transcript must be "reasonably necessary to the litigation of the case." Mitchell, 218 F.3d at 1204; see also In re Williams, 558 F.3d at 1148.  Reasonably necessary "does not mean that the transcript must have been indispensable to the litigation to satisfy this test; it simply

must have been necessary to counsel's effective performance or the court's handling of the case." Burton v. R.J. Reynolds Tobacco Co., 395 F. Supp. 2d 1065, 1078–79 (D. Kan. 2005) (quoting 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2677, at 438–40 (3d ed. 1998)) (internal quotations omitted). "[A] court must find that daily copy was necessarily obtained, as judged at the time of transcription." Id. at 1078 (quoting Touche Ross, 854 F.2d 1223 at 1248, overruled on other grounds as recognized by Anixter v. Home–Stake Prod. Co., 77 F.3d 1215, 1231 (10th Cir. 1996)).

Contrary to Defendant's claim, the transcripts were not merely for convenience. Rather, the transcripts served a valuable purpose during trial. During the 8-day trial, each side referenced and cited testimony from past proceedings. The daily transcripts allowed counsel for both parties to quote statements verbatim from previous days of testimony. See, e.g., Trial Tr. at 652:3-5 (Mr. Ashlock quoting part of Mr. Lawson's testimony from the previous day); Trial Tr. at 416:5 (Mr. Smolen questioning Cartis Lawson about past testimony). Thus, it is apparent that the transcripts were not merely for convenience but were necessary for counsel's effective litigation of the case. Accordingly, Defendant's request for reduction is denied, and Plaintiff is awarded $17,556.16 in taxable costs for reporter fees for the depositions of witnesses and daily trial transcripts.

## C.   Charges For Service of Summons and Subpoenas

Plaintiff requests a total of $535.00 in fees for summons and subpoenas served by the private process server Midnight Run Services, LLC ("Midnight Run"). Costs

Br. at ¶ 6.  Defendant argues that the rates charged by the private process server exceed what is permitted by statute and thus should be reduced to $390.00.  Costs Opp. Br. at 5–7.  Because Defendant's contention is correct, Plaintiff's request must be reduced.

Pursuant to 28 U.S.C. § 1920(1), the prevailing party in litigation is entitled to fees of the clerk and marshal.  Although taxation for the use of a private process server is permitted, fees charged by "private process servers are generally only taxable up to the amount that would have been incurred if the U.S. Marshal's office had effected service."  Treaster v. HealthSouth Corp., 505 F.Supp.2d 898, 903 (D. Kan. 2007) (citing Burton, 395 F. Supp. 2d at 1078).  The U.S. Marshal's Service fee is set at "$65.00 per person per hour for each item served, plus travel costs and any other out-of-pocket expenses."  28 C.F.R. § 0.114(a)(3).

Defendant is correct that Plaintiff's request exceeds what is permitted for taxation by statute.  Plaintiff submits documentation showing that Midnight Run charged $85.00 each for the personal service of Horn, Shoemaker, Durborow, Derwin, and Harding, as well as $85.00 for the attempted service of Cartis Lawson.  Item. Costs at 4.  Plaintiff makes no attempt to justify recovery of the costs, other than citing an out of circuit decision permitting private process server fees to be taxed.  See Costs Br. at ¶ 6; see also Alflex Corp. v. Underwriter's Laboratories, Inc., 914 F.2d 175, 178 (9th Cir. 1990).  However, Plaintiff's reliance on Alflex Corp. is unhelpful, as the Court fully acknowledges that private process server fees can be taxed.

The Court must determine at what rate private process server fees can be taxed. Decisions within the Tenth Circuit are clear: private process server fees shall not exceed the U.S. Marshal's Service rate of $65.00 per hour. See, e.g., Burton, 395 F. Supp. 2d at 1078 (allowing private process service rates equivalent to the U.S. Marshal's office but not higher); Kansas Tchrs. Credit Union v. Mut. Guar. Corp., 982 F. Supp. 1445, 1447–48 (D. Kan. 1997) (same); Tate v. Statco Eng'g &, Fabricators, Inc., No. CIV-12-2-JHP, 2014 WL 12791248, at *1–2 (E.D. Okla. May 13, 2014) (same). Thus, the $85.00 rate charged by Midnight Run is not taxable. The U.S. Marshal's Service is permitted to charge for mileage and other out-of-pocket expenses over and above the $65.00 per hour. See 28 C.F.R. §0.114(a)(3). However, Plaintiff provides no indication that mileage or other expense were included in the $85.00 calculation. Finally, the plain reading of 28 C.F.R. § 0.114 does not authorize the Marshal Service to charge a rush service fee. Plaintiff has failed to show that the $535.00 is fully taxable. Therefore, Plaintiff's request for the $25.00 fee for rush service is denied. Further, the $85.00 service rate charged for each of the six individuals Midnight Run served or attempted to serve is reduced to $65.00, the maximum allowed under the statute. Thus, the total fees taxable for service of summons and subpoenas are reduced to $390.00.

## D.   Uncontested Fees

Plaintiff requests a $400.00 filing fee, a $20.00 docket fee, and $796.35 in witness expenses. See Costs Br. at ¶¶ 5, 14–15. Defendant makes no argument against these amounts. See generally Costs Opp. Br. Pursuant to 28 U.S.C. §

4:17-cv-00325-CRK-CDL

1923(a), Plaintiff, as the prevailing party, is entitled to and granted the $20.00 docket fee. Under 28 U.S.C. §§ 1920(1) and (3), the district court possess the authority to tax as costs filing fees and witness related to expenses. As it is evident that the filing fee was necessarily incurred, the $400.00 filing fee is granted to Plaintiff. Lastly, all five witnesses testified at trial.[12] The necessity of the testimony is uncontested and clear, and thus Plaintiff is granted $796.35 for witness expenses.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff the following in attorney's fees and expenses: Mr. Smolen is granted 557.3 billable hours at the adjusted rate of $450.00 per hour for a total of $250,785.00; Mr. Blakemore is granted 833.5 billable hours at the adjusted rate of $425.00 per hour for a total of $354,238.00; Mr. Helm is granted 1,188.7 billable hours at the adjusted rate of $300.00 per hour for a total of $356,610.00. The Court further grants Plaintiff $8,769.00 for the uncontested services rendered by Mr. Black through ProLegalTech.

The Court grants Plaintiff the following in billable costs: $17,556.16 for transcript costs; $318.03 for photocopy and printing expenses; $796.35 for witness fees; $400.00 for the filing fee; $390.00 for the process server fee; and $20.00 for the docket fee.

Accordingly, it is

---

[12] Horn, Durborow, Shoemaker, Derwin and Harding were witnesses at trial.

**4:17-cv-00325-CRK-CDL**

     **ORDERED** that Plaintiff's Fees Motion is granted in part and denied in part; Plaintiff is granted a total of $970,402.00 in attorney's fees and expenses; and it is further

     **ORDERED** that Plaintiff's bill of costs is granted in part and denied in part; Plaintiff is granted a total $19,480.54 in billable costs.

                              /s/ Claire R. Kelly
                              Claire R. Kelly, Judge[*]

Dated:       February 29, 2024
              New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.