IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AUSTIN P. BOND, as Personal | ) | |
| Representative of the Estate of | ) | |
| Terral Ellis, II, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-00325-CRK-CDL |
| | ) | |
| THE SHERIFF OF OTTAWA | ) | |
| COUNTY, in his official capacity, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO RECONSIDER ORDER
DENYING REMITTITUR AND NEW TRIAL AND BRIEF IN SUPPORT**

Defendant Sheriff of Ottawa County, in his official capacity ("Defendant"), hereby respectfully submits his Motion to Reconsider this Court's March 1, 2024 Order denying Defendant's Motion for Remittitur and Motion for New Trial [Dkt. 435] pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(6). Specifically, Defendant seeks reconsideration of this Court's determination that the $33 million compensatory damages verdict was not excessive and was not the product of passion or prejudice, particularly in light of the Order on Remittitur in *Young v. Correctional Healthcare Companies, Inc.,* Case No. 13-CV-315-IDJ-JFJ, also issued on March 1, 2024 in the Northern District of Oklahoma. In support of this Motion, Defendant submits the following brief.

**BRIEF IN SUPPORT**

**I.      RECONSIDERATION IS WARRANTED IN THIS MATTER**

Motions for reconsideration are not among the motions recognized by the Federal Rules of Civil Procedure, but may be filed pursuant to Fed. R. Civ. P. 59 and 60. *See Price v. Philpot*, 420 F.3d 1158, 1167, n. 9 (10th Cir. 2005). Whether a motion for reconsideration should be considered under Rule 59 or Rule 60 depends on the timing of the motion and on the basis for the motion

identified by the movant. *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 6739431, *3 (10th Cir. Dec. 23, 2011) (unpublished decision attached hereto as Exhibit 1). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does I-XVI*, 204 F.3d 1005, 1012 (10th Cir. 2000). District courts have considerable discretion when ruling on motions to reconsider. *See Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). "Reconsideration is appropriate when circumstances are so 'unusual or compelling' that extraordinary relief is warranted, or when it 'offends justice' to deny such relief." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996) (quoting *Pelican Production Corp. v. Mariano*, 893 F.2d 1143, 1147 (10th Cir. 1990)). Narrow-in-scope motions which seek reconsideration of small, discrete portions of a court's ruling are favored over motions which are more broad in scope. *United States v. Loera*, 182 F.Supp.3d 1173, 1207 (D.N.M. 2016). Courts may review the earlier ruling entirely de novo, review the ruling de novo but limit its review to specific issues, require parties "to establish one of the law-of-the-case grounds, or [they] can refuse to entertain motions to reconsider altogether." *SFF-TIR, LLC v. Stephenson*, 264 F.Supp.3d 1148, 1219 (N.D. OK 2017).

Here, Defendant seeks reconsideration of this Court's determination that the $33 million compensatory damages verdict was not excessive and that the verdict was not the result of passion, prejudice, or improper motive. Allowing the damages award to stand would result in manifest injustice to Defendant. The Order should be reconsidered to prevent injustice to Defendant under the circumstances.

## II. THE $33 MILLION DOLLAR COMPENSATORY DAMAGES AWARD WAS EXCESSIVE AND LIKELY THE RESULT OF PASSION, PREJUDICE, OR IMPROPER MOTIVE

In its Motion for Remittitur [Dkt. 412], Defendant sought remittitur of the compensatory damages award on the grounds that the $33 million award was so excessive that it is shocking to the judicial conscience and raises "an irresistible inference that passion, prejudice, corruption or another improper cause invaded the trial." *Fresquez v. BNSF Railway Co.*, 52 F.4th 1280, 1315 (10th Cir. 2022). Similarly, in its Motion for New Trial [Dkt. 411], Defendant sought a new trial on the grounds that a large or excessive verdict "is a significant factor suggesting prejudice sufficient to require a new trial." *Whittenburg v. Werner Enterprises, Inc.*, 561 F.3d 1122, 1132 (10th Cir. 2009). This Court denied both Motions in a single Order ("the Order") on February 29, 2024. [Dkt. 435]. In the Order, this Court concluded that while the $33 million verdict was large, it was neither shocking to the conscience nor excessive. [Dkt. 435, pp. 29-30, 37-46].

### A. The Amount of the Award is Excessive and Shocks the Conscience

On the very same day this Court issued its Order, Judge Iain Johnston ordered remittitur of the damages award in another case in the Northern District of Oklahoma, *Young v. Correctional Healthcare Companies, Inc.*, __ F. Supp. 3d __, 2024 WL 866286 (N.D.OK. Feb. 29, 2024) (attached hereto as Exhibit 2). While the *Young* order reduced the punitive damages award in that case, $14 million compensatory damages were also awarded. Judge Johnston specifically stated the compensatory damages amount was "high" and a "large amount" but was "not unreasonable" in light of the evidence and the $10 million compensatory damages award in *Burke v. Regalado*, 935 F.3d 960, 980 (10th Cir. 2019), a case which he described as being "strikingly similar" to the *Young* case. *Id.* at *27.

Defendant cited to both *Young* and *Burke* in its Motion for Remittitur and Motion for New Trial as being similar to the present case, as they are both recent 42 U.S.C. § 1983 medical

deliberate indifference cases involving the death of inmates or pre-trial detainees in county jails located within the Northern District of Oklahoma. [Dkt. 411, pp. 14-15; Dkt. 412, pp. 11-16]. In fact, the *Young* case was tried in the Northern District just a few months before the present case was tried. The resulting compensatory damages award which Judge Johnston described as being "high" and a "large amount" was less than half of the amount awarded in the present case. *Young* at *27. Defendant discussed the 2019 *Burke* case at length in its Motion for Remittitur to demonstrate the excessiveness of the $33 million compensatory damages award. [Dkt. 412, 11-16]. There, the $10 million compensatory damages award was less than one-third the amount awarded in the present case. Although this Court relied very heavily on law from *Burke* in the Order denying remittitur and a new trial, it did not at all consider the compensatory damages award in *Burke* or the similarities between the present case and *Burke* in terms of whether the verdict in the present case was excessive or shocking to the conscience.

Citing to *Stokes v. United States*, 967 F.3d 1034, 1044 (10th Cir. 2020), this Court's Order states that "[a]s a preliminary matter the Court need not compare awards if the 'noneconomic damage awards do not shock the judicial conscience." [Dkt. 435, p. 45]. But the *Young* order demonstrates that the $33 million award does and *should* shock the conscience. Judge Johnston made the following determination regarding the compensatory verdict size in *Young*:

> The verdict size weighs in favor of finding that it is reasonably probable that Plaintiff's misconduct influenced the jury's verdict. The jury's award of $14 million for compensatory damages was high, but not unreasonable. The jury in Mr. Williams' trial awarded $10 million in compensatory damages. Again, that is a large amount. But it is not unreasonable. The compensatory award in this case being greater than that in Mr. Williams' case could easily be viewed as evidence of the increase in post-pandemic verdicts. *See* Aleeza Furman, *With High-Value Verdicts on the Rise, Some Attorneys Say Post-COVID Jurors Demand Accountability*, Legal Intelligencer Online (Sept. 28, 2022). Regardless, $14 million is still a very large verdict, even under these facts.

*Young* at *27.

Without rehashing the facts of the *Young* case, which Defendant recapped in its Motion for Remittitur [Dkt. 411], Defendant notes that Judge Johnston found the facts in *Young* to be quite damning to the defendant. The *Young* order states that the defendant's "deliberate indifference killed people in its care" and referred to the defendant's conduct in that regard as "reprehensible." *Young* at *1. Judge Johnston stated that "there was an avalanche of evidence presented to the jury that CHC's deliberate indifference caused the constitutional violations inflicted on Ms. Gwendolyn Young, resulting in her pain, suffering, and death." *Id.* He further stated that "the weight of the evidence supporting the jury's verdict on liability was overwhelming," even when viewed neutrally rather than in the light most favorable to the plaintiff. *Id.* at *27. Although he determined that the $14 million compensatory damages award in that case was "a very large verdict, **even under these facts**," he declined to grant remittitur because the award "is consistent with the verdict in the strikingly similar case" of *Burke v. Regalado*. *Id.* at *3 (emphasis added).

Clearly then, if a $14 million compensatory damages verdict is very large in the Northern District of Oklahoma, even in the face of reprehensible facts and an avalanche of evidence against the defendant, a $33 million dollar compensatory damages verdict is excessive and completely unprecedented, contrary to this Court's findings. Comparison to jury awards in other similar cases is an appropriate measure of excessiveness. *Wulf v. City of Wichita*, 883 F.2d 842, 875 (10th Cir. 1989); *Blangsted v. Snowmass Wildcat Fire Prot. Dist.*, 642 F. Supp. 2d 1250, 1258 (D. Colo. 2009); *Evans v. Fogarty*, 241 Fed. App'x 542, 561 (10th Cir. 2007). The $33 million compensatory damages award is certainly not in line with the $10 million verdict in *Burke* or the $14 million compensatory damages award in *Young*. A damages award 230% higher than the award in *Burke* cannot simply be attributed to an overall rise in post-pandemic verdicts, as the 40% increase from the verdicts in *Burke* to *Young* could be.

5

In *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 221, 135 L.Ed.2d 659 (1996) the Supreme Court reiterated that "'[i]f it should clearly appear that the jury have committed a gross error, or have acted from improper motives, or have given damages excessive in relation to the person or the injury, it is as much the duty of the court to interfere, to prevent the wrong, as in any other case.'" *Id.* at 433 (quoting *Blunt v. Little*, 3 F.Cas. 760, 761-762 (No. 1,578) (C.C. Mass. 1822) (Story, J.). It further reiterated that trial judges have discretion to grant a new trial if the verdict appears to be against the weight of the evidence, which includes "overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Id.* (citing *Byrd v. Blue Ridge Rural Elec. Cooperative, Inc.*, 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed. 2d 953 (1958); *Dimick v. Schiedt*, 293 U.S. 474, 486-487, 55 S.Ct. 296, 301, 79 L.Ed.603 (1935)). In terms of appellate review of district court denials of motions to set aside a jury verdict on the basis of excessiveness, the *Gasperini* court additionally noted that "'every circuit has said that there are circumstances in which it can reverse the denial of a new trial if the size of the verdict seems to be too far out of line.'" *Id.* at 435 (quoting 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2820, p. 209 (2d ed. 1995)). Every indication is that the $33 million compensatory damages award in this case is too far out of line to stand, that it is shocking to the conscience, and that it raises the inference that passion, prejudice, or some other improper cause invaded the trial.

In rejecting Defendant's arguments that the size of the verdict was excessive and shocking to the conscience, this Court ignored timely, relevant jury verdicts from the Northern District of Oklahoma and instead cited solely to decisions from other circuits and district courts outside of Oklahoma to support its finding that the amount of the verdict was neither excessive nor shocking. The Order relied on the $63 million dollar compensatory damages verdict in *Gilliam v. Allen*, 62

F.4th 829 (4th Cir. 2023), a Fourth Circuit case arising in North Carolina, to support that a $33 million dollar award does not shock the judicial conscience. But *Gilliam* did not involve allegations of deliberate indifference or denial of medical care in a correctional setting. Rather, it concerned law enforcement officers forcing confessions of rape and murder from two "severely intellectually disabled" youth and withholding exculpatory evidence through two trials. *Id.* at 835-836. The 19 year old plaintiff had been sentenced to death for those crimes while the 15 year old plaintiff had been sentenced to life in prison. *Id.* at 834, 837. After being incarcerated for 25 years, they were exonerated by DNA evidence and pardoned. *Id.* at 837. They subsequently filed suit for false arrest, due process violations, and malicious prosecution against multiple defendants. *Id.* at 838. The jury awarded $31 million in compensatory damages to each plaintiff.[1] *Id.* Nothing about the *Gilliam* case is remotely similar to the present case. The circumstances are not at all similar, the location is not at all similar, and none of the multiple claims against the multiple defendants at issue in *Gilliam* are similar to the single deliberate indifference claim against the single governmental Defendant in the present matter. While the Order states that *Gilliam* demonstrates the $33 million compensatory damages award in this case is "large" but "not unprecedented," *Gilliam* demonstrates nothing of the sort as it lacks any commonality with the present case.

Two of the other cases to which the Order cites as support for the finding that the compensatory damages award in this matter is not excessive or shocking are also wrongful murder conviction cases and are thus equally dissimilar to the present case. *Jiminez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) and *Fields v. City of Chicago*, 981 F.3d 534 (7th Cir. 2020) are both Seventh Circuit cases arising from wrongful murder convictions in Illinois. In *Jiminez*, the plaintiff

---

[1] As noted in this Court's Order, the $31 million dollar verdicts were later reduced to $25.25 million in an amended judgment due to application of the collateral source rule and one-satisfaction rule. [Dkt. 435, p. 46].

filed § 1983 due process and conspiracy claims, as well as a state law malicious prosecution claim, against the city and a former detective after he was exonerated following sixteen years of incarceration on a murder charge. *Jiminez*, 732 F.3d at 712. The jury awarded him $25 million in compensatory damages from those defendants. *Id.* In *Fields*, the plaintiff was sentenced to death on a murder charge but was later acquitted on a retrial. *Fields*, 981 F.3d at 542. The plaintiff sued the city and two police officers under § 1983 and Illinois state law alleging due process violations, malicious prosecution, civil conspiracy, and intentional infliction of emotional distress, as a result of the defendants allegedly fabricating evidence and withholding exculpatory evidence. *Id.* at 542-543. The jury awarded a total of $22 million on the claims against those defendants. *Id.* at 543. Nothing about the *Jiminez* or *Fields* cases are similar to the present case. The circumstances are not at all similar, the location is not at all similar, and none of the multiple claims against the multiple defendants are similar to the single deliberate indifference claim against Defendant in the present matter.

The Order next cites to an excessive force case from the Northern District of Georgia, *Edwards for Blasingame v. Grubbs*, 2022 WL 4363631 (N.D. Ga. Sept. 14, 2022) (unpublished decision attached hereto as Exhibit 3). This case arose from the alleged use of excessive force by an Atlanta police officer against a panhandler who fled from officers but whom was not a danger to anyone. *Basingame*, at *1-2. The plaintiff brought a Fourth Amendment excessive force claim against the officer who tased him and against the City of Atlanta. *Id.* at *1. After the jury found in favor of the plaintiff, the defendants moved for judgment as a matter of law, which the court granted as to the city because the evidence at trial did not show a custom or policy of excessive force via taser and did not show that a persistent failure to enforce the policies resulted in a widespread use of excessive force. *Id.* at *2, *5. The court denied the officer's motion for judgment as a matter of law and entered a $20 million compensatory damages award against him. *Id.* at *9-

11. This case also bears no relationship whatsoever to the facts or claims at issue in the present case. Notably, the $20 million compensatory damages verdict was against an individual officer, not the municipality, and was still far less than the $33 million compensatory damages award in the present matter.

The only case to which the Order cites which actually involves a county jail is *Estate of Moreland v. Dieter*, 395 F.3d 747 (7th Cir. 2005), but that case too involves an excessive force claim and not a claim for deliberate indifference to medical needs. *Moreland*, which is a Seventh Circuit case arising from events which occurred in a county jail in Indiana, is therefore equally dissimilar and inapplicable to the case at bar. Evidence in that case showed that a detainee died in custody as a result of jailers having used unnecessary and excessive force against him. *Id.* at 751-753. Specifically, the detainee was pepper sprayed by jailers, was shoved in the shower by jailers (which caused him to hit his head), was then tortured with hot and cold water that exacerbated the effects of the pepper spray, was shackled to restraint chair, and was pepper sprayed again directly in his face while he was shackled. *Id.* While he was unconscious, jailers placed him into the drunk tank where he died. *Id.* Representatives of his estate filed suit against the Sheriff in his official capacity and former deputies alleging the force used against the detainee was unconstitutionally excessive. *Id.* at 751. The Sheriff, as the only municipal liability defendant, was granted summary judgment in his favor and did not go to trial. *Id.* at 753. The jury awarded $29 million in compensatory damages from the two individual defendants. *Id.* The Seventh Circuit upheld the grant of summary judgment for the Sheriff. *Id.* at 760. The $29 million compensatory damages award therefore has nothing in common with the facts or claims in the present case, which included a medical deliberate indifference *Monell* claim against a governmental entity.

This Court's determination that the $33 million dollar verdict was neither excessive nor shocking to the judicial conscience is not supported by *Young, Burke*, or any of the dissimilar §

1983 cases to which the Order cites. Nor is it supported by the facts of this case. Defendant acknowledges that this Court has broad discretion in whether to grant remittitur or a new trial. *O'Gilvie v. International Playtex, Inc.,* 821 F.2d 1438, 1448 (10th Cir. 1987); *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1561 (10th Cir. 1991). That discretion is abused when a court fails to exercise meaningful discretion, acts arbitrarily, commits an error of law, or relies on erroneous factual findings. *Obeslo v. Empower Capital Management, LLC*, 85 F.4th 991, 1005 (10th Cir. 2023). Here, the Order cites to evidence and testimony in the record which this Court states supports the jury's $33 million dollar compensatory damages award and indicates the award was not based on juror passion, prejudice, or any improper motive. While Defendant does not dispute that the jury was presented with the cited evidence, the critical question here is not whether the weight of the evidence supports the liability of Defendant, it is whether the weight of the evidence supports the amount of the compensatory damages award. In that regard, the Court does not appear to have considered key pieces of evidence when determining that the verdict amount was not excessive given the facts in this case.

For instance, the Order states multiple times that the jury heard evidence that jailers were instructed that they were not permitted to call an ambulance for inmates without going through the jail nurse, regardless of medical need. [Dkt. 435, pp. 11, 14]. But the Order does not acknowledge that jurors were also presented with evidence that an ambulance was called for Mr. Ellis less than 24 hours prior to his death, that Mr. Ellis was examined by paramedics at that time, and that Mr. Ellis refused transport to the hospital for further evaluation. (Ex. 4, Trial Transcript Vol. III, Transcript Vol. III, 293:18-294:9; Ex. 5, Trial Transcript Vol. IV, 341:22-342:15; 366:24-367:24; 404:16-405:3). Remittitur is appropriately granted when the amount of a damages award is not supported by sufficient evidence. *Therrien v. Target Corp.*, 617 F.3d 1242, 1258 (10th Cir. 2010). In this case, there is not sufficient evidence to support a $33 million dollar compensatory damages

verdict; it is clearly excessive given that the jury was presented with evidence that an ambulance was called for Mr. Ellis and that he refused to let EMS take him to the hospital for further evaluation the day before his death.

The $33 million dollar verdict is excessive and shocking to the conscience. This Court should therefore reconsider its Order and grant remittitur.

**B.    The Excessive Award was the Result of Jury Passion, Prejudice, or Improper Motive**

"[M]ere excessiveness in the amount of an award may be cured by a remittitur, whereas excessiveness which results from jury passion and prejudice may not be so cured. In that case, a new trial is required." *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1561 (10th Cir. 1991). Here, evidence exists that the excessively high verdict was the result of improper remarks made by Plaintiff's counsel during closing arguments. Courts may grant a new trial when it appears that improper remarks by counsel have influenced the jury's verdict. *Racher v. Westlake Nursing Home*, 871 F.3d 1152, 1161 (10th Cir. 2017). When a large verdict is accompanied by improper arguments by counsel, it indicates the jury was swayed by the improper statements and acted upon them when rendering their verdict. *Whitehead v. Food Max*, 163 F.3d 265, 278 (5th Cir. 1998); *see also Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 759 (6th Cir. 1980); *Burke v. Deere & Co.*, 6 F.3d 497, 513 (8th Cir. 1993); *Dougal v. State Farm Mutual Auto. Ins. Co.,* 2006 WL 1141621, *2 (N.D.Okla. April 26, 2006) (unpublished decision attached hereto as Exhibit 6). Defendant demonstrated in Proposition II above that the verdict is excessively large. Trial transcripts confirm that Plaintiff's counsel made improper arguments during his closing.

As Defendant pointed out in both its Motion for Remittitur and Motion for New Trial, during Plaintiff's closing arguments his counsel requested that the jury award a historically significant amount specifically as deterrence to Defendant for future conduct. [Dkt. 411, pp. 8-11;

Dkt. 412, 10-12]. The Tenth Circuit has made clear that arguments which invite the jury to award damages based on punishment or deterrence in cases where only compensatory damages are at issue results in prejudice to the defendant. *Racher,* 871 F.3d at 1169. Citing to *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) and *Burke, supra*, 935 F.3d at 1029 in footnote 6 of the Order denying remittitur and a new trial, this Court recognized that arguments which specifically urge deterrence against a governmental entity are improper. [Dkt. 435, p. 25, fn. 6]. However, this Court dismissed the significance of the remarks made by Plaintiff's counsel as being essentially an off-the-cuff rebuttal made in response to defense counsel stating the jury's verdict cannot be punitive. [Dkt. 435, pp. 25-26, 28-29, 38-39]. The *Young* order, issued the same day as this Court's Order, makes clear that Plaintiff's counsel's rebuttal closing arguments in this case were scripted in advance and intended to improperly sway the jury. In Plaintiff's closing arguments in the present matter, his counsel stated that

> **the point of constitution law, the point of a 1983 case, which is the area that we practice, is the idea of a deterrent effect**… The idea of deterrence, the idea that you eight people are getting to make this decision, and you can deter this from happening in our community through your verdict. You can deter this from happening in the state of Oklahoma based on awarding an historically significant amount.

(Ex. 7, Trial Transcript Vol. XIII, 1454:6-1456:2). He then argued that

> this has to be an incredibly significant verdict; otherwise, these gentlemen are going to walk out of here, and they're going to high-five because they'll say, "We can – we can run a cheap medical system."

(Ex. 7, 1456:25-1458:1) (emphasis added). This mirrors the same counsel's closing arguments in *Young*. Per the Young order, in that case the same counsel told the jury that "[t]hey'll be high-fiving if you walk out of here giving a verdict of $10 or $20 million, I promise you, because that just means business as usual." *Young* at *27, fn. 15. The *Young* court found it to be "particularly egregious" that jurors were told in his rebuttal argument that it was their duty as members of the

Tulsa community to return an astronomical verdict. *Id.* This is nearly identical to the argument Plaintiff's counsel made to the jury in Plaintiff's rebuttal in this case. But punitive damages *were* available in the *Young* case, whereas only compensatory damages were available in the present case.

The *Young* court found that the incredibly similar closing argument remarks in that case had impacted the jury's punitive damages award, as evidenced by the fact that the award was more than two-hundred and fifty times the amount of the punitive damages awarded in *Burke v. Regalado* for the death of detainee Williams, a case which was a meaningful benchmark due to its similarities to *Young*. *Id.* The *Burke* case is a meaningful benchmark in terms of the similarities to the present case as well, and the compensatory damages award in this case is 230% higher than the compensatory damages award in *Burke.* It is equally apparent in the present matter that the improper remarks clearly impacted the amount of the jury's award. There is no question that punitive damages were not available in this case and that as a result, the remarks of Plaintiff's counsel were improper. *Racher,* 871 F.3d at 1169. Improper arguments warrant disturbing a damages award when it clearly appears the challenged remarks influenced the verdict, as is the case here. *Id.* at 1168. Accordingly, this Court should reconsider its denial of Defendant's Motion for New Trial and grant the Motion on this basis.

## CONCLUSION

Reconsideration of the denial of Defendant's Motion for Remittitur and Motion for New Trial is warranted in this case, particularly in light of the *Young* remittitur order which was issued the same day as this Court's Order. The size of the $33 million compensatory damages verdict was excessive and shocking to the conscience, and the amount of the award was clearly the result of passion, prejudice, or improper motive, as the jury was plainly influenced by Plaintiff's counsel's improper remarks during closing arguments.

13

WHEREFORE, premises considered, Defendant Sheriff of Ottawa County, in his official capacity, requests this Court GRANT his Motion to Reconsider the rulings on his Motion for Remittitur and Motion for New Trial.

Respectfully submitted,

s/ Alison B. Levine
Wellon B. Poe, OBA No. 12440
Jamison C. Whitson, OBA No. 18490
Alison B. Levine, OBA No. 33021
Justin P. Ashlock, OBA No. 33459
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK   73105
Telephone:    (405) 524-2070
Facsimile:    (405) 524-2078
E-mail:        wbp@czwlaw.com
               jcw@czwlaw.com
               abl@czwlaw.com
               jpa@czwlaw.com

ATTORNEYS FOR DEFENDANT
SHERIFF OF OTTAWA COUNTY, IN HIS
OFFICIAL CAPACITY

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2024, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen
Robert M. Blakemore
Bryon D. Helm
SMOLEN & ROYTMAN, PLLC
701 South Cincinnati Avenue
Tulsa, OK 74119

*Attorneys for Plaintiff*

s/ Alison B. Levine
Alison B. Levine